Robert F. Renaud, Esq.
RR1351
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 272-9700
Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROME A BALLAROTTO, ESQUIRE and ANTHONY VILLANUEVA<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF TRENTON<br><br>Defendant. | Civil Action No.: 3:25-cv-18181<br><br><br><br>CERTIFICATION OF COUNSEL |

Robert F. Renaud hereby certifies as follows:

1.      I am an attorney at law of the State of New Jersey and a member of the firm of Renaud Colicchio LLC, attorneys for Defendant City of Trenton in the above action. I am personally handling and familiar with this case.

2.      This certification is submitted in support of Defendant's Notice of Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

3.    Annexed hereto and incorporated herein are the following exhibits, all of which are hereby certified to be true copies of what they purport to be:

**Exhibit A**:  Plaintiff's verified complaint in lieu of prerogative writs.

**Exhibit B**:  Plaintiff's amended complaint.

**Exhibit C**:  Opinion of the Superior Court of New Jersey, Appellate Division, In re Villanueva.

**Exhibit D**:  Motion to Dismiss and supporting papers dated January 25, 2024.

**Exhibit E**:  Plaintiff's response to Motion to Dismiss dated March 13, 2024.

**Exhibit F**:  March 20, 2024 Order dismissing verified complaint.

**Exhibit G**:  Superior Court Docket.

**Exhibit H**:  May 9, 2024 letter from Mark W. Catanzaro, Esq.

**Exhibit I**:  December 1, 2025 Order.

**Exhibit J**:  Notice of Removal filed December 4, 2025.

**Exhibit K**:  Chapter Two, §230, Compensation for Appointed Counsel under the Criminal Justice Act.

# **CERTIFICATION**

I hereby certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/Robert F. Renaud

Robert F. Renaud, Esq.

Dated: December 11, 2025

# EXHIBIT A

*LAW OFFICE OF MARK W. CATANZARO*
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

|  |  |
|---|---|
| **ANTHONY VILLANUEVA** | **SUPERIOR COURT OF NEW JERSEY** : **LAW DIVISION - MERCER COUNTY** |
| **Plaintiff** **v.** | **CIVIL ACTION** |
| **CITY OF TRENTON** | **DOCKET NO.: MER-L-** |
| **Defendant.** | **VERIFIED COMPLAINT** : **IN LIEU OF PREROGATIVE WRIT** |

Plaintiff Anthony Villanueva brings this matter pursuant to N.J.S.A. 40A:14-155 as means of obtaining reimbursement of his legal expenses in defense of criminal charges which were dismissed and finally determined in the favor of the Plaintiff. These charges arose out of his employment as a police officer for the City of Trenton, located in the County of Mercer, State of New Jersey, wherein Plaintiff alleges and says as follows:

## JURISDICTION

1.  Jurisdiction is properly laid in this Court in that the City of Trenton is subject to personal jurisdiction in the State of New Jersey, the events giving rise to the Complaint occurred within the County of Mercer, and the City of Trenton is a political sub-division and/or public entity and an employer located in the County of Mercer.

2.  Plaintiff brings this action pursuant to <u>N.J.S.A</u>. 40A:14-155 for the reimbursement of the expenses of his defense of criminal charges which were dismissed and finally determined in the favor of the Plaintiff.

## STATEMENT OF FACTS

3.  On or about April 18, 2019, Officer Villanueva was served with an Indictment. Attached hereto as **Exhibit A** is a true and accurate copy of the Indictment dated April 18, 2019.

4.  The Indictment alleges, in Counts 1 through 3 that Officer Villanueva, while on duty as a police officer for Defendant, committed violations of Title 18 USC § 242 and § 2 (Deprivation of rights under color of law) and violation of Title 18 USC § 1519 (Falsification of records in two separate counts).

5.   The Indictment also charged a fellow officer, Drew Inman with the same violations on the same date, April 9, 2017 (Counts 1 and 4).

6.   The Indictment also charges crimes, in counts 5 and 6, of a completely separate and distinct incident involving Officer Villanueva occurring on November 28, 2017 involving a separate individual and location. Counts 5 and 6 of the Indictment charge Officer Villanueva with violations of Title 18 USC § 242 and 18 USC § 1519.

7.   On or about April 23, 2019, Jerome A. Ballarotto, Esquire ("Ballarotto") entered his appearance in the United States District Court on behalf of Officer Villanueva in the criminal matters. Attached hereto as **Exhibit B** is a true and accurate copy of the April 23, 2019 Notice of Appearance filed by Jerome A. Ballarotto, Esquire.

8.   The Police Benevolent Association ("PBA"), through its Legal Protection Plan, advanced $50,000.00 to assist Officer Villanueva to defend the matter, which, by agreement, Anthony Villanueva is obligated to return to the PBA upon reimbursement of expenses from the City of Trenton

9.   On September 17, 2019, U.S. District Court Judge Brian Marinotti severed the separate and distinct allegation and victim in Counts 5 and 6 of the Indictment. **Exhibit C** is a true and accurate copy of the Severance Order.

3

10. Following the severance, Counts 1 through 4 were tried in United States District Court in Trenton, New Jersey.

11. On May 15, 2023 the Jury found Officer Villanueva not guilty on all charges against him as set forth in Counts 1, 2 and 3. **Exhibit D** is a true and accurate copy of the Jury's redacted[1] verdict sheet. As a result, all charges arising from the incident on April 9, 2017 and charged in counts 1, 2 and 3 of the indictment as to Villanueva were dismissed.

12. Ballarotto submitted a letter and itemized bill to Defendant informing the City of Trenton that the charges against Officer Villanueva for the conduct alleged on April 9, 2017 had been dismissed. Attached hereto as **Exhibit E** is a true and accurate copy of the letter and itemized bill submitted to the City of Trenton.

13. The letter by Ballarotto asked Defendant if they were willing to pay Officer Villanueva's legal fees or if Officer Villanueva's counsel would be required to file an application with the Superior Court.

14. Wesley Bridges, counsel for the Defendant advised the Ballarotto that the City of Trenton will not pay Officer Villanueva's legal fees.

---

[1]The redaction excludes the identity and signature of the jury foreman but does not modify any other portion of the verdict sheet

15. As such, Villanueva is seeking reimbursement for the legal bills he incurred to defend the charges that arose from allegation of his conduct on April 9, 2017.

16. Additionally, Villanueva is seeking reimbursement for the cost of a private detective to assist in his defense. **Exhibit F** is a true and accurate copy of the bill from Bowen Investigations.

17. The rates charged by Ballarotto in this matter are based upon his forty (40) plus years experience as a Federal Criminal Trial attorney and Licensed private investigator Ross Bowen as a retired N.J. State Trooper and licensed private investigator. Attached hereto as **Exhibit G** is a Certification by attorney Joseph Hayden as to the reasonableness of Ballarotto's rates.

18. Villanueva is requesting reimbursement of **$251,650.00** in legal fees for this matter and **$4,166.37** in investigative costs. **See Exhibits E and F**

19. As such, he is requesting a total of **$ 255,816.37** in legal fees and costs from the City of Trenton for successfully defending these criminal allegations against Officer Villanueva.

## COUNT ONE
### (N.J.S.A. 40A:14-155)

**PLAINTIFF SHOULD BE REIMBURSED FOR THE EXPENSE OF HIS DEFENSE OF THE CRIMINAL CHARGES FILED ON APRIL 18, 2019 PURSUANT TO N.J.S.A. 40A:14-155.**

5

20. Officer Villanueva reasserts and realleges each and every previous paragraph as if fully set forth and reiterated herein.

21. N.J.S.A. 40A:14-155 provides as follows:

> Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.

22. Officer Villanueva had to engage in a full defense of the criminal charges filed against him based upon the indictment and jury verdict as well as supported by the Certification of Jerome A. Ballarotto, Esquire filed herewith.

23. On May 15, 2023 the criminal charges for the incident on April 9, 2017 were dismissed in the United States District Court after a finding of not guilty by the Jury.

24. Following the dismissal of the criminal charges against Officer Villanueva, a demand for reimbursement of the

6

total defense costs of **$255,816.37,** including but not limited to the reasonable legal fees, commensurate with Mr. Ballarotto's expertise and years of practice, was made to the City of Trenton.

25. Officer Villanueva seeks herein an Order from the Court for the reimbursement of his expenses for his defense of the criminal charges dated April 9, 2017.

   **WHEREFORE,** Plaintiff demands judgement against the City of Trenton as follows:

   For an Order of the Court, pursuant to <u>N.J.S.A.</u> 40A:14-155 for the defense costs of Officer Anthony Villanueva, including but not limited to the counsel fees to Jerome A. Ballarotto, Esquire as detailed in the Certification of Jerome A. Ballarotto, Esquire filed herewith and the cost of investigative services of Bowen Investigations as detailed in the invoice of Ross Bowen.

   b.   Payment of counsel fees and costs for the filing of the instant Verified Complaint in lieu of prerogative writ and papers in support thereof as well as any reply papers or other filings supporting this application.

   c.   For such other, further, additional and different relief as this Court deems just and proper.

7

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies, on information and belief, as follows:

1.    The matter in controversy is not the subject of any other action pending in any Court or of a pending proceeding, other than the subject disciplinary hearing described herein.

2    No other action or arbitration proceeding is contemplated.

3.    I further certify that to the best of my knowledge no other parties need to be joined in this matter at this time.

Respectfully submitted,

Dated: 12|7|2023

Mark W. Catanzaro, Esquire
*Attorney for Plaintiff*

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that Mark W. Catanzaro, Esquire, is hereby designated as trial counsel.

Respectfully submitted,

Mark W. Catanzaro, Esquire
*Attorney for Plaintiff*

Dated: 12|7|2023

8

## VERIFICATION AND CERTIFICATION

I hereby certify that the above facts are true and accurate to the best of my knowledge. I understand that if any of the above statements are willfully false, I am subject to punishment.

Anthony Villanueva

Dated: 12|6|2023

9

**EXHIBIT "A"**

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 11 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ    Document 2-2    Filed 12/11/25    Page 15 of 275 PageID: 138

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 1 of 13 PageID: RECEIVED

APR 18 2019

AT 8:00 2:45 P M
WILLIAM T. WALSH
CLERK

MSL/2017R00565

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 19-292 (BRM) |
| | : | |
| v. | : | 18 U.S.C. § 242 |
| | : | 18 U.S.C. § 2 |
| ANTHONY VILLANUEVA and | : | 18 U.S.C. § 1519 |
| DREW INMAN | : | |

## I N D I C T M E N T

The Grand Jury, in and for the District of New Jersey, sitting at Trenton, charges:

### BACKGROUND

1.    At all times relevant to this Indictment:

    a.    Defendant ANTHONY VILLANUEVA ("defendant VILLANUEVA") and defendant DREW INMAN ("defendant INMAN") were police officers employed by the Trenton Police Department in Trenton, New Jersey.

    b.    As police officers, and while acting under color of law, defendant VILLANUEVA and defendant INMAN were required at all times to comply with the Constitution and laws of the United States, including the right to be free from unreasonable search and seizure during the course of an investigation, arrest, and detention; and the right not to be deprived of life or liberty without due process of law.

    c.    "Victim 1" resided in Trenton, New Jersey.

    d.    "Police Officer 1" was employed by the Trenton Police Department.

MER-L-002304-23  12/13/2023 8:33:01 AM  Pg 12 of 57  Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 16 of 275 PageID: 139
Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 2 of 13 PageID: 2

### The April 9, 2017 Assault of Victim 1

2.      On or about April 9, 2017, at approximately 2:00 a.m., defendant VILLANUEVA responded to a radio call for assistance, alerting him that other officers were in pursuit of a suspect, later identified as Victim 1, who had fled in his vehicle, attempting to avoid a routine traffic stop near an intersection in Trenton.

3.      VILLANUEVA and other officers soon spotted Victim 1 abandoning his vehicle and fleeing on foot. VILLANUEVA and other officers therefore exited their vehicles and pursued Victim 1 on foot.

4.      After leading the officers on a foot chase for approximately one to two minutes, Victim 1 reached the banks of the Delaware and Raritan Canal, got into the water, and swam across to the opposite bank. Victim 1 then exited the canal by climbing up a steep embankment and into a brush-strewn area near a parking lot.

5.      A chain link fence separated the brush-strewn area adjacent to the canal from the parking lot. As Victim 1 exited the canal and walked towards the chain link fence, Police Officer 1 stood on the opposite side of the fence, in the parking lot. Additional Trenton police officers who had arrived on the scene ordered Victim 1 to put his hands in the air. Victim 1 complied, raising both hands in the air above his head. Police Officer 1 ordered Victim 1 to climb over the fence toward Police Officer 1. Again, Victim 1 complied. Victim 1 placed both hands on top of the chain link fence.

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 13 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 17 of 275 PageID:
140
Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 3 of 13 PageID: 3

6.      Defendant VILLANUEVA was standing on the same side of the
chain link fence as Victim 1, and nearby Victim 1, as Victim 1 complied with
Police Officer 1's commands.

7.      Nonetheless, and without issuing any warning or command,
defendant VILLANUEVA moved swiftly towards Victim 1 and punched Victim 1
in the face.

8.      Simultaneously, defendant INMAN, who had been approaching
Victim 1 from behind, tackled Victim 1 to the ground.  Defendant INMAN did
not issue any warning or command prior to tackling Victim 1.

9.      During the next approximately thirty seconds, defendant INMAN
and defendant VILLANUEVA punched Victim 1 numerous times.  Victim 1 cried
out in pain, and told officers, "stop hitting me in my face," and "you've got my
hands."

10.      Victim 1 was subsequently handcuffed by other officers on the
scene, and driven to Trenton Police Headquarters for processing.  Defendant
VILLANUEVA assisted in processing Victim 1, and was present when Victim 1's
booking photograph was taken within a few hours of Victim 1's arrest.  The
booking photograph depicts various injuries to Victim 1's face; namely, a
bloody lip and nose, and swelling and bruising around his left eye.

11.      Following the assault against Victim 1, defendants VILLANUEVA
and INMAN each completed law enforcement reports that memorialized the
incident.  In the reports, the defendants knowingly made numerous

misrepresentations, false statements and omissions in an effort to portray Victim 1 as the aggressor and an ongoing threat.

## COUNT 1
### (Deprivation of Rights Under Color of Law)

12.     The allegations set forth in paragraphs 1 through 11 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

13.     On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendants,

**ANTHONY VILLANUEVA and
DREW INMAN,**

did, while acting under color of law, and aiding and abetting each other and other persons both known and unknown to the grand jury, assault Victim 1 during the arrest of Victim 1 while Victim 1 was attempting to comply with orders from police officers, thereby willfully depriving Victim 1 of the right, secured and protected by the Fourth Amendment of the Constitution and laws of the United States, to be free from unreasonable search and seizure.  This offense resulted in bodily injury to Victim 1.

In violation of Title 18, United States Code, Section 242 and Section 2.

4

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 15 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 19 of 275 PageID: 142

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 5 of 13 PageID: 5

## COUNT 2
### (Falsification of Record)

14.   The allegations set forth in paragraphs 1 through 11 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

15.   Offenses involving the deprivation of civil rights, to include the right to be free from unreasonable searches and seizures, including through the use of unreasonable force by a person acting under color of law, statute, ordinance, or regulation, contrary to Title 18, United States Code, Section 242, are matters within the jurisdiction of the Federal Bureau of Investigation, which is an agency within the United States Department of Justice.

16.   On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

### ANTHONY VILLANUEVA,

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Use of Force Report about the April 9, 2017 incident involving Victim 1, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter; that is, VILLANUEVA falsely reported that: (a) Victim 1 had resisted police officer control; and (b) Victim 1 had not been injured.

In violation of Title 18, United States Code, Section 1519.

MER-L-002304-23  12/13/2023 8:33:01 AM  Pg 16 of 57  Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ  Document 2-2  Filed 12/11/25  Page 20 of 275 PageID: 143

Case 3:19-cr-00292-PGS  Document 1  Filed 04/18/19  Page 6 of 13 PageID: 6

## COUNT 3
### (Falsification of Record)

17.    The allegations set forth in paragraphs 1 through 11, and 15, of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

18.    On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

### ANTHONY VILLANUEVA,

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Case Supplemental Report about the April 9, 2017 incident involving Victim 1, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter; that is, VILLANUEVA falsely reported that: (a) VILLANUEVA had struck Victim 1 because Victim 1 had refused to comply with police commands to put his hands behind his back; and (b) VILLANUEVA had struck Victim 1 while struggling to handcuff Victim 1.

In violation of Title 18, United States Code, Section 1519.

6

MER-L-002304-23  12/13/2023 8:33:01 AM  Pg 17 of 57  Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 21 of 275 PageID: 144

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 7 of 13 PageID: 7

## COUNT 4
### (Falsification of Record)

19.   The allegations set forth in paragraphs 1 through 11, and 15, of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

20.   On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

### DREW INMAN,

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Use of Force Report about the April 9, 2017 incident involving Victim 1, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter; that is, INMAN falsely reported that: (a) Victim 1 had resisted police officer control; and (b) Victim 1 had presented a physical threat to police and/or had attacked a police officer or another.

In violation of Title 18, United States Code, Section 1519.

7

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 18 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 22 of 275 PageID:
145
Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 8 of 13 PageID: 8

## COUNT 5
### (Deprivation of Rights Under Color of Law)

### The November 28, 2017 Assault of Victim 2

21.     The allegations set forth in paragraph 1 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

22.     At all times relevant to this Indictment:

a.      Victim 2 was a pretrial detainee, under the custody and care of the Trenton Police Department after being charged with a crime but prior to any trial or adjudication relating to the charges against him.

b.      "Police Aide 1" was employed by the Trenton Police Department.

23.     On or about November 28, 2017, defendant VILLANUEVA was assigned to work in the holding cell area of Trenton Police Headquarters.  At approximately 12:30 a.m., defendant VILLANUEVA permitted Victim 2 to place a telephone call.

24.     After Victim 2 had been using the telephone for a number of minutes, defendant VILLANUEVA directed Victim 2 to end the call.  Victim 2 refused to comply with defendant VILLANUEVA's directive.  Defendant VILLANUEVA thereafter approached the telephone and hung up the receiver.  A brief altercation between defendant VILLANUEVA, Victim 2, and Police Aide 1 ensued.

25.     The altercation ended with Victim 2 walking away from defendant VILLANUEVA and Police Aide 1 down a corridor that contained a number of holding cells.

8

26.    Victim 2 walked calmly, unescorted, into a cell denoted in Trenton Police Department records as Cell 7, and the door to Cell 7 began to close behind him, locking him in.

27.    Almost immediately thereafter, defendant VILLANUEVA strode quickly down the corridor after Victim 2, towards Cell 7, carrying a can of Oleoresin Capsicum, also known as "OC spray" or "pepper spray."  OC spray usually causes an almost immediate burning sensation of the skin; a burning, tearing and swelling of the eyes; and, when inhaled, creates inflammation in the respiratory tract, temporarily making breathing more difficult.

28.    As the door to Cell 7 closed, and after Victim 2 was secured inside of the cell, defendant VILLANUEVA reached through the bars and sprayed OC spray into Cell 7, while Victim 2 attempted to shield himself with a mattress.

29.    Defendant VILLANUEVA temporarily walked away from the area of Cell 7.  Less than approximately one minute later, however, defendant VILLANUEVA returned to Cell 7 with a can of OC spray in his hand.  Defendant VILLANUEVA attempted to administer OC spray into Cell 7 at Victim 2 as the cell door began to open, pursuant to a command defendant VILLANUEVA had issued to Police Aide 1.

30.    As a result of the OC spray administered by defendant VILLANUEVA, Victim 2 suffered burning sensations on the skin of his face and elsewhere on his body.

31.    Following defendant VILLANUEVA's assault on Victim 2 with the OC spray, defendant VILLANUEVA completed an incident report that contained

MER-L-002304-23  12/13/2023 8:33:01 AM  Pg 20 of 57  Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ    Document 2-2    Filed 12/11/25    Page 24 of 275 PageID: 147

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 10 of 13 PageID: 10

numerous false statements designed to conceal his unlawful conduct and improper treatment of Victim 2.

32.    On or about November 28, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**ANTHONY VILLANUEVA,**

did, while acting under color of law, assault Victim 2, a pretrial detainee, by spraying Victim 2 with OC spray while Victim 2 was confined in a cell, thereby willfully depriving Victim 2 of the right, secured and protected by the Fourteenth Amendment of the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes the right of a pretrial detainee to be free from the use of objectively unreasonable force. This offense resulted in bodily injury to Victim 2.

In violation of Title 18, United States Code, Section 242.

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 21 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 25 of 275 PageID: 148
Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 11 of 13 PageID: 11

## COUNT 6
### (Falsification of Record)

33.    The allegations set forth in paragraphs 1, 15, and 21 through 32 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

34.    On or about November 28, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

### ANTHONY VILLANUEVA,

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Incident/Investigation Report about the November 28, 2017 incident involving Victim 2, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter, that is, defendant VILLANUEVA falsely reported that: (a) he had been forced to engage in a long struggle with Victim 2 in order to get Victim 2 into a cell; (b) had required the assistance of Police Aide 1 in order to do so; (c) after Victim 2 entered the cell, Victim 2 began to scream and cause a disturbance that caused the other inmates to become irate; (d) only then did defendant VILLANUEVA approach the cell and order Victim 2 to get on the ground; and (e) defendant VILLANUEVA first issued a warning to Victim 2, before grabbing a can of OC spray and then spraying Victim 2.

11

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 22 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 26 of 275 PageID: 149

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 12 of 13 PageID: 12

In violation of Title 18, United States Code, Section 1519.

CRAIG CARPENITO
UNITED STATES ATTORNEY

12

Case 3:19-cr-00292-PGS  Document 1  Filed 04/18/19  Page 13 of 13 PageID: 13

CASE NUMBER: _19-292-ALL (BLM)_

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

ANTHONY VILLANUEVA and DREW INMAN

INDICTMENT FOR

18 U.S.C. §§ 2, 242 & 1519

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

MOLLY S. LORBER, R. JOSEPH GRIBKO & RAY A. MATEO
ASSISTANT U.S. ATTORNEYS
TRENTON, NEW JERSEY
(609) 989-2190

# EXHIBIT "B"

Case 3:19-cr-00292-PGS   Document 7   Filed 04/23/19   Page 1 of 1 PageID: 18

AO 458 (Rev. NJ 03/14) Notice of Appearance - Criminal

# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

ANTHONY VILLANUEVA
Defendant.

**NOTICE OF APPEARANCE IN A
CRIMINAL CASE**

Case No.    19-CR-292-1 (BRM)

To the Clerk of this Court and all parties of record:

Enter my appearance as counsel in this case for:

_____ANTHONY VILLANUEVA_____
Name of Defendant

I hereby certify under penalty of perjury that I am a member in good standing of the bar of the following Court(s), as of the indicated year of admission, and that I am not the subject of suspension or disbarment from any Court.

Court(s)

**4/23/2019**

Date

Year(s) of Admission    *1779*

Signature of Attorney

JEROME BALLAROTTO
Print Name

Address

City, State, Zip Code

Email Address

Phone Number    *609 581 8555*

Fax Number    *581 9509*

**RECEIVED**

APR 2 3 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

# EXHIBIT "C"

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 27 of 57   Trans ID: LCV20233612471
Case 3:25-cv-18181-RK-JTQ   Document 2-2   Filed 12/11/25   Page 31 of 275 PageID:
154

Case 3:19-cr-00292-PGS   Document 20   Filed 09/17/19   Page 1 of 1 PageID: 54

RECEIVED

SEP 17 2019

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

AT 8:30_____
WILLIAM T. WALSH  M
CLERK

UNITED STATES OF AMERICA

      Plaintiff,

    v.

ANTHONY VILLANUEVA, ET AL.,

      Defendant.

Crim No. 19-292 (BRM) (01)

**ORDER OF SEVERANCE**

    This matter having been opened to the Court by way of motion by Jerome A.

Ballarotto, Esq. appearing on behalf of Defendant, Anthony Villanueva and in the

presence of Joseph Gripko and Ray Mateo, Assistant United States Attorneys on

behalf of the Government, and the Court having considered oral argument and letter

memorandum of Jerome A. Ballarotto, Esq.

    IT IS on this _17th_ day of ~~July~~ Sept. 2019;

    ORDERED that the motion for severance for Counts 5 and 6 of the

Indictment Number 19-292 has been granted.

Honorable Brian R. Martinotti, U.S.D.J.

**EXHIBIT "D"**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Honorable Peter G. Sheridan |
| v. | : | |
| | : | |
| ANTHONY VILLANUEVA, | : | Criminal No. 19-292 (PGS) |
| and | : | |
| DREW INMAN | : | **VERDICT SHEET** |
| | : | |

## COUNT ONE
### (as to Defendant Anthony Villanueva)

1.      With respect to Count One, the Government must prove beyond a reasonable doubt that Defendant Anthony Villanueva, on or about April 9, 2017, while acting under color of law, and/or aiding and abetting another, as a police officer with the Trenton Police Department, willfully deprived Chanzie Washington of a right secured and protected by the United States Constitution and laws of the United States, that is, the right to be free from unreasonable seizure by one acting under color of law, which includes the right to be free from the use of unreasonable force, in violation of Title 18, United States Code, Section 242.

We, the unanimous jury, find:

Defendant Anthony Villanueva:


NOT GUILTY __X__   GUILTY _____

1

Case 3:19-cr-00292-PGS Document 130 Filed 05/15/23 Page 2 of 5 PageID: 2195

*If you find defendant Anthony Villanueva guilty of Count One, Question 1,*

*please answer question 1(A). Otherwise please go to question 2 and continue to*

*answer the questions.*

**1(A). Did the United States prove beyond a reasonable doubt that Defendant Anthony Villanueva's actions resulted in bodily injury to Chanzie Washington?**

Yes _____            *N A*

No _____

*Please proceed to Question 2.*

2

Case 3:19-cr-00292-PGS   Document 130   Filed 05/15/23   Page 3 of 5 PageID: 2196

## **COUNT TWO**

3.    With respect to Count Two, did the Government prove beyond a reasonable doubt that Defendant Anthony Villanueva knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, that is, on or about April 9, 2017, Anthony Villanueva authored and submitted a false and misleading Trenton Police Department Use of Force Report, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count One, in violation of Title 18, United States Code, Section 1519.

We, the unanimous jury, find:

Defendant Anthony Villanueva:

NOT GUILTY __ X __    GUILTY _____

*Please proceed to the next Count.*

4

## COUNT THREE

4.       With respect to Count Three, did the Government prove beyond a reasonable doubt that Defendant Anthony Villanueva knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, that is, on or about April 9, 2017, Anthony Villanueva authored and submitted a false and misleading Trenton Police Department Case Supplemental Report, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count One, in violation of Title 18, United States Code, Section 1519.

We, the unanimous jury, find:

Defendant Anthony Villanueva:


NOT GUILTY  ✗   GUILTY ____


*Please proceed to the next Count.*

5

Case 3:19-cr-00292-PGS   Document 130   Filed 05/15/23   Page 5 of 5 PageID: 2198

## COUNT FOUR

5.　　With respect to Count Four, did the Government prove beyond a reasonable doubt that Defendant Drew Inman knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, that is, on or about April 9, 2017, Drew Inman authored and submitted a false and misleading Trenton Police Department Use of Force Report, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count One, in violation of Title 18, United States Code, Section 1519.

We, the unanimous jury, find:

Defendant Drew Inman:

NOT GUILTY _X_   GUILTY ____

FOREPERSON

Date: 5/15/23

6

**EXHIBIT "E"**

# JEROME A BALLAROTTO
## ATTORNEY AT LAW

143 White Horse Avenue
Trenton, NJ 08610
609-581-8555

604 Whitehead Street
Key West, FL 33040
305-296-2270

Email: JABESQUIRE@aol.com

www.ballarotto law.com

June 23, 2023

VIA EMAIL TO BGARCIA@TRENTONNJ.ORG AND US MAIL
Brandon Garcia, City Clerk
319 East State Street
Trenton, NJ 08608

### RE:  UNITED STATES vs POLICE OFFICER ANTHONY VILLANUEVA

Dear Sir,

On April 18, 2019 officer Villanueva was indicted by the US Attorney in the district of New Jersey for the crime of assault on Mr. Washington, thereby violating his Constitutional rights and filing false police records, all within the performance of his duties as a Trenton Police officer.  Three counts of this Indictment for his conduct with Mr. Washington on 4/19/2017 was tried in US District Court in Trenton NJ and Officer Villanueva was acquitted on all charges.  Counts 5 and 6 which involve allegations on 11/28/2017 with a different individual under completely different circumstances were severed for trial at a later date.  On May 23, 2023 a Judgment of Acquittal on counts 1,2 and3 were filed by the US District Court.

Attached is a copy of the Indictment as well as the judgment of Acquittal.

Also attached hereto is an itemized record of the legal expenses incurred in Mr. Villanueva's defense.  At this time I am seeking reimbursement of these expenses pursuant to NJSA 40A:14-155.   .

The attached bills reveal a total of 489 hours of legal work at the rate of $500 an hour totaling $244,500.00 in legal fees.  Please make the check payable to Jerome A. Ballarotto, Attorney at law.

Please advise me of your intention with regard to this matter

Very truly yours,

Jerome A. Ballarotto, Esq

(41099528:1)

**JEROME A. BALLAROTTO**
**ATTORNEY AT LAW**
**143 WHITEHORSE AVENUE**
**TRENTON, NEW JERSEY 08610**
**(609) 581-8555**
**Email: jabesquire@aol.com**

CLAIM NUMBER: PBA 16-0489

RE: ANTHONY VILLANEUVA

INVOICE NO.3

FOR SERVICES RENDERED FROM JANUARY 31, 2021 THROUGH MARCH 3, 2022

## WORKED PERFORMED BY ATTORNEY JEROME A. BALLARORTTO

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 1/28/21 | REVIEW RESPONSE REPORT FROM EXPERT AND CONTACT AUSA | 2.50 |
| 2/19/21 | TELEPHONE CONFERENCE WITH ROSS BOWEN INVESTIGATOR | 0.30 |
| 2/19/21 | LETTER TO AUSA | 0.40 |
| 4/22/21 | TELEPHONE CONFERENCE WITH COURT | 0.20 |
| 7/2/21 | TELEPHONE CONFERENCE WITH GLENN MILLER EXPERT | 0.40 |
| 7/2/21 | TELEPHONE CONFERENCE WITH ROSS BOWEN | 0.40 |
| 7/2/21 | REVIEW INTERNAL AFFAIRS RECORDS | 2.50 |
| 7/12/21 | TELEPHONE CONFERENCE WITH ROSS BOWEN | 0.40 |
| 7/12/21 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 7/12/21 | TELEPHONE CONFERENCE WITH GLENN MILLER | 0.50 |
| 7/15/21 | REVIEW REPORTS FROM EXPERT GLENN MILLER | 2.50 |

| Date | Description | Hours |
|---|---|---|
| 7/15/21 | TELEPHONE CONFERENCE WITH EXPERT GLENN MILLER | |
| 7/16/21 | TELEPHONE CONFERENCE WITH INVESTIGATOR ROSS BOWEN | 0.40 |
| 7/28/21 | TELEPHONE CONFERENCE WITH EXPERT GLENN MILLER | 0.40 |
| 7/30/21 | TELEPHONE CONFERENCE AND EMAIL TO AUSA | 0.40 |
| 7/30/21 | REVIEW EXPERT REPORT | 0.40 |
| 7/31/21 | EMAIL TO/FROM AUSA | 2.50 |
| 7/31/21 | TEXT TO INVESTIGATOR ROSS BOWEN | 0.30 |
| 9/1/21 | CONFERENCE WITH PRIVATE INVESTIGATOR | 0.30 |
| 9/3/21 | TELEPHONE CONFERENCE WITH AUSA | 0.50 |
| 10/6/21 | CONFERENCE WITH COURT AND CO-COUNSEL | 0.40 |
| 10/6/21 | CONFERENCE WITH CO-COUNSEL SCOTT KRASNEY | 0.40 |
| 10/7/212 | REVIEW NEW ORDER | 0.30 |
| 10/98/21 | REVIEW EXPERT REPORT, CONFERENCE WITH CO-COUNSEL ON LEGAL NEED ON CHARGE | 6.50 |
| 10/19/21 | TELEPHONE CONFERENCE WITH EXPERT | 0.50 |
| 10/19/21 | TELEPHONE CONFERENCE WITH CATANZARO | 0.30 |
| 10/19/21 | TELEPHONE CONFERENCE WITH CO-COUNSEL AND AUSA | 0.50 |
| 10/19/21 | PREPARE EXPERT REPORT | 2.50 |

**2022**

| Date | Description | Hours |
|---|---|---|
| 1/31/22 | REVIEW DISCOVERY - NEW REPORT | 4.50 |
| 2/2/22 | PREPARE COURT ORDER | 1.50 |
| 2/16/22 | REVIEW DISCOVERY | 3.00 |

| 2/28/22 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 3/2/22 | PREPARE FOR ORAL ARGUMENT ON MOTIONS | 2.50 |
| 3/3/22 | REVIEW ORDER FROM THE COURT | 0.30 |
| 3/3/22 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 3/2/22 | IN COURT PRETRIAL MOTIONS ARGUED | 2.00 |

**HOURS TO DATE**

41.9

**JEROME A. BALLAROTTO**
**ATTORNEY AT LAW**
**143 WHITEHORSE AVENUE**
**TRENTON, NEW JERSEY 08610**
**(609) 581-8555**
**Email: jabesquire@aol.com**

CLAIM NUMBER: PBA 16-0489

RE: ANTHONY VILLANEUVA

INVOICE NO. 1 FOR SERVICES RENDERED FROM NOVEMBER 3, 2018
THROUGH JULY 31, 2019

## WORKED PERFORMED BY ATTORNEY JEROME A. BALLARORTTO

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 11/3/18 | OFFICE CONFERENCE WITH CLIENT | 1.00 |
| 11/5/18 | OFFICE CONFERENCE WITH CLIENT AND FATHER | 0.60 |
| 11/5/18 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 11/5/18 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 11/8/18 | TELEPHONE CONFERENCE WITH GEORGE DOUGHERTY | 0.40 |
| 11/8/18 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 11/16/18 | TRAVEL TO US ATTORNEY'S OFFICE FOR CONFERENCE | 2.00 |
| 11/17/18 | LEGAL RESEARCH | 1.50 |
| 11/17/18 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 11/17/18 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 11/21/18 | LEGAL RESEARCH | 2.50 |
| 11/28/18 | CONFERENCE WITH AUSA, CLIENT AND INVESTIGATOR REVIEW VIDEO | 2.50 |
| 11/30/18 | TELEPHONE CONFERENCE WITH INVESTIGATOR | 0.40 |

| Date | Description | Hours |
|---|---|---|
| 12/3/18 | OFFICE CONFERENCE WITH CLIENT AND FATHER | 1.00 |
| 12/4/18 | TELEPHONE CONFERENCE WITH ANGELO ONIFRI MERCER COUNTY PROSECUTOR | 0.30 |
| 12/4/18 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 12/5/18 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 1/10/19 | TELEPHONE CONFERENCE WITH INVESTIGATOR | 0.30 |
| 1/11/19 | OFFICE CONFERENCE WITH CLIENT, TELEPHONE CONFERENCE  WITH AUSA AND REVIEW VIDEOS | 2.50 |
| 1/12/19 | REVIEW TAPES AND REPORTS FROM INVESTIGATOR | 3.00 |
| 1/15/19 | TELEPHONE CONFERENCE WITH GEORGE DOUGHERTY | 0.30 |
| 1/16/19 | REVIEW TRANSCRIPT OF OAL HEARING | 4.50 |
| 4/5/19 | REVIEW EMAIL FROM AUSA LORBER WITH OAL DECISION | 2.50 |
| 4/8/19 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 4/8/19 | TELEPHONE CONFERENCE WITH OAL COUNSEL GEORGE DOUGHERTY | 0.30 |
| 4/9/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/9/19 | REVIEW PROPOSED PLEA AGREEMENT FROM AUSA | 1.50 |
| 4/9/19 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 4/10/19 | EMAIL TO CLIENT | 0.40 |
| 4/10/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/11/19 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 4/11/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/12/19 | OFFICE CONFERENCE WITH CLIENT AND FAMILY | 1.00 |
| 4/12/19 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |

| 4/23/19 | REVIEW INDICTMENT AND ARREST WARRANT | 1.00 |
| 4/23/19 | PREPARE AND FILE NOTICE OF APPEARANCE | 0.20 |
| 4/23/19 | TRAVEL TO TRENTON FOR INITIAL APPEARANCE | 2.60 |
| 4/23/19 | REVIEW CONDITIONS OF PRETRIAL RELEASE WITH CLIENT | 0.30 |
| 4/24/19 | TRAVEL TO TRENTON FOR ARRAIGNMENT, IN CHAMBERS CONFERENCE WITH JUDGE, AUSA AND CO-COUNSEL | 2.60 |
| 4/24/19 | OFFICE CONFERENCE WITH CLIENT, PRIVATE INVESTIGATOR, AND FAMILY | 2.00 |
| 4/24/19 | REVIEW ORDER TO CONTINUE PROVIDED BY AUSA | 0.20 |
| 4/24/19 | REVIEW AND CALENDAR SCHEDULING ORDER BY THE COURT | 0.20 |
| 4/25/19 | REVIEW EMAIL FROM PRETRIAL SERVICES CONTAINING LIST OF POTENTIAL WITNESSES | 0.10 |
| 4/29/19 | LEGAL RESEARCH ON SEVERANCE MOTION | 4.00 |
| 4/30/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/30/19 | TELEPHONE CONFERENCE WITH PRIVATE INVESTIGATOR | 0.50 |
| 5/22/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 5/22/19 | REVIEW VIDEOS | 3.00 |
| 5/28/19 | OFFICE CONFERENCE WITH CLIENT AND ROSS BOWEN | 2.00 |
| 5/29/19 | REVIEW EMAIL FROM ROSS BOWEN, INVESTIGATOR WITH ATTACHMENT | 0.10 |
| 4/6/19 | TELEPHONE CONFERENCE ROSS BOWEN | 0.30 |
| 6/3/19 | REVIEW EMAIL FROM AUSA OFFICE CONTAINING | |

| | DISCOVERY DATED 5/31/19 | 0.30 |
|---|---|---|
| 6/4/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 6/10/19 | TELEPHONE CONFERENCE WITH ROSS BOWEN | 0.30 |
| 6/10/19 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 6/11/19 | TELEPHONE CONFERENCE WITH AUSA AND DISCOVERY CLERK | 0.40 |
| 6/12/19 | REVIEW VIDEOS | 2.50 |
| 6/15/19 | REVIEW VIDEOS | 2.50 |
| 6/21/19 | LEGAL RESEARCH | 2.00 |
| 6/22/19 | LEGAL RESEARCH AND BEGIN DRAFT OF BRIEF | 5.50 |
| 6/29/19 | WORK ON DRAFT BRIEF REVIEW LEGAL RESEARCH | 4.50 |
| 7/1/19 | REVIEW EMAIL FROM AUSA OFFICE CONTAINING DISCOVERY DATED 6/26/19 | 0.80 |
| 7/5/19 | REVISE AND FINALIZE BRIEF | 2.00 |
| 7/16/19 | PREPARE MOTION FOR SEVERANCE | 6.00 |
| 7/17/19 | OFFICE CONFERENCE WITH CLIENT, INVESTIGATOR AND PARALEGAL | 2.50 |
| 7/29/19 | REVIEW EMAIL FROM COURT RESCHEDULING HEARING AND CALENDAR | 0.10 |

**TOTAL HOURS FOR JEROME A. BALLAROTTO, ESQ.**          83.10

**JEROME A. BALLAROTTO**
**ATTORNEY AT LAW**
**143 WHITEHORSE AVENUE**
**TRENTON, NEW JERSEY 08610**
**(609) 581-8555**
**Email: jabesquire@aol.com**

CLAIM NUMBER: PBA 16-0489

RE: ANTHONY VILLANEUVA

INVOICE NO. 2 FOR SERVICES RENDERED FROM AUGUST 1, 2019 THROUGH OCTOBER 31, 2020

**WORKED PERFORMED BY ATTORNEY JEROME A. BALLARORTTO**

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 8/20/19 | REVIEW DISCOVERY TAPES | 2.00 |
| 10/1/19 | TELEPHONE CONFERENCE WITH ROSS BOWEN ON EXPERT | 0.30 |
| 10/2/19 | CONFERENCE WITH AUSA | 0.30 |
| 10/3/19 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 10/7/19 | TELEPHONE CONFERENCE WITH INVESTIGATOR AND AUSA | 0.40 |
| 10/25/19 | TELEPHONE CONFERENCE WITH GLENN MILLER EXPERT | 0.40 |
| 10/30/19 | TELEPHONE CONFERENCE WITH EXPERT | 0.50 |
| 12/18/19 | REVIEW VIDEOS PROVIDED IN DISCOVERY | 3.00 |
| 2020 | | |
| 1/6/20 | REVIEW EXPERT REPORTS | 3.50 |
| 1/7/20 | TRAVEL TO TRENTON FOR CONFERENCE AND CONFERENCE WITH CLIENT | 2.50 |
| 2/3/20 | OFFICE CONFERENCE WITH CLIENT | 2.00 |

| 2/5/20 | REVIEW DISCOVERY, INCLUDING POLICE REPORTS, AND EXPERT REPORTS | 3.00 |
| 2/7/20 | PREPARE CORRESPONDENCE TO AUSA, PREPARE SUBPOENA NS REVIEW EXPERT REPORTS | 4.50 |
| 2/10/20 | TELEPHONE CONFERENCE WITH PRIVATE INVESTIGATOR | 0.30 |
| 4/10/20 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 4/10/20 | REVIEW NEW INFORMATION PROVIDED BY AUSA | 2.50 |
| 4/21/20 | REVIEW DISCOVERY | 3.50 |
| 5/18/20 | REVIEW EXPERT REPORT | 3.50 |
| 5/20/20 | REVIEW INTERNAL AFFAIRS FILE | 3.00 |
| 5/22/20 | TELEPHONE CONFERENCE WITH PRIVATE INVESTIGATOR BOWEN | 0.30 |
| 7/11/20 | REVIEW REPORT FROM EXPERT AND PREPARE NEW REPORT | 3.50 |
| **TOTAL HOURS THROUGH OCTOBER 31, 2020** | | **39.60** |

# VILLANEUVA

| Date Due | Attorney Work | Attorney Time |
|---|---|---|
| 3/9/22 | Reviewed reports and video | 2.0 |
| 3/31/22 | Office conference with client and email to PI | 1.0 |
| 5/26/22 | Telephone conference with client | .4 |
| 5/26/22 | Reviewed Court Order and Opinion | 1.2 |
| 6/3/22 | Reviewed court order and opinion | 1.5 |
| 7/12/22 | In-Court. Pretrial conference | .5 |
| 2/1/23 | Review and write jury questionnaire | 2.5 |
| 3/2/23 | Reviewed OB videos | 2.5 |
| 3/6/23 | Telephone conference with counsel | .3 |
| 3/6/23 | Reviewed Exhibit List | 1.5 |
| 3/7/23 | Reviewed Draft transcripts | 3.5 |
| 3/8/23 | Compared transcripts to videos, conference with client | 4.5 |
| 3/13/23 | Prepared transcripts | 3.5 |
| 3/16/23 | Reviewed discovery, Reports of police, Expert reports, statements and Trial preparation | 4.5 |
| 3/17/23 | Telephone conference with AUSA | .3 |
| 3/18/23 | Reviewed Government Motions and prepared response | 3.5 |
| 3/23/23 | Trial preparation, review of discovery | 4.5 |
| 3/27/23 | Review of videos and office conference with counsel | 2.5 |
| 3/29/23 | Conference with client and PI | 2.0 |
| 3/29/23 | Reviewed IAO videos | 2.5 |
| 3/30/23 | Reviewed info from client and IAD videos | 3.5 |
| 3/31/23 | Telephone conference with client | .3 |
| 4/1/23 | Reviewed Government Motions | 1.5 |
| 4/1/23 | Legal research | 1.5 |
| 4/1/23 | Reviewed IAD videos | 2.5 |
| 4/3/23 | Prepared second round of Motions | 4.0 |
| 4/3/23 | Telephone conference with AUSA | .3 |
| 4/3/23 | Telephone conference with client | .3 |

| 4/4/23 | Responded to Government Motions | 2.5 |
|--------|--------------------------------|-----|
| 4/4/23 | Legal research | 1.5 |
| 4/4/23 | Telephone conference with client and PI | .4 |
| 4/6/23 | Reviewed jury charges | 2.5 |
| 4/8/23 | Legal research on Motions | 1.5 |
| 4/8/23 | Prepared opposition Brief to Governments Motions | 4.5 |
| 4/10/23 | Prepared legal Memo | 3.5 |
| 4/10/23 | PTC with court | .5 |
| 4/11/23 | Continued to review IAD videos, prepared synopsis | 3.5 |
| 4/13/23 | Review of discovery, Trial preparation, reviewed OB cameras and telephone conference with client | 3.0 |
| 4/15/23 | Receipt and review of JENCKS | 4.5 |
| 4/16/23 | Reviewed JENCKS and Trial preparation | 6.0 |
| 4/18/23 | Telephone conference with counsel | .3 |
| 4/18/23 | Telephone conference with client | .3 |
| 4/18/23 | Email to PI | .4 |
| 4/18/23 | Reviewed **** statements | 3.5 |
| | | |
| **TOTAL HOURS** | | **97.0** |

# VILLANEUVA

| Date | Attorney Work | Time |
|---|---|---|
| 4/19/23 | Reviewed Jencks | 4.5 |
| 4/20/23 | Print and organize Jencks and read | 6.5 |
| 4/21/23 | Telephone conference with AUSA | .3 |
| 4/21/23 | Email exchange with Court and AUSA | .4 |
| 4/21/23 | Review Jencks and written discovery | 5.5 |
| 4/22/23 | Trial preparation, reviewed BW Cameras | 9.5 |
| 4/23/23 | Trial preparation, reviewed BW Cameras | 10.0 |
| 4/24/23 | Jury selection | 6.5 |
| 4/24/23 | Trial preparation | 5.0 |
| 4/25/23 | Jury selection | 6.0 |
| 4/25/23 | Trial preparation, review videos | 4.5 |
| 4/26/23 | Jury selection | 6.0 |
| 4/26/23 | Trial preparation, review of IAD videos and transcripts | 6.5 |
| 4/27/23 | Conference with client | 1.5 |
| 4/27/23 | Reviewed Grand Jury transcripts | 4.0 |
| 4/27/23 | Reviewed government's Exhibits | 2.5 |
| 4/27/23 | Reviewed BWC videos | 3.5 |
| | | |

| Date | Description | Hours |
|------|-------------|-------|
| 4/28/23 | Trial preparation, review of government's Exhibits, legal research on HS, prepared opposition Brief, prepared opening statement | 10.5 |
| 4/29/23 | Trial preparation, review of IAD videos | 6.0 |
| 4/29/23 | Prepared opposition to government's Motions, telephone conference with PI and telephone conference with ex parte | 3.5 |
| 4/29/23 | Prepared cross-opening | 4.0 |
| 4/30/23 | Trial preparation, reviewed Jencks material | 10.5 |
| 5/1/23 | Trial openings and testimony | 8.0 |
| 5/1/23 | Conference with client and father, review of Exhibits, review Jencks, prepared cross | 4.0 |
| 5/2/23 | Trial testimony | 8.0 |
| 5/2/23 | Trial preparation, prepared cross, reviewed IAD tapes, reviewed BWC tapes | 5.0 |
| 5/3/23 | Trial testimony | 8.0 |
| 5/2/23 | Trial preparation, prepared cross, reviewed Jencks | 5.5 |
| 5/4/23 | Trial | 8.0 |
| 5/4/23 | Trial preparation, prepared cross, reviewed Jencks | 6.5 |
| 5/5/23 | Charge conference | 2.0 |
| 5/5/23 | Trial preparation, reviewed videos, government Exhibits, Trial notes | 8.5 |
| 5/6/23 | Prepared summation, organized evidence, reviewed videos | 8.0 |

| 5/7/23 | Prepared summation, organized videos for presentation | 9.0 |
| 5/8/23 | Summations/charge, jury deliberation | 8.0 |
| 5/9/23 | Jury deliberations, conference with client and family | 7.5 |
| 5/10/23 | Jury deliberations, conference with client and family | 7.5 |
| 5/11/23 | Jury deliberations, conference with client and family, conference with Court and AUSA | 7.5 |
| 5/12/23 | Jury deliberations | 7.0 |
| 5/15/23 | Jury deliberations, verdict, conference with client and family, conference with Court and AUSA | 6.5 |
| **TOTAL HOURS** | | **241.7** |

## TOTAL HOURS FOR DEFENSE OF ANTHONY VILLANUEVA
## FOR INCIDENT ARISING ON APRIL 9, 2017

41.90

83.10

39.60

97.00

241.70

**TOTAL**              503.30


**503.30 @ $500= $251,650**

**Plus Bowen Investigations for $4,166.37**


**GRAND TOTAL OF $255,816.37**

**EXHIBIT "F"**

Jun 13 23, 02:09p      Ross Bowen                               908-284-1384              p.1

# BOWEN INVESTIGATIVE SERVICES, LLC

## PRIVATE INVESTIGATIONS

### New Jersey State Police Retired

---

### PROFESSIONAL AND CONFIDENTIAL

Ross Bowen                                              Phone  : (908) 237-9000
143 White Horse Avenue                                 Cell   : (908) 586-2900
Trenton, New Jersey 08610                              Fax    : (908) 284-1384

June 6th, 2023

Jerome A. Ballarotto, Esquire
143 White Horse Avenue
Trenton, New Jersey 08610

RE:  United States v. Officer Anthony Villanueva

Dear Mr. Ballarotto :

Please accept this billing for services rendered from March 28th, 2023 to April 23rd 2023 in the furtherance of the referenced matter.  In accordance with our agreement, we billed at the rate of seventy-five dollars ($75) for each investigative hour.  A billing breakdown is as follows.

---

### INVESTIGATION BILLING TOTALS

| | |
|---|---|
| Investigative Hours | $3,907.50 |
| N.J. Sales Tax @6.675 | $  258.87 |
| **BALANCE DUE** | **$4,166.37** |

(See Attached Invoice)

---

Thank you for allowance us the opportunity to serve your Firm.

Sincerely yours,

Ross Bowen
Bowen Investigative Services LLC

-1-

Jun 13 23, 02:10p        Ross Bowen                          908-284-1384              p.2

**Ross Bowen, Private Investigator**

143 White Horse Avenue
Trenton, NJ 08610

**Invoice**

| Date | Invoice # |
|------|-----------|
| 6/5/2023 | 150 |

**Bill To**

JEROME A. BALLAROTTO, ESQUIRE
143 WHITE HORSE AVENUE
TRENTON, N.J. 08610
U.S.A. v. ANTHONY VILLANUEVA

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 10.5 | MARCH - APRIL 2023 <br> Viewed recordings of interviews conducted by the Mercer County Prosecutors Office, Internal Affairs Unit of seven (7) Officers. | 75.00 | 787.50T |
| 6.5 | MARCH - APRIL 2023 <br> Viewed the on-body recordings of nineteen (19) Officers | 75.00 | 487.50T |
| 2.4 | MARCH 29th, 2023 <br> Meeting with Jerome A. Ballarotto, Esquire and Anthony Villanueva for trial preparation | 75.00 | 180.00T |
| 2 | APRIL 1ST, 2023 <br> Viewed all other electronic files provided in discovery | 75.00 | 150.00T |
| 10.5 | APRIL 3RD, 2023 <br> Prepared report detailing findings from the review of Internal Affairs Unit interviews and review of on-body cameras | 75.00 | 787.50T |
| 1.4 | APRIL 10TH, 2023 <br> Telephone conference with Peter Paris, Esquire, Officer Samuel Johnson and Officer Anthony Villanueva | 75.00 | 105.00T |

**Total**

| Phone # | Fax # | E-mail |
|---------|-------|--------|
| 908-237-9000 | 908-284-1384 | bowen2818@earthlink.net |

Page 1

Jun 13 23, 02:10p     Ross Bowen                    908-284-1384          p.3

**Invoice**

**Ross Bowen, Private Investigator**

143 White Horse Avenue
Trenton, NJ 08610

| Date | Invoice # |
|------|-----------|
| 6/5/2023 | 150 |

**Bill To**

JEROME A. BALLAROTTO, ESQUIRE
143 WHITE HORSE AVENUE
TRENTON, N.J. 08610
U.S.A. v. ANTHONY VILLANUEVA

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 2.6 | APRIL 14TH, 2023<br>Office meeting with Jerome Ballarotto, Esquire and Officer Michael Davis | 75.00 | 195.00T |
| 2.7 | APRIL 17TH, 2023<br>Telephone conference with Jerome Ballarotto, Esquire. As requested, viewed again Internal Affairs Unit interview video of Officer Nicholas Mahan. Updated interview video report. Telephone conference with Officer Maria Paccillo | 75.00 | 202.50T |
| 3.1 | APRIL 18TH, 2023<br>Office meeting with Scott Krasny, Esquire, Peter Paris Esquire, and Officer Nicholas Mahan | 75.00 | 232.50T |
| 4 | APRIL 20TH, 2023<br>Viewed the Internal Affairs Unit interview video of Officer Mark Kieffer. Wrote synopsis detailing contents of same | 75.00 | 300.00T |
| 6.4 | APRIL 23RD, 2023<br>Traveled to Hanover Street, Trenton, New Jersey with Jerome A. Ballarotto, Esquire and Officer Anthony Villanueva. Viewed site of subject incident Returned to office for trial preparation | 75.00 | 480.00T |
| | | 6.625% | 258.87 |

| Phone # | Fax # | E-mail | Total | $4,166.37 |
|---------|-------|--------|-------|-----------|
| 908-237-9000 | 908-284-1384 | bowen2818@earthlink.net | | |

Page 2

# EXHIBIT "G"

## Certification of Joseph A. Hayden, Jr.  re:
## Legal Fees - Jerome A. Ballarotto

1.      I am an attorney at law licensed to practice in the State of New Jersey since 1969.

### BACKGROUND AND PERSONAL QUALIFICATIONS

2.      I am a graduate of Rutgers Law School, magna cum laude and I then served as the judicial law clerk to Chief Justice Joseph Weintraub of the New Jersey Supreme Court in 1969. After serving for three (3) years in the Division of Criminal Justice, I entered private practice and have been actively engaged in trial work in state and federal court since 1973. I am the founder and first president of the Association of Criminal Defense Lawyers, a past president of the Association of the Federal Bar and a Past Trustee of the New Jersey State Bar Association. I have been elected by my peers as a Fellow of the American College of Trial Lawyers, as well as a Fellow to the International College of Trial Lawyers. I am also a recipient of the Brennan Award from the federal bar and the Whipple Award from the criminal defense bar.

3.      I offer this certification in direct support of Mr. Jerome A. Ballarotto's application for legal fees based upon my experience and observations of him throughout the years.  I believe that his request to be compensated at the rate of $500 an hour is reasonable and appropriate given his experience and professional reputation.

4.      Mr. Ballarotto was admitted to the practice of law in 1979 and he has been active in private practice since 1987.  He is a former special agent of the United States Secret Service, a former Essex County Assistant Prosecutor, a former Deputy Attorney General for the State of New Jersey, and a former Assistant United States Attorney.  His reputation among the trial bar in New Jersey is of the highest level, and his reputation for ethics and professionalism is beyond reproach.

6.      Given Mr. Ballarotto's vast experience, and his reputation in the legal community for trial skills and professionalism, the hourly rate he proposes is more than reasonable.

7.      I have known and worked with Mr. Ballarotto for over twenty-five (25) years, and I can personally attest to his reputation as well.

8.      I hereby certify that the foregoing statements are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

July 24, 2023

Joseph A. Hayden, Jr., Esq.

***LAW OFFICE OF MARK W. CATANZARO***
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

|  |  |
|---|---|
| : | : **SUPERIOR COURT OF NEW JERSEY** |
| **ANTHONY VILLANUEVA** | : **LAW DIVISION - MERCER COUNTY** |
| : | |
| **Plaintiff** : | : |
| **V.** | : **CIVIL ACTION** |
| : | : |
| **CITY OF TRENTON** | : **DOCKET NO.: MER-L-** |
| : | : |
| **Defendant.** | : **ORDER TO SHOW CAUSE** |
| : | : |
| _____ : | |

      **THIS MATTER**, being opened to the Court by Mark W. Catanzaro, Esquire, attorney for Plaintiff Police Officer Anthony Villanueva seeking relief by way of summary action pursuant to R. 4:67-1(a), based upon that facts set forth in the Verified Complaint filed herewith; and the Court having determined that this matter may be commenced by Order to Show Cause as a summary proceeding pursuant to N.J.S.A. 40A:14-155 and for good cause shown,

1

**IT IS** on this _____ day of _____, 2023,

**ORDERED** that the Defendant the City of Trenton must show cause on the

_____ day of _____, 2023 before the Superior Court at the

Mercer County Civil Courthouse in Trenton, New Jersey at _____ o'clock in the

a.m./p.m., or as soon thereafter as counsel can be heard, why judgment

should not be entered:

  A.    Ordering the Defendant reimburse Plaintiff Anthony  Villanueva for

        his attorney's fees and costs related to the criminal charges

        assessed against him on April 9, 2017; and

  B.    Granting such other relief as the court deems equitable        and

        just.

And it is further **ORDERED** that:

1. A copy of this Order to Show Cause, Verified Complaint   and all

supporting Affidavits or Certifications submitted in support of this application

be served upon Defendants, personally, within _____ days of the date

hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

2. The Plaintiff must file with the Court his proof of service of the

pleadings on Defendant no later than (3) days before the return date.

2

3. Defendant shall file and serve a written Answer, answering affidavit or a motion returnable on the return date to this Order to Show Cause and the relief requested in the Verified Complaint and proof of service of the same by _____, 2023. The Answer, answering affidavit or a motion, as the case may be, must be filed with the Clerk of the Superior Court in the county listed above and a copy of the papers must be sent directly to the chambers of Judge _____.

4. The Plaintiff must file and serve any written reply to Defendant's Order to Show Cause opposition by _____, 2023. The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chamber of Judge _____.

5. If Defendant does not file and serve opposition to this Order to Show Cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of order at least three days prior to the return date.

6. If the Plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the Court no later than three (3) days before the return date.

7. Defendant take notice that the Plaintiff has filed a lawsuit against you in Superior Court of New Jersey. The Verified Complaint attached to this

3

Order to Show Cause states that basis of the lawsuit. If you dispute this Complaint, you, or your attorney, must file a written answer, an answering affidavit or a motion returnable on the return date to the Order to Show Cause and proof of service before the return date of the order to show cause.

These documents must be filed with the Clerk of Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at:

http://www.judiciary.state.nj.us/prose/10153deptyclerklawref.pdf

Include a $ _____ filing fee payable to the Treasurer State of New Jersey. You must also send a copy of your answer, answering affidavit or motion to the plaintiff's attorney whose name and address appear above, or to the Plaintiff, if no attorney I named above. A telephone call will not protect your rights; you must file and serve your answer, answering affidavit or motion with the fee or judgment may be entered against you by default.

8.  If you cannot afford an attorney, you may call the Legal Services office in the County which you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJLAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and

Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at

http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf

9.  The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the court and parties are advised to the contrary no later than _____ days before the return date.


_____

,J.S.C.

*LAW OFFICE OF MARK W. CATANZARO*
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

|  |  |
|---|---|
| | : |
| | : **SUPERIOR COURT OF NEW JERSEY** |
| **ANTHONY VILLANUEVA** | : **LAW DIVISION - MERCER COUNTY** |
| | : |
| : | |
| **Plaintiff** : | |
| **V.** | : **CIVIL ACTION** |
| | : |
| **CITY OF TRENTON** | : **DOCKET NO.: MER-L-** |
| : | |
| | : |
| **Defendant.** | : **ORDER** |
| | : |
| _____ : | |

**THIS MATTER,** having come before the Court by Mark W. Catanzaro, Esquire, attorney for Plaintiff Anthony Villanueva, who brings this matter as a means of obtaining reimbursement of his legal fees in defense of criminal charges assessed by his employer, the City of Trenton, pursuant to N.J.S.A. 40A:14-155, with an Order to Show Cause, Verified Complaint with attachments being filed with the Court, with Plaintiff seeking to have the Complaint heard in a summary manner

pursuant to R. 4:67-1 *et seq.*, and the Court having heard all issues in a summary manner as they are ripe for determination; and good cause having been shown therefore,

**IT IS** on this _____ day of _____, 2023

**ORDERED** that relief sought by way of Plaintiff's Verified Complaint seeking Defendant's reimbursement for the defense of the criminal charges dated April 9, 2017 is ***granted***; and it is further

**ORDERED** that Plaintiff's Notice of Motion to proceed summarily is ***granted***, and it is further

**ORDERED** that the Defendants the City of Trenton shall pay attorney's fees to Plaintiff Anthony Villanueva, payable to the firm of Mark W. Catanzaro, Esquire, for reimbursement of their defense against the criminal charges as follows:

| | | | |
|---|---|---|---|
| | | | |

|  | Rate | Hours | Total |
|---|---|---|---|
| Jerome A. Ballarotto, Esq. |  |  |  |
| Russ Bowen, Private Investigator |  |  |  |

**For a Sub-Total of**: $_____

    **ORDERED** that Mark W. Catanzaro, Esquire is hereby awarded additional attorney's fees for the filing of Plaintiff's Order to Show Cause and Motion to Proceed Summarily in the amount of $_____; and it is further

    **ORDERED** that the Defendant shall reimburse the firm of Mark W. Catanzaro, Esquire, for costs in the amount of $_____; and it is further

    **ORDERED** that Judgement is herein entered in favor of Plaintiff Anthony Villanueva, against Defendant City of Trenton, in accordance with the above, for a **Grand Total** in the amount of $_____, and it is further

**ORDERED** that Defendant the City of Trenton shall make full payment of all counsel fees and costs to Plaintiff Anthony Villanueva, payable to Mark W. Catanzaro, Esquire, within twenty (20) days of the date of this Order; and it is further

**ORDERED** that a copy of this filed Order shall be served upon Counsel within _____ days of the date hereof.

***So Ordered*** Unopposed [ ] Opposed  [ ]

_____

J.S.C.

# Civil Case Information Statement

**Case Details: MERCER | Civil Part Docket# L-002304-23**

**Case Caption:** VILLANUEVA ANTHONY  VS CITY OF
TRENTON

**Case Initiation Date:** 12/13/2023

**Attorney Name:** MARK WILLIAM CATANZARO

**Firm Name:** MARK W. CATANZARO

**Address:** 21 GRANT ST

MT. HOLLY NJ 08060

**Phone:** 6092613400

**Name of Party:** PLAINTIFF : Villanueva, Anthony

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** ACTIONS IN LIEU OF PREROGATIVE WRITS

**Document Type:** Verified Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Anthony Villanueva? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

12/13/2023
Dated

/s/ MARK WILLIAM CATANZARO
Signed

# EXHIBIT B

*LAW OFFICE OF MARK W. CATANZARO*
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzarolaw.com
ATTORNEY FOR PLAINTIFFS
JEROME A BALLAROTTO, ESQUIRE
and ANTHONY VILLANUEVA

_____

|  |  |
|---|---|
| | SUPERIOR COURT OF NEW JERSEY |
| : | MERCER COUNTY |
| | LAW DIVISION |
| : | Docket No. MER-L-2304-23 |
| JEROME A BALLAROTTO, ESQUIRE | |
| and ANTHONY VILLANUEVA : | |
| | |
| Plaintiffs, : | |
| | Civil Action |
| vs. : | |
| | |
| : | |
| CITY OF TRENTON | AMENDED COMPLAINT |
| : | |
| Defendant. | |

     Plaintiffs, Jerome A. Ballarotto with an office at 143 Whitehorse Avenue, Trenton, New Jersey and Anthony Villanueva, residing at 1727 N. 6th Street, Ewing, New Jersey, hereby complains against the defendant and says:

## **<u>OPERATIVE FACTS</u>**

     1.   Anthony Villanueva (hereinafter "Villanueva") is a Hispanic male.  Drew Inman (hereinafter "Inman" is a Caucasian male.

2.    In 2017, Villanueva and Inman were employed by the City of Trenton as police officers.

3.    On April 9, 2017, while working for the City of Trenton as Police Officers, they were caused to arrest Chancee Washington after he abandoned the vehicle he was operating, and using to elude the police, and ran from the scene.

4.    During the arrest of Mr. Washington, Villanueva and Inman utilized lawful force to arrest him.

5.    The City of Trenton did not seek to discipline Villanueva or Inman as a result of the arrest.

6.    On November 28, 2017, while employed as a Trenton Police Officer and working in that capacity, Villanueva was assigned to the area in the Trenton City Police Department for individuals that had been arrested but had not yet been transferred to the Mercer County Correctional Facility.

7.    Villanueva was caused to interact with a pretrial detainee, Quarter Singletary. Villanueva was obligated to utilize necessary force to handle Mr. Singletary.

8.    On January 26, 2018, the City of Trenton issued a Preliminary Notice of Disciplinary Action ("hereinafter "PNDA") charging Villanueva for the arrest and reports issued with regard to the November 28, 2017 incident. On March 28 2018, he was served a second PNDA adding additional charges arising out of the November 28, 2017 incident.

9.   On June 19, 2018, the City of Trenton terminated Anthony Villanueva from their employ.

10.   Villanueva appealed the determination to the Civil Service Commission which referred the matter to the Office of Administrative Law for a hearing.  Villanueva remained terminated pending the hearing.

11.   The matter was heard in the Office of Administrative Law on October 23, 24, 25 and 30, 2018.  The record was closed on March 4, 2019.  The court rendered its decision affirming the termination on April 5, 2019 and sent the recommendation to the Civil Service Commission.

12.   On April 18, 2019, a sealed indictment was returned in the United States District Court charging Villanueva and Inman with several offenses as a result of the April 9, 2017 incident (Counts 1 through 4).   The indictment also contained charges against Villanueva as a result of the November 28, 2017 incident (Counts 5 and 6).

13.   On April 23, 2019, Villanueva and Inman were arrested and arraigned in the United States District Court for the District of New Jersey.  Villanueva was represented by Jerome A. Ballarotto, Esquire (hereinafter "Ballarotto") and Inman was represented by Scott Krasny, Esquire (hereinafter "Krasny").

14.   Ballarotto and Krasny were representing Villanueva and Inman as part of the Legal Protection Plan provided to them based

upon their membership in the Police Benevolent Association.

15.   Neither Villanueva or Inman asked the City of Trenton to appoint them counsel or pay for their attorneys.

16.   Neither Ballarotto or Krasny advised the City of Trenton that the officers had requested their representation nor requested that the City pay their fees.

17.   The City was aware that the officers had been indicted. As a result of the indictment, Drew Inman was suspended from his position as a Trenton Police Officer.

18.   Villanueva filed a motion to sever the counts of the indictment associated with the November incident from that of the April incident.  On September 17, 2019, the court granted the application.

19.   The criminal trial concerning the April incident involving Villanueva and Inman commenced in the United States District Court for the District of New Jersey on April 25, 2023 and concluded on May 15, 2023.

20.   Villanueva was acquitted as to all counts in which he was charged.  Inman was acquitted of one count and the jury was unable to reach a unanimous decision on the second count.

21.   Inman filed a motion for judgment of acquittal which the court granted on September 12, 2023 thereby disposing of all counts favorably to Inman.

22.   Ballarotto and Krasny were paid pursuant to the Legal Protection Plan.  Pursuant to the Plan documents, Ballarotto and Krasny sought reimbursement from the City of Trenton.

23.   On June 23, 2023 Ballarotto, on behalf of Villanueva, submitted his bills to the City of Trenton requesting reimbursement at his hourly rate of $500.00 per hour.

24.   Villanueva is responsible for the difference between the rate paid by the PBA ($130 per hour) and Ballarotto's usual rate.

25.   Ballarotto was contacted by Wes Bridges, the Director of the City of Trenton Law Department.  Over the course of several months, Mr. Bridges and Mr. Ballarotto negotiated the amount of the bill.  Ballarotto agreed to accept a thirty (30) percent reduction of his bill.

26. Bridges accepted the reduction and advised Ballarotto that he would have the issue put on the agenda to approve payment of the compromised amount.

27.   Bridges subsequently advised Ballarotto that the DCA or City of Trenton would not pay the bill because the two counts of the indictment concerning the November incident remained outstanding. He was never advised his bill was being rejected because he did not seek advance approval.

28.   After obtaining the dismissal of the count that the criminal jury was unable to reach a verdict on with regard to Inman, Krasny submitted his bill to the City of Trenton for payment

at the rate of $400.00 per hour. Mr. Krasny followed the same submission process involving Mr. Bridges.  Krasny agreed to reduce his hourly rate to $350.00 per hour, the same number Bridges had negotiated with Ballarotto.

29.  Krasny's bill was submitted to the City and approved for payment.

30.  Krasny has been paid in full for all work performed at the rate of $350.00 per hour for his representation of Drew Inman.

31.  Villanueva and Inman received the identical verdict in the criminal proceedings with regard to the April incident.

32.  Villanueva had exhausted the maximum the PBA Legal Protection would pay and was indigent, having been terminated from the City of Trenton Police Department.

33.  The court granted Villanueva's request for the appointment of counsel pursuant to the Criminal Justice Act and appointed Ballarotto who is a member of the panel for continuity of counsel purposes.

34.  Villanueva went to trial on the counts associated with the November, 2017 matter in the holding area.  Jury selection commenced again on February 20, 2024.  Trial continued to March 1, 2024 when the jury returned a verdict of not guilty as to count 1 and could not reach a verdict as to count 2.

35.  On April 16, 2024, the government advised the court that they would not seek to retry count 2 and agreed to dismiss said

count without prejudice.

36. On April 16, 2024, the court entered an order terminating the case with prejudice as to Anthony Villanueva.

37. Villanueva has now been acquitted of all counts just as Inman was.

38. Villanueva has submitted his invoices for both cases at the rate of $500.00 per hour, his customary and just rate. He has agreed to the reduction to $350.00 as he did before and the rate the City paid to Krasny.

39. The obstacle that Bridges advised Ballarotto applied (the open case) no longer applies and yet the City, or DCA, has declined Ballarotto's invoices.

40. Villanueva and Inman have received the identical result with regard to the criminal charges.

41. Villanueva and Inman's counsel acted in an identical manner as it concerned a lack of notification to the City and submission of their bills.

42. Inman's bill was paid in full at the rate of $350.00 per hour and Ballarotto's invoices have been refused.

43. The only difference between Inman and Villanueva is their ethnic background.

## COUNT 1

1. Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as if the same were set forth at length

herein.

2.    Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment based upon, among other things, race, gender, sex and national origin.   The New Jersey Law Against Discrimination provides similar protections.

3.    Villanueva, a Hispanic male, is a member of a protected class.

4.    Villanueva and Inman received the identical result in the criminal trial (i.e. acquittal)

5.    Villanueva and Inman stand in an identical situation as neither asked the City of Trenton to appoint them counsel in the criminal case.

6.    Villanueva and Inman are in an identical situation as neither of their counsel asked the City of Trenton to authorize their representation or hourly rate.

7.    Villanueva and Inman are in an identical situation as their counsel submitted their bills to the City of Trenton after the acquittal was rendered in their favor.

8.    Villanueva and Inman are in an identical situation as each of their counsel negotiated with the City Attorney and agreed to accept $350.00 per hour for their representation.

9.    Inman, a Caucasian male, had all of his attorney fees paid in full by the City of Trenton for all hours worked with regard to the matter.

10.   The City of Trenton refuses to pay Villanueva's attorney for the work performed after receiving an identical result.

11.   Villanueva and Inman stand in exactly the same position as it concerns representation and result beyond his national origin and the City refuses to pay his attorneys fees at the agreed rate.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and costs associated with the filing of this action and other relief as the court deems just and appropriate.

### COUNT 2

1.   Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as well as those set forth in Count 1 as if the same were set forth at length herein.

2.   Villanueva is entitled to be reimbursed for all outstanding attorney's fees and costs associated with the defense of the criminal actions based upon his acquittal of all charges.

3.   The City of Trenton represented to Villanueva, through his attorney, that the City would pay the attorney's fees but for those counts in the indictment arising out of the November, 2017 incident.

4.   The City never advised Villanueva or Ballarotto that payment would not be forthcoming based upon their failure to request assignment of counsel or negotiation of rates before the matter proceeded.

5.   Villanueva has now been acquitted of ALL COUNTS for all matters just as Inman was.

6.   The City paid Inman's attorney in exactly the same set of circumstances.

7.   The City is precluded from denying payment to Villanueva/Ballarotto for such failure when they did not do so with respect to Inman/Krasny who were identically situated.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and costs associated with the filing of this action and other relief as the court deems just and appropriate.

### COUNT 3

1.   Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as well as those set forth in Count 1 and 2 as if the same were set forth at length herein.

2.   The conduct of the City of Trenton's actions are unjust and arbitrary governmental action and as such violate the doctrine of fundamental fairness.

3.   The conduct of the City of Trenton in paying Drew Inman's attorney in the identical situation as that of Villanueva's attorney is fundamentally unfair.

4.   The City's conduct is violative of the Equal Protection Clause and Due Process clause of the Fourteenth Amendment to the United States Constitution depriving Villanueva of a valid

property interest.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and costs associated with the filing of this action and other relief as the court deems just and appropriate.

### COUNT 4

1.    Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as well as those set forth in Count 1, 2 and 3 as if the same were set forth at length herein.

2.    Villanueva is entitled to reimbursement of his attorney's fees with regard to the underlying criminal action based upon N.J.S.A 40A:14-155.

3.    Villanueva had been terminated from the City of Trenton Police Department for ten (10) months at the time he was indicted.

4.    The City of Trenton would never have authorized counsel for Villanueva in light of his termination.

5.    The City of Trenton would never have authorized to pay an attorney to an employee they had terminated ten (10) months earlier.

6.    Villanueva was not required to perform a futile act in order to recover attorney's fees incurred with regard to the criminal matter.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and

costs associated with the filing of this action and other relief as the court deems just and appropriate.

WHEREFORE, the plaintiffs, Jerome A. Ballarotto and Anthony Villanueva, demand judgment against the defendant, City of Trenton, for damages, counsel fees, interest and costs of suit.

<div align="center">**JURY DEMAND**</div>

Defendant hereby demands a trial by jury as to all issues.

<div align="center">**DESIGNATION OF TRIAL COUNSEL**</div>

Please take notice that Mark W. Catanzaro, Esquire, is hereby designated trial counsel.

**DEMAND FOR DISCLOSURE OF NON-PARTIES PURSUANT TO R.4:5-1(b)(2)**

PLEASE TAKE NOTICE that plaintiffs hereby demand strict compliance with R. 4:5-1(b)(2) which requires that "each party shall disclose in the Certification the names of any non-party who should be joined in the action pursuant to R.4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability any party on the basis of the same transactional facts".

Plaintiff hereby demands that defendant review all available records, undertake reasonable investigation and determine the identity of any other individuals or entities who should be joined in this action pursuant to R. 4:5-1(b)(2).

The failure to identify non-parties pursuant to this Rule will result in an application for sanctions as well as for expenses

incurred in connection with the discovery of individuals who should have been identified pursuant to the Rule.

## NO NOTICE OF OTHER ACTIONS

Mark W. Catanzaro of full age, hereby certifies as follows:

1.    The matter in controversy is not the subject of any other action pending in any other Court nor is it the subject of any pending arbitration proceeding.

2.    There are no other known parties who should be joined in the action at this time.

3.    Pursuant to R. 4:21A-1 you are hereby advised that this matter is not appropriate for mandatory arbitration.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 2, 2023

*Mark Catanzaro*
_____
Mark W. Catanzaro, Esquire
Attorney for Plaintiffs

# EXHIBIT C

 Neutral
As of: June 19, 2024 3:17 PM Z

# In re Villanueva

Superior Court of New Jersey, Appellate Division

January 12, 2021, Submitted; January 28, 2021, Decided

DOCKET NO. A-4302-18T3

**Reporter**
2021 N.J. Super. Unpub. LEXIS 146 *; 2021 WL 279705

IN THE MATTER OF ANTHONY VILLANUEVA, CITY OF TRENTON POLICE DEPARTMENT.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS.

**Subsequent History:** Certification denied by In re Villanueva, 2021 N.J. LEXIS 456 (N.J., May 18, 2021)

**Prior History:** [*1] On appeal from the New Jersey Civil Service Commission, Docket No. 2019-74.

## Core Terms

spray, cell, detainee, aide, recordings, cell door, false report, mechanical, video, initial decision, police officer, final administrative decision, surveillance, credibility, detention, elbowed, arrest

**Counsel:** Katz & Dougherty, LLC, attorneys for appellant Anthony Villanueva (George T. Dougherty, on the briefs).

Trimboli & Prusinowski, LLC, attorneys for respondent City of Trenton (Stephen E. Trimboli, of counsel and on the brief; John P. Harrington, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Sookie Bae, Assistant Attorney General, of counsel; Beau C. Wilson, Deputy Attorney General, on the statement in lieu of brief).

**Judges:** Before Judges Haas, Mawla, and Natali.

## Opinion

PER CURIAM

Appellant Anthony Villanueva appeals from the May 9, 2019 final administrative decision of the Civil Service Commission (Commission) removing him from his position as a police officer with the City of Trenton (City). The Commission adopted the findings of fact and conclusions of law from the initial decision of Administrative Law Judge (ALJ) Jeff S. Masin, who found that removal was warranted due to Villanueva's improper use of force against a detainee and his subsequent filing of a false report concerning that incident. We affirm.

The procedural history and facts of this case are fully set forth in [*2] ALJ Masin's April 5, 2019 initial decision following a multi-day hearing. Therefore, we need only briefly summarize them here.

On November 28, 2017, Villanueva was on duty at the Trenton Police Department Detention Center. He was assisted that night by a police aide (the aide).

Q.S. was one of the detainees that evening. Q.S. asked to make a telephone call, and Villanueva took him to the phone room and permitted him to do so. Q.S. did not end his call in a timely manner and Villanueva hung up the receiver. Q.S. responded by slapping Villanueva's hand or arm. Surveillance video in the area of the phone room confirmed this incident.

At that point, the aide joined Villanueva and the two men attempted to escort Q.S. from the phone room. As they did so, Q.S. elbowed Villanueva in his side. There is no surveillance video of the elbowing incident because there were no cameras in the hallway where it occurred. Villanueva stated he intended to charge Q.S. with assault on a police officer, which required that Q.S. be arrested and re-processed.

Villanueva filed a written report later that night setting forth his account of what happened next. According to

2021 N.J. Super. Unpub. LEXIS 146, *2

Villanueva, he and the aide had "a long struggle" [*3] with Q.S. and were eventually able to get him into a cell. Q.S. "began to scream and cause a disturbance, which allegedly caused other prisoners to become irate as well." Villanueva asserted he told the aide to open the cell door[1] so he could handcuff Q.S. and complete the arrest process. Villanueva ordered Q.S. to get on the ground and told him that if he did not comply, Villanueva would spray him with OC spray.[2]

Villanueva claimed that as the aide began to open the cell door, Q.S. cleared his throat and looked like he was going to spit at him. Villanueva wrote that he then grabbed the OC spray and attempted to spray Q.S. However, Q.S. shielded himself with a mattress and the spray was ineffective. Villanueva alleged he sprayed Q.S. a second time and the detainee "became extremely irate and exited his cell at which time he pushed [Villanueva] and ran toward the main detention hallway." After another "long struggle," Villanueva instructed the aide to call for additional officers for assistance. The officers were then able to subdue Q.S.

As ALJ Masin found, Villanueva's account of the incident was false. The episode was captured on a number of surveillance cameras and these video recordings [*4] [3] were introduced in evidence at the hearing.

The recordings showed that contrary to Villanueva's claims, he and the aide did not engage in "a long struggle" with Q.S. before finally being able to get him into a cell. Instead, the recording showed Q.S. "strolling" unaccompanied down the hall leading to the detention cells. Q.S. headed for an open cell door, which he entered. The cell door then began to close.

When the door was almost shut, the recording showed Villanueva coming down the hall with a can of OC spray already in his hand. At that point, Villanueva raised his arm toward the cell door and he began to shake the can. Villanueva then sprayed Q.S. with the OC spray. The recording showed that the cell door was almost fully closed at that time. After being sprayed, Q.S. picked up the mattress in his cell and attempted to shield himself. Villanueva then sprayed Q.S. twice more.

Villanueva left the area for a moment, but then returned and gestured as if to spray Q.S. again. However, the officer did not do so.

The recording showed that the cell door was later opened, and Q.S. exited the cell holding the mattress. As ALJ Masin stated in his decision, Q.S. then became "physically resistant [*5] and after a short time struggling with him, Officer Villanueva and [the aide were] joined by two other officers summoned from the first floor, who successfully subdue[d] Q.S."

After reviewing the video recordings, the Trenton Police Department (Department) charged Villanueva with conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), and misconduct, N.J.S.A. 40A:14-147, based on his use of "mechanical force by issuing/spraying a chemical or natural agent . . . against a [detainee] while the [detainee] was secured in a detention unit cell." The Department later revised the disciplinary notice to add charges for, among other things, the submission of a false report.

The Department alleged at the hearing that Villanueva's use of OC spray against Q.S. violated the Attorney General's Use of Force Policy (UF Policy). The UF Policy states:

> In determining to use force, the law enforcement officer shall be guided by the principle that the degree of force employed in any situation should be only that reasonably necessary. Law enforcement officers shall exhaust all other reasonable means before resorting to the use of force. It is the policy of the State of New Jersey that law enforcement officers will use only that force which [*6] is objectively reasonable and necessary.

The UF Policy further prescribes when physical or mechanical force[4] may be used:

> A law enforcement officer may use physical force or mechanical force when the officer reasonably believes it is immediately necessary at the time:
> a. to overcome resistance directed at the officer or others; or
> b. to protect the officer, or a third party, from

---

[1] The cell doors were opened and closed remotely through a control panel.

[2] OC spray is the common name for "Oleoresin Capsicum spray," which is also known as pepper spray.

[3] There were no audio recordings of any of the incidents.

[4] "Mechanical force" is defined in the UF Policy as "the use of some device or substance, other than a firearm, to overcome a subject's resistance to the exertion of the law enforcement officer's authority." The UF Policy states that an example of mechanical force is "the use of a . . . chemical or natural agent spraying."

2021 N.J. Super. Unpub. LEXIS 146, *6

unlawful force; or

c. to protect property; or

d. to effect other lawful objectives, such as to make an arrest.

According to educational materials used when Villanueva received his new recruit training at the Mercer County Police Academy in 2014, police officers were instructed that OC spray "should not be used against, or in the immediate vicinity of . . . individuals in custody or in restraining devices unless an officer or another person is under attack." (Emphasis in original).

At the hearing, Villanueva's superiors testified that Villanueva's use of the OC spray against Q.S. violated his training and the UF Policy because Q.S. was confined in a cell when the spray was administered. At the time Villanueva deployed the mechanical force, Q.S. was not a threat to Villanueva, the aide, or other inmates. At that point, [*7] Q.S. was not actively resisting the officers and, in fact, had entered the cell on his own volition.

To the extent that any of Q.S.'s actions upset the other detainees, they were also isolated in closed cells and therefore posed no danger to the officers. The superior officers also testified that although Villanueva had grounds for arresting Q.S. on the new charge of assault on a police officer, there was no need for Villanueva to immediately fingerprint or photograph the detainee because Q.S. was already in custody. Therefore, the City's officers opined that Villanueva should have let the situation deescalate and under no circumstances should he have used OC spray against a detainee in a closed cell.

Villanueva and his two experts claimed that he was justified in using mechanical force against Q.S. because the detainee was resisting his orders to get on the ground so he could be arrested and processed for the new charge of assault on a police officer. However, Villanueva's expert's testimony was based, at least in part, upon Villanueva's faulty account of what transpired during the incident.

Although Villanueva complained that he was tired when he prepared his written report after the [*8] end of his shift and did not have the opportunity to review the surveillance videos before doing so, he admitted he had ample time to complete the report and did not rush to do so. Villanueva claimed he later told one of his supervisors, Sergeant Miguel Acosta, and another officer, Officer Jaydeen Smith, that there were a few things in his written report that were inconsistent with

the surveillance recordings. Villanueva asserted that Sergeant Acosta was satisfied with this explanation and did not direct him to file a corrected report. Sergeant Acosta testified he did not recall discussing the videos with Villanueva and Officer Smith.

In his forty-page written decision, ALJ Masin found that Villanueva's report was deliberately false and was "written with the intention to cover up the facts about his initial use of OC spray, which he no doubt realized might appear to have been an inappropriate use of force in the circumstances." The ALJ noted that "as the recordings show, the officer had nothing physically to do with Q.S.'s movement to and entrance into" the cell. There was no "long struggle" as reported by Villanueva. Further, as soon as Villanueva arrived at the cell, he immediately [*9] administered the OC spray.

The ALJ found that:

> There is absolutely no indication that once [Villanueva] reached the cell he took any time whatsoever to warn Q.S., to take any steps to verbally calm him down, or to do anything other than to immediately spray OC at him. Any statement in the report that was intended to describe anything other than Villanueva's immediate resort to OC spray is at best misleading. Any suggestion that he was not already preparing to use the spray when he was not yet even up to the cell is also at best misleading, as he had it in his hand when he was approximately five cells away from [the cell]. And the spraying did not first occur only after [the aide] was opening the door. Instead, it occurred as the door was closing, in fact just before it was entirely closed.

ALJ Masin found that "the tenor of the description" in Villanueva's report "entirely hides the fact that his immediate reaction to the situation presented by Q.S.'s elbowing him, moving to [the cell] and entering it was to pull out the spray and to use it at the very second that he arrived at the cell door." The ALJ rejected Villanueva's explanation that the misinformation in his report was due to fatigue [*10] and an inability to review the video recordings before writing the report. The ALJ concluded:

> It is much more reasonable to understand that Officer Villanueva was quite upset that Q.S. had defied him, had slapped him and elbowed him and had continued to defy him by refusing the direction to get on the ground after he elbowed the officer. He went to the cell armed with the spray can, which was, as he proceeded, not simply at his side on

Case 3:25-cv-18181-RK-JTQ    Document 2-2    Filed 12/11/25    Page 93 of 275 PageID: 216

2021 N.J. Super. Unpub. LEXIS 146, *10

whatever secures it to his body in the normal course of business, but with the can in hand, ready for immediate use. When he wrote his report, he knew what had happened, and he did not want to tell his superiors that he had utilized the mechanical force as an almost instantaneous reaction to the conduct of the by then contained detainee."

ALJ Masin also concluded that Villanueva's use of force violated the UF Policy and his training. He found that Villanueva administered OC spray "into an effectively closed cell, in which the detainee was confined and effectively restrained." Further, "[a]t the time, there was no ability of Q.S. to cause harm to Officer Villanueva, other detainees, employees of the facility, or any reason to believe that he posed a danger [*11] to himself, or to property." The ALJ found that there was no immediate need to complete the processing steps for Q.S.'s rearrest. When Villanueva arrived at the cell "and instantaneously sprayed at Q.S., there was no immediate need, no emergent circumstance, no reasonable justification for the use of OC spray."

The ALJ also found that Villanueva's motive for using the OC spray was "to retaliate against Q.S. for his physical defiance and assault." He dismissed Villanueva's claim of wanting to complete the re-arrest of Q.S., finding that the re-arrest "was not [Villanueva's] primary thought at the time, although it may have served as a convenient excuse later on."

Finally, ALJ Masin determined that Villanueva's "unsanctioned use of force [was] of a seriousness so as to indicate the inability of the officer to properly perform his police function." The ALJ concluded that the filing of a false report "compound[ed] the offense and . . . necessitate[d] [Villanueva's] removal." The Commission thereafter adopted ALJ Masin's initial decision as its final administrative decision and affirmed Villanueva's termination from employment. This appeal followed.

On appeal, Villanueva argues that: (1) the [*12] ALJ and the Commission erred by finding that he violated the UF Policy; (2) the Department failed to conduct an adequate investigation before terminating his employment; (3) the ALJ erred by not granting his request for an adverse inference against the City that his original false report was promptly corrected to the satisfaction of his sergeant; and (4) the Commission erred by adopting the ALJ's initial decision without addressing his exceptions to the ALJ's findings.

Established precedents guide our task on appeal. Our scope of review of an administrative agency's final determination is limited. *In re Herrmann*, 192 N.J. 19, 27, 926 A.2d 350 (2007). "[A] 'strong presumption of reasonableness attaches'" to the agency's decision. *In re Carroll*, 339 N.J. Super. 429, 437, 772 A.2d 45 (App. Div. 2001) (quoting *In re Vey*, 272 N.J. Super. 199, 205, 639 A.2d 724 (App. Div. 1993)). Additionally, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility." *In re Taylor*, 158 N.J. 644, 656, 731 A.2d 35 (1999) (quoting *Close v. Kordulak Bros.*, 44 N.J. 589, 599, 210 A.2d 753 (1965)).

The burden is upon the appellant to demonstrate grounds for reversal. *McGowan v. N.J. State Parole Bd.*, 347 N.J. Super. 544, 563, 790 A.2d 974 (App. Div. 2002); *see also Bowden v. Bayside State Prison*, 268 N.J. Super. 301, 304, 633 A.2d 577 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant"). To that end, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow [*13] the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." *In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need*, 194 N.J. 413, 422, 945 A.2d 692 (2008).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging "the agency's 'expertise and superior knowledge of a particular field.'" *Circus Liquors, Inc. v. Governing Body of Middletown Twp.*, 199 N.J. 1, 10, 970 A.2d 347 (2009) (quoting *Greenwood v. State Police Training Ctr.*, 127 N.J. 500, 513, 606 A.2d 336 (1992)). It is not our place to second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence as if [we were] the court of first instance." *Taylor*, 158 N.J. at 656 (quoting *State v. Locurto*, 157 N.J. 463, 471, 724 A.2d 234 (1999)).

In addition, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility," and therefore accept their findings of fact "when supported by adequate, substantial and credible evidence." *Ibid.* With regard to expert witnesses, we rely upon the trier of fact's "acceptance of the credibility of the expert's testimony and [the judge's] fact-findings based thereon, noting that the [judge] is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded [to his or] her testimony." *In re Guardianship of D.M.H.*, 161 N.J. 365, 382, 736 A.2d 1261 (1999) (citing *Bonnco Petrol,*

2021 N.J. Super. Unpub. LEXIS 146, *13

*Inc. v. Epstein*, 115 N.J. 599, 607, 560 A.2d 655 (1989)).

Our deference to agency decisions "applies [*14] to the review of disciplinary sanctions as well." *Herrmann*, 192 N.J. at 28. "In light of the deference owed to such determinations, when reviewing administrative sanctions, 'the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness.'" *Id.* at 28-29 (alteration in original) (quoting *In re Polk*, 90 N.J. 550, 578, 449 A.2d 7 (1982)). "The threshold of 'shocking' the court's sense of fairness is a difficult one, not met whenever the court would have reached a different result." *Id.* at 29.

Applying these principles, we discern no basis for disturbing the Commission's well-reasoned determination that Villanueva should be removed from employment as a police officer after he violated the UF policy by deploying OC spray against a detainee who was secured in a detention cell. We therefore affirm the Commission's final administrative decision substantially for the reasons expressed by the Commission, which incorporated the detailed findings of fact and conclusions of law rendered by ALJ Masin in his comprehensive written opinion. We add the following comments.

As ALJ Masin found, Villanueva used mechanical force against Q.S., who no longer posed any danger to Villanueva, the aide, or other [*15] detainees because he was in custody. Villanueva's actions clearly violated the UF policy and he submitted a false report in an attempt to hide his violations from his superiors. Therefore, the Commission's decision to impose the penalty of removal is certainly not "so disproportionate to the offense, in light of all of the circumstances, as to be shocking to one's sense of fairness." *Herrmann*, 192 N.J. at 28-29.

Villanueva's contentions to the contrary lack merit. Villanueva complains that the Department did not adequately investigate the charges against him and did not prepare an internal affairs report concerning them. However, Villanueva does not identify any exculpatory information that would have been uncovered if the investigation had been conducted in a manner to his liking. Thus, there is no evidence in the record to support Villanueva's claim that the Department's pre-hearing investigation was deficient.

Villanueva next argues that the ALJ erred by not granting his request for an adverse inference that his

original false report was corrected to Sergeant Acosta's satisfaction. As noted above, Sergeant Acosta had no recollection of the meeting where Villanueva alleged this discussion occurred. Because of [*16] this, Villanueva testified that the City had a duty to call Officer Smith, who Villanueva asserted was present at the meeting, as a witness. Because the City failed to do so, Villanueva asserts that ALJ Masin should have inferred that Officer Smith would have confirmed Villanueva's account of the meeting. This argument lacks merit.

"Generally, failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." *State v. Clawans* 38 N.J. 162, 170, 183 A.2d 77 (1962). However, in order for an adverse inference to be applied, the court must find, among other things,

> that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give . . . .

> [*State v. Hill*, 199 N.J. 545, 561, 974 A.2d 403 (2009) (quoting *State v. Hickman*, 204 N.J. Super. 409, 414, 499 A.2d 231 (App. Div. 1985)).]

Here, Officer Smith was not "peculiarly within the control or power of only the [City]." *Ibid.* Villanueva could have called Officer Smith as a witness at the hearing. Moreover, Villanueva never established that [*17] the officer would "elucidate relevant and critical facts in issue" or that her testimony would be "superior to that already utilized" in respect to which Villanueva filed a false report. *Ibid.* Thus, Villanueva was not entitled to the adverse inference he sought. *Ibid.*

Finally, Villanueva alleges that the Commission did not address the exceptions he filed concerning ALJ's Masin's initial decision before rendering its final administrative decision. We disagree.

Contrary to Villanueva's unsupported contention, the Commission's decision notes that his exceptions were filed with the Commission. The exceptions were therefore part of the record that the Commission stated it considered during its review of ALJ Masin's decision. As permitted by N.J.S.A. 52:14B-10(c) and N.J.A.C. 1:1-18.6(a), the Commission thereafter properly adopted the ALJ's initial decision as its final administrative decision in this matter. As discussed above, ALJ Masin's

2021 N.J. Super. Unpub. LEXIS 146, *17

decision addressed each and every one of the arguments Villanueva raised at the hearing. Therefore, we reject his contention on this point.

All other arguments raised in this appeal, to the extent we have not addressed them, are without sufficient merit to be discussed. *R.* 2:11-3(e)(1)(E).

Affirmed.

---

**End of Document**

# EXHIBIT D

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

| | |
|---|---|
| ANTHONY VILLANUEVA, | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : DOCKET NO.: MER-L-002304-23 |
| | : |
| v. | : |
| | : Civil Action |
| CITY OF TRENTON | : |
| | : ORDER DISMISSING PLAINTIFF'S |
| | : VERIFIED COMPLAINT PURSUANT |
| | : TO R. 4:6-2(e) |
| Defendant. | : |
| | : |

**THIS MATTER** having been opened to the Court by Renaud Colicchio

LLC, attorneys for Defendant City of Trenton, and the Court having read and

considered the papers submitted and argument of counsel, and with good cause

having been shown;

It is **ORDERED** on this _____ day of _____, 2024,

that Plaintiff's Verified Complaint be and is hereby dismissed, with prejudice,

pursuant to <u>R.</u> 4:6-2(e), for failure to state a claim on which relief can be granted; and

     It is **FURTHER ORDERED** that this Order shall be deemed served upon all parties of record by the filing of same on eCourts.

_____
Hon. Robert T. Lougy, J.S.C.

This motion was:

Opposed        _____

Unopposed    _____

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

| | |
|---|---|
| ANTHONY VILLANUEVA, | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : DOCKET NO.: MER-L-002304-23 |
| | : |
| v. | : |
| | : Civil Action |
| CITY OF TRENTON | : |
| | : CERTIFICATION OF COUNSEL |
| | : |
| | : |
| Defendant. | : |
| | : |

Robert F. Renaud hereby certifies as follows:

1.      I am an attorney at law of the State of New Jersey and a member of the

firm of Renaud Colicchio, LLC, attorneys for Defendant City of Trenton in the above

action. I am personally handling and familiar with this case.

2.      Attached hereto as Exhibit A is a copy of the unpublished opinion in

Azzaro v. Board of Education of the City of Trenton, 2023 N.J. Super. LEXIS 130.

3.       I hereby certify that I am aware of no unpublished contrary

unpublished opinions.

4.     This certification is submitted in support of Defendant's Motion to Dismiss Plaintiff's Verified Complaint for failure to state a claim upon which relief can be granted.

## **CERTIFICATION**

I hereby certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Robert F. Renaud
Robert F. Renaud, Esq.

Dated: January 25, 2024

# EXHIBIT A

No *Shepard's* Signal™
As of: December 26, 2023 1:22 PM Z

# Azzaro v. Bd. of Educ.

Superior Court of New Jersey, Appellate Division

October 30, 2023, Argued; December 21, 2023, Decided

DOCKET NO. A-0188-22

**Reporter**
2023 N.J. Super. LEXIS 130 *

MARIA AZZARO, THE NEW JERSEY EDUCATION ASSOCIATION, and MELLK O'NEILL, Petitioners-Appellants, v. BOARD OF EDUCATION OF THE CITY OF TRENTON, MERCER COUNTY, Respondent-Respondent.

**Subsequent History:** [*1] Approved for Publication December 21, 2023.

**Prior History:** On appeal from the New Jersey Commissioner of Education, Docket No. 121-5/20.

## Core Terms

defense costs, reimbursement, municipality, costs, indemnification, charges, administrative action, school board, quasi-criminal, petitioners', defending, expenses, notice, wait

**Counsel:** Edward A. Cridge argued the cause for appellants (Mellk Cridge LLC, attorneys; Arnold M. Mellk and Edward A. Cridge, of counsel and on the briefs).

Rita F. Barone argued the cause for respondent Board of Education of the City of Trenton (Flanagan, Barone & O'Brien, LLC, attorneys; Rita F. Barone, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Commissioner of Education (Erin Herlihy Deputy Attorney General, on the statement in lieu of brief).

**Judges:** Before Judges Mawla, Marczyk, and Chase.[1]

**Opinion by:** MARCZYK

## Opinion

The opinion of the court was delivered by MARCZYK, J.A.D.

This appeal raises a novel issue of whether *N.J.S.A.* 18A:16-6 allows school board employees to wait until the final disposition of a civil or administrative action filed against them before seeking defense costs and indemnification from a school board. We conclude an employee cannot wait until the action is completed and must provide the school board with reasonable notice after the initiation of the proceeding, unlike the procedure set forth in *N.J.S.A.* 18A:16-6.1, which provides that an employee cannot seek reimbursement [*2] of defense costs and indemnification until the conclusion of a criminal or quasi-criminal action.

Petitioners Maria Azzaro, the New Jersey Education Association ("NJEA"), and the Mellk O'Neill law firm appeal from the Commissioner of Education's ("Commissioner") September 14, 2022 final agency decision entered in favor of the Board of Education of the City of Trenton ("Board") denying reimbursement of defense costs and indemnification. We affirm.

I.

Azzaro was a long-time employee of the Board and retired as a vice principal in July 2008. In April 2007, following an investigation, the State of New Jersey, Department of Education, Office of Fiscal Accountability and Compliance ("OFAC") Investigations Unit issued a report regarding student grading practices and other alleged improprieties at Trenton Central High School's Sherman Avenue campus during the 2004-05 school year. As a result of the OFAC report, the Department of Education State Board of Examiners ("Examiners") issued an Order to Show Cause ("OSC") in June 2007 against Azzaro. The OSC directed her to show cause why her teaching certificate should not be suspended or revoked pursuant to *N.J.A.C.* 6A:9B-4.5.

---

[1] Judge Chase did not participate in oral argument. He joins the opinion with counsel's consent. R. 2:13-2(b).

The OSC alleged students were misassigned [*3] to the Sherman Avenue campus, received credits for classes they took twice or did not attend, and certain courses did not meet Department of Education requirements. The OSC further asserted student records and transcripts were falsified in order for the students to matriculate. The OSC claimed Azzaro was aware of and/or participated in awarding credit for such classes and the purported falsification of student transcripts.

Azzaro claims the Board was aware of the OSC because it was consolidated with an OSC brought against another Board employee against whom the Board had prosecuted similar charges. The NJEA assigned Mellk O'Neill to represent Azzaro. The Board notes Azzaro unilaterally retained counsel and never requested the Board to provide defense costs during the twelve years the OSC was pending. It further asserts it never filed tenure charges or took any disciplinary action against Azzaro.

The OSC was ultimately transmitted to the Office of Administrative Law ("OAL"). In September 2019, the Administrative Law Judge ("ALJ") issued an initial decision dismissing the OSC against Azzaro. In February 2020, the Examiners subsequently adopted the ALJ's determinations and upheld the dismissal [*4] of the OSC.

In May 2020, petitioners filed a petition with the Commissioner seeking reimbursement from the Board for reasonable costs and attorneys' fees incurred in the successful defense of Azzaro pursuant to *N.J.S.A.* 18A:16-6. The Board opposed the application. The petition was transmitted as a contested case to the OAL and assigned to a different ALJ than had addressed the OSC. The parties filed cross-motions for summary decision. In June 2022, the ALJ issued an initial decision, granting summary decision in favor of Azzaro. The ALJ awarded $430,800 in attorney fees and $5,361.60 in costs. Thereafter, the Board filed exceptions with the Commissioner.

On September 14, 2022, the Commissioner issued a final agency decision rejecting the initial decision and granted summary decision in favor of the Board. The Commissioner held petitioners were not entitled to reimbursement for their attorney fees and costs. The Commissioner determined, relying on *Edison v. Mezzacca*, that an employee "does not have the absolute right to counsel of [their] choosing at municipal expense." 147 N.J. Super 9, 14, 370 A.2d 511 (App. Div. 1977). The Commissioner further held petitioners'

right to defense costs pursuant to *N.J.S.A.* 18A:16-6—for civil or administrative matters—arose at the beginning [*5] of the proceeding and was independent of the outcome. On the other hand, *N.J.S.A.* 18A:16-6.1 provides defense costs only when the criminal or quasi-criminal proceedings are dismissed in an employee's favor. Given the more than ten-year delay in seeking relief under *N.J.S.A.* 18A:16-6, the Commissioner denied petitioners' application. This appeal followed.

II.

Petitioners contend *N.J.S.A.* 18A:16-6 does not contain a notice requirement and, therefore, Azzaro had no obligation to demand a defense and indemnification from the Board at the inception of the OSC. Relying on the ALJ's decision, petitioners argue the provisions of *N.J.S.A.* 18A:16-6 requiring the Board to "indemnify" and "defray" costs does not require the obligation to be satisfied at a particular time, and the statute contemplates "reimbursement" or payment after the expenses have been incurred. Petitioners further assert their claims did not ripen under *N.J.S.A.* 18A:16-6 until the dismissal of the OSC, and there was no requirement to make an initial demand to the Board for defense and indemnification. Petitioners also argue the Board could not have defended Azzaro because it had a conflict due to its obligation to cooperate with the Examiners in connection with the OSC.

The Board counters that the Commissioner's final [*6] decision should be upheld because defense and indemnification under *N.J.S.A.* 18A:16-6 is not conditioned upon a successful outcome of the case. The Board asserts *N.J.S.A.* 18A:16-6 requires indemnification for fees and costs associated with defending against a civil or administrative action, unless there is proof by a preponderance of the evidence the employee's conduct fell outside the course of performance of their employment duties. *See L.A. v. Bd. of Educ. of Trenton*, 221 N.J. 192, 110 A.3d 914 (2015). The Board further argues *N.J.S.A.* 18A:16-6.1 is not applicable because there were no criminal or quasi-criminal charges filed against Azzaro. The Board contends Azzaro unilaterally selected an attorney without providing notice, even though the Board did not file tenure charges, discipline her in connection with the OSC, and never indicated it would not provide her a defense. The Board additionally asserts petitioners' failure to notify it prevented it from invoking significantly greater insurance coverage it had at the time. [2]

---

[2] Specifically, the Board argues it carried a $1,000,000

Courts afford an agency "great deference" in reviewing its "interpretation of statutes within its scope of authority and its adoption of rules implementing" the laws for which it is responsible. *N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.*, 196 N.J. 366, 385, 955 A.2d 886 (2008) (citing *In re Freshwater Wetlands Prot. Act Rules*, 180 N.J. 478, 489, 852 A.2d 1083 (2004)). That approach reflects the specialized expertise agencies possess to enact [*7] technical regulations and evaluate issues that rulemaking invites. *N.J. State League of Muns. v. Dep't of Cmty. Affs.*, 158 N.J. 211, 222, 729 A.2d 21 (1999). However, "[courts] are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" *Norfolk S. Ry. Co. v. Intermodal Props., LLC*, 215 N.J. 142, 165, 71 A.3d 830 (2013) (quoting *In re Taylor*, 158 N.J. 644, 658, 731 A.2d 35 (1999)).

"[T]he Commissioner . . . has primary jurisdiction to hear and determine all controversies arising under the school laws." *Bower v. Bd. of Educ. of E. Orange*, 149 N.J. 416, 420, 694 A.2d 543 (1997) (citing *N.J.S.A.* 18A:6-9). As a result, their "statutory interpretation is entitled to considerable weight, where not inconsistent with the statute and in harmony with the statutory purpose." *Kletzkin v. Bd. of Educ. of Spotswood*, 261 N.J. Super. 549, 553, 619 A.2d 621 (App. Div. 1993). We will ordinarily uphold the Commissioner's determination "unless it is 'arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole.'" *G.D.M. v. Bd. of Educ. of the Ramapo Indian Hills Reg'l High Sch. Dist.*, 427 N.J. Super. 246, 259-60, 48 A.3d 378 (App. Div. 2012) (quoting *Dennery v. Bd. of Educ. of Passaic Cnty. Reg'l High Sch. Dist. # 1*, 131 N.J. 626, 641, 622 A.2d 858 (1993)).

In accordance with *N.J.A.C.* 1:1-12.5(b), a state agency's decision to grant a motion for summary decision is "substantially the same" as that governing a motion for summary judgment adjudicated by a trial court under *Rule* 4:46-2. *Contini v. Bd. of Educ. of Newark*, 286 N.J. Super. 106, 121, 668 A.2d 434 (App. Div. 1995). When reviewing an order granting summary

judgment, we apply "the same standard governing the trial court . . . ." *Oyola v. Liu*, 431 N.J. Super. 493, 497, 70 A.3d 744 (App. Div. 2013). Summary judgment should be granted only when the record reveals "no genuine issue as to any material fact," and "the moving party is entitled to a judgment or order [*8] as a matter of law." *R.* 4:46-2(c).

Our analysis of the issues in this matter entails consideration of both *N.J.S.A.* 18A:16-6 and its criminal counterpart, *N.J.S.A.* 18A:16-6.1. *N.J.S.A.* 18A:16-6, in pertinent part, provides:

> Whenever *any civil or administrative action* . . . has been or shall be brought against any person holding any . . . employment under the jurisdiction of any board of education . . . for any act or omission arising out of and in the course of the performance of the duties of such . . . employment . . . , *the board shall defray all costs of defending such action, including reasonable counsel fees and expenses* . . . and shall save harmless . . . such person from any financial loss resulting therefrom . . . .
>
> . . . .
>
> Any board of education may arrange for and maintain appropriate insurance to cover all such damages, losses and expenses. [3]
> [(emphasis added).]

*N.J.S.A.* 18A:16-6.1, in turn, provides for reimbursement of defense costs and expenses in the context of criminal or quasi-criminal actions. Specifically, the statute provides:

> Should any *criminal or quasi-criminal action* be instituted against any such person for any such act or omission *and should such proceeding be dismissed* or result in a final disposition in favor of such person, the board of education [*9] shall *reimburse* [such person] for the cost of defending such proceeding, including reasonable counsel fees and expenses of the original hearing or trial and all appeals. . . .
> [(emphasis added).]

---

insurance policy when the OSC was filed against Azzaro. However, in May 2020, when the underlying petition was filed by Azzaro against the Board, its coverage for indemnification and defense had a $100,000 limit. This issue was not properly raised before the ALJ. We decline to consider arguments not raised in the trial court. *Selective Ins. Co. of Am. v. Rothman*, 208 N.J. 580, 586, 34 A.3d 769 (2012); *Nieder v. Royal Indem. Ins. Co.*, 62 N.J. 229, 234, 300 A.2d 142 (1973).

---

[3] Section (a) of the statute provides a school board is not required to provide defense costs or hold harmless an employee when a disciplinary proceeding is instituted by the board. Section (b) states that indemnification is not required for "exemplary or punitive damages . . . ." Neither of those provisions are at issue in this matter.

When we are addressing an issue that involves more than one statutory provision, "[r]elated parts of an overall scheme can . . . provide relevant context." *Beim v. Hulfish*, 216 N.J. 484, 498, 83 A.3d 31 (2014) (alteration in original) (quoting *N.J. Dep't of Child. & Fams. v. A.L.*, 213 N.J. 1, 20, 59 A.3d 576 (2013)). That is, in addition to "ascrib[ing] to the statutory words their ordinary meaning and significance . . ." the court must "read them in context with related provisions so as to give sense to the legislation as a whole." *Ibid.* (quoting *DiProspero v. Penn*, 183 N.J. 477, 498, 874 A.2d 1039 (2005)).

Petitioners maintain they had no obligation to demand a defense from the Board under *N.J.S.A.* 18A:16-6 until the conclusion of the OSC because the statute contemplates "reimbursement" of costs after an expense is incurred. We are unpersuaded by these contentions. Initially, we observe that although *N.J.S.A.* 18A:16-6 does not specifically address when a party must request defense costs and indemnification from a school board, the statute suggests a board's obligation arises when the action is instituted. The statute provides, "*[w]henever any civil or administrative action . . . has been or shall be brought* [*10]

. . . the board shall defray all costs of defending such action . . . ." *Ibid.* (emphasis added). The statute does not state the right to defense costs accrues at the conclusion of any civil or administrative action brought against a board employee—unlike the companion criminal part of the statute, *N.J.S.A.* 18A:16-6.1.

Moreover, petitioners' argument that *N.J.S.A.* 18A:16-6 contemplates "reimbursement" of costs after an expense is incurred conflates *N.J.S.A.* 18A:16-6 with *N.J.S.A.* 18A:16-6.1. The Legislature, under *N.J.S.A.* 18A:16-6.1, specifically utilizes "reimbursement," whereas N.J.S.A. 18A:16-6 contains no such language. This is because *N.J.S.A.* 18A:16-6.1 allows an aggrieved employee to seek reimbursement only after they are exonerated of criminal or quasi-criminal charges. *N.J.S.A.* 18A:16-6 has no such condition.

In *Edison*, we discussed a similar statute and differentiated "reimbursement" following a criminal proceeding from providing defense costs in the context of a civil matter. 147 N.J. Super. at 13-14, 370 A.2d 511. There, we addressed a municipality's obligation to provide police officers "with necessary means for the defense" for legal proceedings arising out of the performance of their duties under *N.J.S.A.* 40A:14-155.

[4] *Id.* 147 N.J. Super. at 14, 370 A.2d 511. Eight officers named in a civil rights suit sought to retain counsel of their own choice, and the municipality objected. *Id.* 147 N.J. Super. at 12, 370 A.2d 511. In deciding the appeal, we [*11] referenced other "[c]ognate" enactments such as *N.J.S.A.* 18A:16-6 and its criminal counterpart, *N.J.S.A.* 18A:16-6.1—which are at issue in the present appeal. *Id.* 147 N.J. Super. at 13, 370 A.2d 511. Importantly, we noted the distinction between reimbursing for costs and providing for a defense under *N.J.S.A.* 40A:14-155. *Id.* 147 N.J. Super. at 14, 370 A.2d 511. We stated:

> When a statute speaks in term[s] of reimbursement, it focuses on costs already incurred and contemplates governmental liability for expenditures, reasonable in amount, for services rendered by counsel of the employee's own choice. In the enactment here under consideration, but in a portion not involved in this appeal, it is provided that a public officer against whom disciplinary or criminal proceedings are instituted by the municipality "shall be reimbursed for the expense of [their] defense" if [they] prevail[]. Obviously, this would include the reasonable fees of counsel selected by the officer, for the municipality could have no say in the choice of counsel to defend against charges made by it.
>
> [*Ibid.*]

We further noted:

> However, in dealing with the defense of actions other than those initiated by the municipality, the

---

[4] *N.J.S.A.* 40A:14-155 was amended subsequent to our decision in *Edison*. The later amendments to the statute are not relevant to our discussion. At the time *Edison* was decided, the statute read:

> Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of or incidental to the performance of [their] duties, the governing body of the municipality shall provide [*12] said member or officer with necessary means for the defense of such action or proceeding, but not for [their] defense in a disciplinary proceeding instituted against [them] by the municipality or in a criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, [they] shall be reimbursed for the expense of [their] defense.

statute does not speak of reimbursement; it requires the municipality "[to] provide said . . . officer with necessary means for the defense . . . ." We conclude that this means that the municipality must provide competent counsel, its own or outside counsel, or it may approve counsel requested by the officer, but the employee does not have the absolute right to counsel of [their] own choosing at municipal expense. Were this not so, there would have been no need to distinguish between the right to reimbursement provided for in the last sentence of *N.J.S.A.* 40A:14-155 and [*13] the portion relevant to the present appeal; both obligations could easily have been couched in terms of reimbursement. Instead, the Legislature provided for reimbursement only where the municipality's obligation was conditional on the outcome and arose after the fact; no right of reimbursement was provided for where, as here, the obligation to provide for the defense arose at the inception of the proceeding against the officer and was independent of the outcome of the proceeding.

[*Id.* 147 N.J. Super. at 14-15, 370 A.2d 511 (alteration in original).]

We further held "that the municipality's obligation under *N.J.S.A.* 40A:14-155 does not require it to pay counsel chosen by a police officer without the prior agreement of the municipality to do so." *Id.* 147 N.J. Super. at 15, 370 A.2d 511.

The same analysis can be applied to the legislative scheme under *N.J.S.A.* 18A:16-6 and *N.J.S.A.* 18A:16-6.1, which is analogous to *N.J.S.A.* 40A:14-155. Petitioners requested legal fees and costs following twelve years of litigation but sought to proceed in a manner contemplated by *N.J.S.A.* 18A:16-6.1. However, that statute was not controlling because the OSC was not a criminal matter, but an administrative matter, thus implicating *N.J.S.A.* 18A:16-6.

Petitioners further contend their claim under *N.J.S.A.* 18A:16-6 did not accrue until the case against Azzaro was ultimately dismissed. More particularly, [*14] petitioners assert Azzaro was not accused of mere negligence, but "conduct unbecoming" under *N.J.A.C.* 6A:9B-4.4, which requires proof of more than negligence. Petitioners emphasize the serious nature of the charges set forth in the OSC and submit that, if proven, they would possibly constitute a criminal offense. Petitioners argue, therefore, the triggering event to apply for defense costs and indemnification

would be the same as the procedure set forth in *N.J.S.A.* 18A:16-6.1, not *N.J.S.A.* 18A:16-6.

Although this was not a traditional negligence-type claim against Azzaro, it was still an "administrative" action for the purposes of *N.J.S.A.* 18A:16-6. As we noted above, a claim under *N.J.S.A.* 18A:16-6.1 does not ripen until the dismissal or final disposition of an action in favor of a petitioner, but that statute only pertains to "criminal or quasi-criminal" matters. Accordingly, it is not applicable under the facts presented here. That is, when a civil or administrative action is instituted against a covered employee, the right to seek defense costs is not dependent on the dismissal of the case, and petitioners are required to proceed pursuant to *N.J.S.A.* 18A:16-6.

Here, petitioners had an obligation to advise the Board they sought defense costs within a reasonable period of time after the [*15] OSC was filed. We recognize, however, *N.J.S.A.* 18A:16-6 requires the conduct at issue in a civil or administrative claim to be within the scope of employment.[5] In *L.A.*, the Court addressed whether *N.J.S.A.* 18A:16-6 entitled a school board employee to defense and indemnification costs in a civil action arising from the same allegations contained in a dismissed criminal indictment. 221 N.J. at 192, 110 A.3d 914.[6] The *L.A.* Court noted, "[t]he plain language of [*N.J.S.A.*18A:16-6] requires that the underlying civil action be related to conduct falling within the employment duties of the school board employee." *Id.* 221 N.J. at 202, 110 A.3d 914. The *L.A.* Court further noted, "[t]he only question to be answered when a school board employee seeks civil indemnification under *N.J.S.A.* 18A:16-6 is whether the employee was acting within the scope of [their] employment duties . . . ." *Id.* 221 N.J. at 205-06, 110 A.3d 914.

Despite the Board's arguments here that there was no indication it would have declined to provide defense costs, we are mindful the Board could have determined the allegations against Azzaro were outside the scope of her employment. However, the fact that the Board may have declined petitioners' request for defense costs

---

[5] The statute specifically provides a board shall defray costs for "any act or omission arising out of and in the course of the performance of the duties of such . . . employment." *N.J.S.A.* 18A:16-6.

[6] The *L.A.* Court did not address the issue raised in this case as to when a board employee must request defense and indemnification from a board of education regarding a pending civil or administrative claim.

is not a basis to refrain from requesting defense and indemnification under *N.J.S.A.* 18A:16-6. To the extent the Board would have denied Azzaro's request [*16] for defense costs, she was not without a remedy. Petitioners would be entitled to challenge such a determination similar to the parties in *L.A.*

An evidentiary hearing may have been required, or an adjudication of the underlying OSC, to determine if Azzaro was acting within the scope of her employment to resolve the issue. Nevertheless, unlike *N.J.S.A.* 18A:16-6.1, which requires an employee to wait until the dismissal of a criminal action to seek reimbursement of legal fees, *N.J.S.A.* 18A:16-6 has no such requirement. Petitioners were obligated to request the Board to provide defense costs even if the request may have initially been rejected. Although a board may initially deny defense costs, the board will ultimately be responsible for reasonable legal fees if it is later determined the employee was, in fact, working within the scope of their employment.

Petitioners next argue the Board had a conflict, and therefore it could not have assigned Azzaro counsel. In *Edison*, we noted:

> The municipality's obligation under this enactment can be met in several ways, as long as the means chosen fulfills the statutory purpose of providing officers with a defense at municipal expense. It can proffer the services of the municipal attorney [*17] when that attorney can function in that capacity free from potential conflicts of interest. When [they] cannot, or in any event, the municipality can proffer the services of an outside attorney who, when selected, would owe exclusive allegiance to the officer free from municipal control. Or, it can come to an agreement with counsel of the officer's choosing as to services to be rendered and the costs thereof. In any of these methods of complying with the statutory mandate, the officer will be provided with an attorney, admitted in this State, of reasonable competence, at municipal expense and the statutory goal will have been achieved. [7]
> [147 N.J. Super at 15, 370 A.2d 511.]

We determine our analysis in *Edison* is applicable here. We are therefore unpersuaded the Board would not have been able to defray the cost of counsel simply because there was a potential conflict, thereby allowing petitioners to wait more than a decade before providing the Board notice of its intent to seek defense costs. Rather, if there was in fact a conflict, the Board could have assigned outside counsel or "come to an agreement with counsel of [petitioner's] choosing . . . and the costs thereof." *Ibid.* [8]

A sensible reading of *N.J.S.A.* 18A:16-6, when read in conjunction with *N.J.S.A.* 18A:16-6.1, would not permit a party to wait more than ten years to seek defense costs. We conclude Azzaro—to the extent she wanted to seek defense costs from the Board—should have acted under *N.J.S.A.* 18A:16-6 within a reasonable period of time after learning of the charges set forth in the OSC to put the Board on notice of her request for defense costs. What constitutes a reasonable time may be a fact-specific inquiry in certain cases. However, we are convinced bringing an action under *N.J.S.A.* 18A:16-6 twelve years after the initiation of an administrative action was not reasonable under the circumstances.

The Commissioner's decision was based on a reasonable interpretation of the statute and supported by sufficient credible evidence on the record as a whole. *R.* 2:11-3(e)(1)(D). We discern no basis to disturb the Commissioner's [*19] findings and conclude the decision was not arbitrary, capricious, or unreasonable. To the extent we have not specifically addressed any of petitioners' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. *R.* 2:11-3(e)(1)(E).

Affirmed.

_____

**End of Document**

_____

[7] We further added in *Edison*, "[a]lthough obligated to provide for an officer's defense, the municipality should have some control over costs, and at least be in a position to know in advance what those costs will be." *Id.* 147 N.J. Super at 15, 370 A.2d 511; *see State v. Horton*, 34 N.J. 518, 534, 170 A.2d 1 (1961).

[8] We further noted in *Edison*:

> Of course, nothing said herein [*18] should be construed to preclude an [employee] from selecting [their] own attorney either to assume sole control of the defense or to cooperate with the attorney selected by the municipality; in either case, however, the [employee's] selection of counsel, without municipal concurrence, carries with it [their] own personal obligation to pay [their] fees.
> [*Id.* 147 N.J. Super at 16, 370 A.2d 511.]

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

| | | |
|---|---|---|
| ANTHONY VILLANUEVA, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : | DOCKET NO.: MER-L-002304-23 |
| | : | |
| v. | : | |
| | : | Civil Action |
| CITY OF TRENTON | : | |
| | : | CERTIFICATION OF SERVICE |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

I hereby certify that the within motion has been electronically filed with the

Superior Court of New Jersey, Mercer County, Law Division, and all counsel of

record have been served by electronic filing.

<div style="margin-left:50%;">

RENAUD COLICCHIO LLC
Attorneys for Defendant
City of Trenton
*/s/Robert F. Renaud*
Robert F. Renaud, Esq.

</div>

Dated:     January 25, 2024

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

| | | |
|---|---|---|
| ANTHONY VILLANUEVA, | : | SUPERIOR COURT OF NEW JERSEY |
| | : | LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : | DOCKET NO.: MER-L-002304-23 |
| | : | |
| v. | : | |
| | : | Civil Action |
| CITY OF TRENTON | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

## DEFENDANT'S BRIEF ON ORDER TO SHOW CAUSE

---

<div style="text-align:right">

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for City of Trenton

</div>

On the brief:
Robert F. Renaud, Esq.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

STATEMENT OF FACTS ............................................................................. 1

LEGAL STANDARD ................................................................................... 2

ARGUMENT ................................................................................................ 3

POINT I: PLAINTIFF'S ACTION IN LIEU OF PREROGATIVE WRIT WILL NOT LIE ................................................................................... 3

POINT II: PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF IS NOT ENTITLED TO REIMBURSEMENT OF LEGAL FEES UNDER N.J.S.A. 40A:14-155 ............................................ 6

POINT III: EVEN IF PLAINTIFF HAD A VIABLE CLAIM FOR ATTORNEY'S FEES AND COSTS, NO AWARD COULD BE MADE ON THIS RECORD ............................................................................ 8

CONCLUSION ............................................................................................ 11

## TABLE OF AUTHORITIES

**Federal Cases**                                                                **Pages**

Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973)..........................................................................9

**State Cases**

Alexander's Dep't Stores v. Paramus, 125 N.J. 100 (1991) .......................................5

Azzaro v. Board of Education of the City of Trenton, 2023 N.J. Super. LEXIS 130 (App. Div. 2023) .......................................................................................................8

Banco Popular N. Am. v. Gandi, 184 N.J. 161 (2005)................................................3

Borough of Eatontown v. Danskin, 121 N.J. Super. 68 (Law Div. 1966)................5

Camden County Energy Recovery Associates, L.P. v. Department of Environmental Protection, 320 N.J. Super. 59 (App. Div. 1999), aff'd., 170 N.J. 246 (2001) ........................................................................................................2

Edison v. Mezzacca, 147 N.J. Super. 9 (App. Div. 1977).......................................7

In re LiVolsi, 85 N.J. 576 (1981).................................................................................5

In re Resolution of State Com. of Investigation, 108 N.J. 35 (1987) ......................6

N.J. Citizen Action, Inc. v. Cnty. of Bergen, 391 N.J. Super. 596 (App. Div.), certif. denied, 192 N.J. 597 (2007) ............................................................................3

N.J. Sports Prods., Inc. v. Bobby Bostick Promotions, LLC, 405 N.J. Super. 173 (Ch. Div. 2007) ..........................................................................................................3

Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739 (1989)..................2,3

Rendine v. Pantzer, 141 N.J. 292 (1995) ...........................................................9, 10

Roa v. Roa, 200 N.J. 555 (2010)................................................................................3

<u>Scheidt v. DRS Technologies, Inc.</u>, 424 N.J. Super. 188 (App. Div. 2012) ............3

<u>Switz v. Middletown Township</u>, 23 N.J. 580 (1957)..................................4

<u>Valerius v. Newark,</u> 84 N.J. 591 (1980) ...................................................8

<u>Van Horn v. Trenton,</u> 80 N.J. 528 (1979)................................................8

<u>Vas v. Roberts</u>, 418 N.J. Super 509, 521-522 (App. Div. 2011)...........................4,5

<u>Velantzas v. Colgate-Palmolive Co.,</u> 109 N.J. 189 (1988)........................................2

<u>Zimmer v. Castellano</u>, 432 N.J. Super. 412 (App. Div. 2013) ................................5

**<u>Statutes</u>**

<u>N.J.S.A</u>. 40A:14-155.............................................................................6,7

**<u>Rules</u>**

<u>R</u>. 2:2-3 ............................................................................................4
<u>R</u>. 4:6-2(e) ......................................................................................2,11
<u>R</u>. 4:42-9(b) ....................................................................................8,9
<u>R</u>. 4:42-9(c) .....................................................................................10
<u>R</u>. 4:69-1.........................................................................................4
<u>R</u>. 8:2 .............................................................................................4
<u>R.P.C</u>. 1.5(a)....................................................................................8

# STATEMENT OF FACTS[1]

Plaintiff Anthony Villanueva ("Plaintiff" or "Villanueva") is a Trenton Police Officer.  He seeks "reimbursement" of legal fees and costs of Jerome A. Ballarotto, Esq. ("Ballarotto"), allegedly incurred in defending a multi-count indictment, entered April 18, 2019. Villanueva was charged with offenses occurring on two different dates, one set of events allegedly occurring on April 9, 2017, involving an alleged assault on "Victim I" and falsification of records pertaining to same ("the Earlier Charges"),[2] and the other set on November 28, 2017, involving an alleged assault on "Victim II" and falsification of records pertaining to that incident ("the Later Charges"). Ballarotto began representing Villanueva on or about November 3, 2018 (prior to the indictment), as per the billing records provided with the verified complaint.

The charges involving the two separate incidents were severed by court order on September 17, 2019. Ballarotto's billing records do not specify whether any of the legal work listed related to the Earlier Charges or the Later Charges, or both. The billing started on November 3, 2018, before the indictment was entered and before the earlier Charges were severed from the Later Charges.

---

[1] This statement of facts is taken from the allegations of the verified complaint and attachments thereto.
[2] The first incident also involved an indicted co-defendant.

1

The charges in the indictment were brought by the Office of the United States Attorney for the District of New Jersey in the Federal District Court for the District of New Jersey. Plaintiff submitted his request for reimbursement after one of the criminal cases was resolved in his favor. The verified complaint does not allege that Plaintiff requested that the City of Trenton provide the means for his defense when he was indicted or at any time prior to June 23, 2023, when he sought "reimbursement," not a means for his defense.

## LEGAL STANDARD

Defendant City of Trenton seeks dismissal of Plaintiff's Complaint, pursuant to R. 4:6-2(e), for failure to state a claim on which relief can be granted. Defendant acknowledges that the Complaint must be searched to determine if a cause of action can be gleaned; every reasonable inference is accorded the Plaintiff. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746 (1989). The Court is to approach its review mindful of the test for determining the adequacy of a pleading; that is, whether a cause of action is "suggested" by the facts alleged in the complaint. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988). On the other hand, if the Complaint states no basis for relief, dismissal is appropriate. Camden County Energy Recovery Associates, L.P. v. Department of Environmental Protection, 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd., 170 N.J. 246 (2001). Additionally, "…[T]he essential facts supporting Plaintiff's cause of action must be presented in

order for the claim to survive; conclusory allegations are insufficient in that regard."

Scheidt v. DRS Technologies, Inc., 424 N.J. Super. 188, 193 (App. Div. 2012), citing

Printing Mart-Morristown, supra, at 768. A motion to dismiss must be based on the

pleadings themselves. Roa v. Roa, 200 N.J. 555, 562 (2010).

On a motion to dismiss, consideration of documents referred to in a complaint

"… is proper and does not convert Defendants' [Rule] 4:6-2(e) motion[] into [a]

motion[] for summary judgment." N.J. Citizen Action, Inc. v. Cnty. of Bergen, 391

N.J. Super. 596, 605 (App. Div.), certif. denied, 192 N.J. 597 (2007); see also N.J.

Sports Prods., Inc. v. Bobby Bostick Promotions, LLC, 405 N.J. Super. 173, 178

(Ch. Div. 2007). Matters of public record may also be considered. "In evaluating

motions to dismiss, courts consider 'allegations in the complaint, exhibits attached

to the complaint, matters of public record, and documents that form the basis of a

claim.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005).

## ARGUMENT

## POINT I: PLAINTIFF'S ACTION IN LIEU OF PREROGATIVE WRIT WILL NOT LIE.

Plaintiff's Complaint is styled as an Action in Lieu of Prerogative Writ. Such

actions were created by the 1947 Constitution. N.J. Const. (1947), Art. VI, § V, par.

4, provides:

> Prerogative writs are superseded, and, in lieu thereof, review, hearing
> and relief shall be afforded in the Superior Court, on terms and in the

3

manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary.

Prior to the advent of the 1947 Constitution, the prerogative writs were <u>certiorari</u>, <u>quo warranto</u>, <u>prohibition</u>, and <u>mandamus</u>. The relief formerly available through these writs is now available only through <u>R.</u> 4:69-1. <u>et seq.</u>

> <u>R.</u> 4:69-1 provides:
>
> Review, hearing and relief heretofore available by prerogative writs and not available under R. 2:2-3 or R. 8:2 shall be afforded by an action in the Law Division, Civil Part, of the Superior Court. The complaint shall bear the designation "In Lieu of Prerogative Writs".

Accordingly, any action which could have formerly been brought through one of the prerogative writs, which is not an appeal of a state agency decision or within the jurisdiction of the Tax Court, must be filed in the Law Division as an action in lieu of prerogative writ. <u>Vas v. Roberts</u>, 418 N.J. Super 509, 521-522 (App. Div. 2011). Plaintiff has filed this Action as one in Lieu of Prerogative Writs in the Law Division.

Plaintiff's action could only be an attempt at an action in lieu of <u>mandamus</u>, since <u>certiorari</u>, <u>quo warranto</u>, and <u>prohibition</u> clearly do not apply. A writ of <u>mandamus</u> is a court order which compels a governmental official to perform a particular ministerial act or duty or compels the exercising of a discretionary function without directing how that discretion is to be exercised. <u>Switz v. Middletown Township</u>, 23 N.J. 580, 598 (1957), <u>In re Resolution of State Com. of</u>

Investigation, 108 N.J. 35, 45 (1987). Mandamus "is available only where there is a clear and definite right to the performance of a ministerial duty, in essence mandatory and final [;] [u]nless the particular duty is peremptory, the fair exercise of judgment and discretion is the province of the functioning authority." Zimmer v. Castellano, 432 N.J. Super. 412, 418 (App. Div. 2013), citing Borough of Eatontown v. Danskin, 121 N.J. Super. 68, 73 (Law Div. 1966). It is apodictic that in order to bring an action in lieu of prerogative writ, one must be able to satisfy all of the elements of the prerogative writ in lieu of which the action is brought. In re LiVolsi, 85 N.J. 576, 593, 594 (1981), Alexander's Dep't Stores v. Paramus, 125 N.J. 100, 107 (1991). Additionally, because a writ of mandamus is an order given by a court "to a government official," Vas v. Roberts, supra, 418 N.J. Super., at 522, the City of Trenton is not a proper defendant and no governmental official is named.

Here, Plaintiff seeks to compel payment by the municipality of $ 251,650.00 in legal fees and $4,166.37 in investigative costs. To succeed in an action in lieu of mandamus to compel this action, Plaintiff would have to be able to demonstrate that the duty to perform the action was definite, mandatory and free from doubt or discretion. Plaintiff cannot so demonstrate, because the City of Trenton is not a proper defendant, and because the alleged duty to perform the action requested is not definite or mandatory, or free from doubt or discretion. The payment sought by Plaintiff is merely a disputed unliquidated claim for money. For those reasons and

the reasons which follow, the relief sought by Plaintiff should be denied, and the

action in lieu of prerogative writs should be dismissed.

**POINT II: PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF IS NOT ENTITLED TO REIMBURSEMENT OF LEGAL FEES UNDER <u>N.J.S.A.</u> 40A:14-155.**

Plaintiff did not submit a brief detailing his legal argument with his verified

complaint and proposed Order to Show Cause. In the verified complaint, he cites

<u>N.J.S.A.</u> 40A:14-155 as the source of his entitlement to "reimbursement" of

$255,816.37 in legal fees and costs. That statute provides:

> Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.

The statute contemplates two different scenarios with respect to criminal

charges. First, if charges <u>are not brought by the municipality</u>, "… the governing body

of the municipality shall provide said member or officer with the necessary means

for the defense of such action …." Second, if the criminal charges are <u>instituted on</u>

<u>complaint of the municipality</u> and are dismissed or determined in favor of the officer,

"… he shall be reimbursed for the expense of his defense." In this case, where

charges were brought by the U.S. Attorney's Office and were not brought by the municipality, Plaintiff did not request (and does not allege that he requested) that the governing body provide the means for defense. He apparently chose his own lawyer (or the P.B.A. chose and paid for one for him). Because Plaintiff never requested that the municipality provide the means for his defense in this case <u>not brought by the municipality</u>, he is not entitled to "reimbursement." The statue does not provide for reimbursement under the circumstances here presented.

The foregoing proposition has been established by clear precedent. A municipality's obligation under <u>N.J.S.A.</u> 40A:14-155 does not require it to pay counsel chosen by a police officer without the prior agreement of the municipality. <u>Edison v. Mezzacca</u>, 147 N.J. Super. 9, 15 (App. Div. 1977). The municipality has several choices when an officer asks the municipality to provide the means for his defense. The municipality can proffer the services of an attorney of the municipality's choice, who would owe exclusive allegiance to the officer free from municipal control, or it can reach agreement with counsel of the officer's choosing as to the services to be rendered and the cost thereof. <u>Id.</u>  A municipality cannot be compelled to pay even a judicially determined "reasonable fee" of an officer chosen by the officer because, <u>inter alia,</u> the municipality should have some control over costs and what is "reasonable" may vary from attorney to attorney. <u>Id.</u>

The "Mezzacca Rule" has been recognized and endorsed by the Supreme Court in Van Horn v. Trenton, 80 N.J. 528, 538, n.3 (1979) and Valerius v. Newark, 84 N.J. 591, 598-599 (1980). It was recently recognized, endorsed and relied on by the Appellate Division in Azzaro v. Board of Education of the City of Trenton, 2023 N.J. Super. LEXIS 130, *10-13 (App. Div. 2023).[3] The case at bar illustrates the reason for the rule. Here, Plaintiff's counsel, who agreed to accept $50,000 in payment for his services from the P.B.A., seeks to have the City pay his "reasonable" fee of $255,816.37. Clearly, where no request was made by Plaintiff to the City to provide "the means for the defense" of the charges, the City is under no obligation to "reimburse" Plaintiff for legal fees (putting aside the issue of whether Plaintiff actually paid or is obligated to pay such fees). Plaintiff's complaint should be dismissed on that basis.

**POINT III. EVEN IF PLAINTIFF HAD A VIABLE CLAIM FOR ATTORNEY'S FEES AND COSTS, NO AWARD COULD BE MADE ON THIS RECORD.**

Even if Plaintiff had a viable claim for attorney's fees, the verified complaint and other documents submitted are wholly inadequate to support such a claim. R. 4:42-9(b) requires that attorney fee applications be supported by an affidavit of services addressing the factors enumerated by R.P.C. 1.5(a), which provides as follows:

---

[3] It is hereby certified that counsel is aware of no contrary unpublished opinions.

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

1.   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2.   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3.   the fee customarily charged in the locality for similar legal services;

4.   the amount involved and the results obtained;

5.   the time limitations imposed by the client or by the circumstances;

6.   the nature and length of the professional relationship with the client;

7.   the experience, reputation, and ability of the lawyer or lawyers performing services; and

8.   whether the fee is fixed or contingent.

Here, no affidavit of services has been provided. This is crucial. Many of the factors set forth in R. 4:42-9(b) have not been addressed. Plaintiff has not provided a copy of his retainer agreement with Mr. Ballarotto or Mr. Ballarotto's agreement with the P.B.A. Moreover, there is a considerable amount of block billing. When seeking a fee award, "the attorney's presentation of billable hours should be set forth in sufficient detail to permit the trial court to ascertain the manner in which the billable hours were divided among the various counsel[.]" Rendine v. Pantzer, 141 N.J. 292, 337 (1995). This means that the attorney is to present the judge with fairly definite information revealing "how many hours were spent in what manner by which

attorneys ... devoted to various general activities[." <u>Id.</u> (quoting <u>Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.</u>, 487 <u>F.2d</u> 161, 167 (3d Cir. 1973)). Without this information, which at a minimum must include "some fairly definite information as to the hours devoted to various general activities – pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys," the Court herein cannot discern the nature of the services for which compensation is sought. <u>Rendine</u>, <u>supra</u>, 141 <u>N.J.</u> at 337, quoting <u>Lindy</u>, 487 <u>F.2d</u> at 167.

In addition to the foregoing, the legal bills attached to the verified complaint do not distinguish between the Earlier Charges and the Later Charges, so one cannot determine what hours are being charged for which case. Also, <u>R.</u> 4:42-9(c) requires a fee application to include a statement as to how much has been paid to the attorney and what provision, if any, has been made for the payment of fees to the attorney in the future. This would require disclosure of Plaintiff's retainer agreement with Mr. Ballarotto. That information is lacking and must be provided in an affidavit of services.

For all of these reasons, an attorney's fee award, even if one were to be legally supported, could be made on this record.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that Plaintiff's Verified

Complaint be dismissed, with prejudice, for failure to state a claim upon which relief

may be granted pursuant to R. 4:6-2(e), and that the relief sought therein be denied.

<div style="text-align:right">

Respectfully Submitted,
RENAUD COLICCHIO LLC
Attorneys for Defendant

/s/ Robert F. Renaud

</div>

Dated: January 25, 2024                 Robert F. Renaud

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

---

| | |
|---|---|
| ANTHONY VILLANUEVA, | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : DOCKET NO.: MER-L-002304-23 |
| | : |
| v. | : |
| | : Civil Action |
| CITY OF TRENTON | : |
| | : NOTICE OF MOTION TO DISMISS |
| | : PLAINTIFF'S VERIFIED COMPLAINT |
| | : FOR FAILURE TO STATE A CLAIM |
| Defendant. | : PURSUANT TO R. 4:6-2(e) |
| | : |

---

To:  Mark W. Catanzaro, Esq.
      Law Office of Mark W. Catanzaro
      21 Grant Street
      Mount Holly, New Jersey 08060
      *Attorney for Plaintiff, Anthony Villanueva*

**PLEASE TAKE NOTICE** that on Friday, February 16, 2024, at 10:00 a.m.

or as soon thereafter as counsel may be heard, the undersigned attorneys for

Defendant City of Trenton shall move before the Superior Court of New Jersey,

Mercer County, Hon. Robert T. Lougy, A.J.S.C., for an Order granting Dismissal of

Plaintiff's Verified Complaint, with prejudice, pursuant to R. 4:6-2(e).

**PLEASE TAKE FURTHER NOTICE** that this Defendant will rely on the annexed Certification and Brief in support of this motion. A form of Order granting the relief sought is attached.

**PLEASE TAKE FURTHER NOTICE** that Defendant City of Trenton requests oral argument.

Pretrial conference:      N/A
Calendar call:              N/A
Trial date:                   N/A
Discovery end date:      March 15, 2025

<div style="text-align:right">

RENAUD COLICCHIO LLC
Attorneys for Defendant
City of Trenon

/s/Robert F. Renaud
Robert F. Renaud, Esq.

</div>

Dated:        January 25, 2024

## CERTIFICATION OF SERVICE

I hereby certify that the within motion has been electronically filed with the Superior Court of New Jersey, Mercer County, Law Division, and all counsel of record have been served by electronic filing.

<div style="text-align:right">

RENAUD COLICCHIO LLC
Attorneys for Defendant
/s/Robert F. Renaud
Robert F. Renaud, Esq.

</div>

Dated:        January 25, 2024

# EXHIBIT E

LAW OFFICES

# Mark W. Catanzaro

21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
TELEPHONE (609) 261-3400
FACSIMILE (856) 235-4332
Mark@Catanzarolaw.com

**MARK W. CATANZARO**
MEMBER NEW JERSEY &
PENNSYLVANIA BARS

143 WHITE HORSE AVENUE
TRENTON, NEW JERSEY 08610

March 13, 2024

**VIA E-COURTS**

Honorable Robert T. Lougy, A.J.S.C.
Superior Court of New Jersey
Mercer County Law Division
400 South Warren Street
Trenton, NJ 08608

          RE:  Anthony Villanueva v. City of Trenton
               Docket No.: MER-L-002304-23

Dear Sir:

       Please accept this correspondence in response to the City of
Trenton's opposition to Villanueva's request for attorney's fees.
The matter is scheduled to be heard on Wednesday, March 20, 2024.

       Mr. Ballarotto submitted his fee request to the City of
Trenton on June 23, 2023.  The request was referred by the City
Clerk to Wes Bridges, the Legal Department Director for a response.
Over the course of many months. Mr. Bridges negotiated with Mr.
Ballarotto and ultimately agreed to submit the fee request to the

Honorable Robert T. Lougy, A.J.S.C.
March 13, 2024
Page 2

City Council for approval at the reduced rate of $350.00 per hour. Mr Bridges ultimately advised Mr. Ballarotto that the City would not pay him solely because there remained outstanding two criminal charges related to events on a separate date[1]. At no time did Mr. Bridges ever tell Ballarotto that the City would deny the claim for attorney's fees. It was not until the City filed the reply to Villanueva's complaint that the failure to request counsel be assigned or the request that counsel get paid was raised. As a result of the City's position, plaintiff, through counsel, sought out Inman to ascertain whether he had requested counsel or had the City authorized an attorney to represent him.

Ballarotto spoke directly to Scott Krasny, the attorney that represented the co-defendant, Drew Inman, and inquired what he had done. Krasny advised Ballarotto that he had not requested that Inman be provided counsel or asked them to authorize him to represent Inman. Krasny indicated his first communication with the City concerning his invoices occurred after Inman was acquitted of the conduct. He submitted his bills and negotiated with Bridges just as Ballarotto had. Krasny reached the same agreement Ballarotto had reached. Krasny's invoices were submitted to the

---

[1]Ballarotto has since tried the second case. Villanueva was acquitted of the first count and the jury was unable to reach a verdict with regard to the second count. Retrial on the second count has yet to be scheduled if the government elects to retry the matter.

Honorable Robert T. Lougy, A.J.S.C.
March 13, 2024
Page 3

City Council and approved.  Krasny was paid in full at the reduced hourly rate of $350.00 per hour.  As the court can imagine the conduct of the City with regard to Inman vis-a-vis Villanueva raises any number of issues and causes of action.

The law does not require a party to perform a futile act. *Stark v. National Research & Design Corp.*, 33 N.J. Super 315, 322 (App Div. 1954).  In a slightly different context but which aligns in principle with the matter before this court is *O'Lone v. Department of Human Services*, 357 N.J. Super. 170 (App Div. 2003). In O'Lone, the question was whether the Merit System Board could deny back pay for a career civil service employee whose termination was was reduced to suspension, based solely on the employee's failure to seek substitute employment during the period of employment without considering the availability of said employment. In ruling in favor of the employee, the court stated:

> Our law generally does not impose an obligation upon a party to perform a futile act. See *Yager v. Am. Life Ins. Ass'n*, 44 N.J. Super. 575, 581-82, 131 A.2d 312 (App.Div.1957). Moreover, the Court in *Goodman* held that "[i]n order to invoke mitigation there must, of course, be available jobs." 86 N.J. at 36, 429 A.2d 341. Although we have concluded that the Department's failure-to-mitigate defense is not subject to the same evidentiary rules as a back pay claim under the LAD, the Court's conclusion in *Goodman* that the availability of substitute employment is relevant to establishment of this defense is also applicable in the present context.

Honorable Robert T. Lougy, A.J.S.C.
March 13, 2024
Page 4

The City of Trenton had terminated Anthony Villanueva for a matter unrelated to that for which Ballarotto sought his attorney's fees. Villanueva submits that the City was not going to provide an attorney or agree to pay an attorney when the charges were filed for an employee they had fired ten (10) months earlier. For those reasons, the court should find in favor of Plaintiff and award Villanueva attorney's fees.

In the event the court is not inclined to grant plaintiff's request, Plaintiff would request that the court should follow the recommendation of the City's attorney and dismiss the case without prejudice to refile within a specified period of time. (See correspondence from Robert Renaud to the court dated February 5, 2024, transaction LCV202430441). Since Mr. Renaud filed his letter, plaintiff has ascertained that his codefendant's attorney was paid by the City of Trenton. Inman never requested counsel and his attorney never requested that he be approved by the City to represent him. He agreed to accept the same rate that Villanueva's attorney had agreed to accept. These are additional facts which defendant submits dismissing the case without prejudice. In light of the City's actions with regard to Inman, Villanueva wishes to raise a number of Constitutional, Statutory and common law claims.

If this court adjudicates this matter adverse to Villanueva's interests, on the present record, he will be severely prejudiced

Honorable Robert T. Lougy, A.J.S.C.
March 13, 2024
Page 5

and left with potential remedies.  The entire controversy doctrine

provides:

> Non-joinder of claims required to be joined by
> the entire controversy doctrine shall result
> in the preclusion of the omitted claims to the
> extent required by the entire controversy
> doctrine, except as otherwise provided by R.
> 4:64-5 (foreclosure actions) and R. 4:67-4(a)
> (leave required for counterclaims or
> cross-claims in summary actions). Claims of
> bad faith, which are asserted against an
> insurer after an underlying uninsured
> motorist/underinsured motorist claim is
> resolved in a Superior Court action, are not
> precluded by the entire controversy doctrine.

It is an equitable doctrine.  Its purposes are to preclude

fragmented litigation.  Plaintiff submits the entire controversy

doctrine would preclude plaintiff from raising the claims should

this court adjudicate plaintiff's claims on the merits.  Plaintiff

should not suffer that harsh consequence.  Defendant never raised

the lack of notice prior to it's response and led plaintiff to

believe the sole reason payment was not being made was because of

the second matter.  It appears those representations are accurate

in light of the City's payment to Inman's counsel.

Plaintiff respectfully requests that the court find that

requesting counsel or payment of counsel would be a futile act and

find in plaintiff's favor.  If the court is not inclined to proceed

in that fashion because of an insufficient record on that issue,

Honorable Robert T. Lougy, A.J.S.C.
March 13, 2024
Page 6

that complaint be dismissed without prejudice. Plaintiff is

prepared to file a new complaint in short order.

Respectfully Submitted,

*Mark W. Catanzaro*

Mark W. Catanzaro

MWC/taw

cc:  Robert Renaud, Esquire (via e-filing)
     Anthony Villanueva (via email)
     Jerome A. Ballarotto, Esquire (via email)

**LAW OFFICE OF MARK W. CATANZARO**
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

| | | |
|---|---|---|
| ANTHONY VILLANUEVA | : | SUPERIOR COURT OF NEW JERSEY |
| | | LAW DIVISION - MERCER COUNTY |
| | : | |
| Plaintiff | : | |
| v. | | CIVIL ACTION |
| | : | |
| CITY OF TRENTON | | DOCKET NO.: MER-L-002304-23 |
| | : | |
| Defendant. | : | CERTIFICATION OF |
| | | Jerome A. Ballarotto |

Jerome A. Ballarotto, Esquire, hereby certifies as follows:

1.   I am attorney at law licensed to practice in the State of
     New Jersey.  I am familiar with the facts set forth in
     this certification.

2.   I have reviewed the letter memorandum dated March 13,
     2024 being submitted to the court in reply to Defendant's
     motion to dismiss Anthony Villanueva's complaint for
     attorney's fees.

3.   The facts set forth in that memorandum accurately reflect the communications I had with Wes Bridges and Scott Krasny.

I hereby certify that the foregoing statements are true.  I am aware if the foregoing statements are false, I am subject to punishment.


Dated:    March 13, 2024

_____
Jerome A. Ballarotto, Esquire

*LAW OFFICE OF MARK W. CATANZARO*
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

---

| | | |
|---|---|---|
| ANTHONY VILLANUEVA | : | SUPERIOR COURT OF NEW JERSEY |
| | | LAW DIVISION – MERCER COUNTY |
| | : | |
| Plaintiff | : | |
| v. | | CIVIL ACTION |
| | : | |
| CITY OF TRENTON | | DOCKET NO.: MER-L-002304-23 |
| | : | |
| Defendant. | : | CERTIFICATION OF SERVICE |

---

I, Tiffany A. Wiley, of full age, makes the following certification:

1.   I am a secretary employed by the Law Firm of Mark W. Catanzaro, Attorney for the plaintiff, Anthony Villanueva, in the within action.

2.   On March 13, 2024, I filed with the Superior Court of New Jersey, Mercer County, via eCourts, Plaintiff's Reply Brief to Trenton City's Opposition to the Motion for Attorney's Fees, Certification of Jerome A. Ballarotto, Esquire and Certification of

of Service.

3. On March 13, 2024, I filed with the Superior Court of New Jersey, Mercer County, via eCourts, Plaintiff's Reply Brief to Trenton City's Opposition to the Motion for Attorney's Fees, Certification of Jerome A. Ballarotto, Esquire and Certification of Service was served upon Robert F. Renaud, Esquire, via e-Courts electronic filing.

4. March 13, 2024, I forwarded via United States Postal Service a courtesy copy of Plaintiff's Reply Brief to Trenton City's Opposition to the Motion for Attorney's Fees, Certification of Jerome A. Ballarotto, Esquire and Certification of Service to:

> Honorable Robert T. Lougy, A.J.S.C.
> Superior Court of New Jersey
> Mercer County Law Division
> 400 South Warren Street
> Trenton, NJ 08608

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: March 13, 2024

Tiffany A. Wiley

# EXHIBIT F

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

| | |
|---|---|
| ANTHONY VILLANUEVA, | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : DOCKET NO.: MER-L-002304-23 |
| | : |
| v. | : |
| | : Civil Action |
| CITY OF TRENTON | : |
| | : ORDER DISMISSING PLAINTIFF'S |
| | : VERIFIED COMPLAINT PURSUANT |
| | : TO R. 4:6-2(e) |
| Defendant. | : |
| | : |

**THIS MATTER** having been opened to the Court by Renaud Colicchio

LLC, attorneys for Defendant City of Trenton, and the Court having read and

considered the papers submitted and argument of counsel, and with good cause

having been shown;

It is **ORDERED** on this __20th__ day of _____March_____, 2024,

that Plaintiff's Verified Complaint be and is hereby dismissed,/with/prejudice./

WITHOUT prejudice.

pursuant to <u>R.</u> 4:6-2(e), for failure to state a claim on which relief can be granted; and

It is **FURTHER ORDERED** that this Order shall be deemed served upon all parties of record by the filing of same on eCourts.

_____
ROBERT LOUGY, A.J.S.C.

This motion was:

Opposed      ✓

Unopposed      _____

For the reasons as stated on the record.

# EXHIBIT G

**Judiciary eCourts System - Civil Part**

User:ROBERT RENAUD

**CASE JACKET**

| Back |

Docket Number:: MER L 002304 - 23

| Create Summary Report |

**Case Caption:** Villanueva Anthony Vs City Of Trenton

| | |
|---|---|
| **Court:** Civil Part | **Venue:** Mercer |
| **Case Type:** Actions In Lieu Of Prerogative Writs | **Case Status:** Reinstated |
| **Case Track:** 4 | **Judge:** Robert T Lougy |
| **# of Discovery Days:** 450 | **Age of Case:** 1 YR 10 MO 12 DY |
| **Original Discovery End Date:** 03/15/2025 | **Current Discovery End Date:** 03/15/2025 |
| **Original Arbitration Date:** | **Current Arbitration Date:** |
| **Original Trial Date:** | **Current Trial Date:** |
| **Disposition Date:** 05/02/2024 | **Case Disposition:** Reinstated |

| | |
|---|---|
| **Case Initiation Date:** 12/13/2023 | |
| **Jury Demand:** None | |
| **Team:** 50 | |
| **Consolidated Case:** N | |
| **# of DED Extensions:** 0 | |
| **# of Arb Adjournments:** 0 | |
| **# of Trial Date Adjournments:** 0 | |
| **Statewide Lien:** | |

| Plaintiffs (2) | Defendants (1) | Case Proceedings (6) | ACMS Documents (11) | Fees (11) |

Anthony Villanueva    (Party No. 1)

Jerome A Ballarotto    (Party No. 3)

**Case Actions**

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 12/13/2023 | 🔗 ☒ | Verified Complaint for MER-L-002304-23 submitted by CATANZARO, MARK WILLIAM, MARK W. CATANZARO on behalf of ANTHONY VILLANUEVA against CITY OF TRENTON | LCV20233612471 | 12/13/2023 |
| 12/13/2023 | 🔗 ☒ | Order Show Cause(Setting Hearing Date)-GRANTED by Judge ROBERT T. LOUGY, A.J.S.C | LCV20233613200 | 12/13/2023 |
| 12/13/2023 | ☒ | The motion filed on 12/13/2023 will be decided on 02/15/2024. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: COMPLAINT [LCV20233612471] | LCV20233614720 | 12/13/2023 |
| 12/14/2023 | 🔗 ☒ | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20233622845 | 12/14/2023 |
| 12/21/2023 | 🔗 ☒ | NOTICE OF APPEARANCE - FIRST PLEADING submitted by RENAUD, ROBERT, F of RENAUD COLICCHIO LLC on behalf of CITY OF TRENTON against ANTHONY VILLANUEVA | LCV20233689304 | 12/21/2023 |

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 01/25/2024 | ☒ | MOTION TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM submitted by RENAUD, ROBERT, F of RENAUD COLICCHIO LLC on behalf of CITY OF TRENTON against ANTHONY VILLANUEVA **LINKED FILING\*** | LCV20242143348 | 01/25/2024 |
| 01/25/2024 | ☒ | The motion filed on 01/25/2024 will be decided on 03/01/2024. Oral argument has been requested. You will be notified when oral argument is scheduled. Do not come to the courthouse unless you are so notified. Re: MOTION TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM [LCV20242143348] | LCV20242177012 | 01/25/2024 |
| 01/25/2024 | | **DEFICIENCY NOTICE**: re: MOTION TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM [LCV20242143348] -Other mtn to dismiss is on 28 day motion schedule ......return date is now 3-1-24 | LCV20242177027 | 01/25/2024 |
| 01/26/2024 | ☒ | GENERAL CORRESPONDENCE submitted by RENAUD, ROBERT, F of RENAUD COLICCHIO LLC on behalf of ANTHONY VILLANUEVA | LCV20242130980 | 01/26/2024 |
| 01/29/2024 | ☒ | Oral argument has been rescheduled on 02/15/2024 with Judge LOUGY, ROBERT, T, Court Room TEAMS. re: MOTION TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM [LCV20242143348] | LCV20242240453 | 01/29/2024 |
| 02/05/2024 | ☒ | ADJOURNMENT REQUEST submitted by CATANZARO, MARK, WILLIAM of MARK W. CATANZARO on behalf of ANTHONY VILLANUEVA against CITY OF TRENTON | LCV20242303335 | 02/05/2024 |
| 02/05/2024 | ☒ | CORRESPONDENCE submitted by RENAUD, ROBERT, F of RENAUD COLICCHIO LLC on behalf of CITY OF TRENTON against ANTHONY VILLANUEVA **LINKED FILING\*** | LCV20242304401 | 02/05/2024 |
| 02/05/2024 | ☒ | The motion filed on 12/13/2023 was rescheduled to 03/20/2024. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: COMPLAINT [LCV20233612471] | LCV20242308048 | 02/05/2024 |
| 02/05/2024 | ☒ | Oral argument has been granted. Hearing is rescheduled on 03/20/2024 with Judge LOUGY, ROBERT, T, Court Room TEAMS. re: MOTION TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM [LCV20242143348] | LCV20242308079 | 02/05/2024 |
| 03/13/2024 | ☒ | OPPOSITION TO MOTION submitted by CATANZARO, MARK, WILLIAM of MARK W. CATANZARO on behalf of CITY OF TRENTON against ANTHONY VILLANUEVA **LINKED FILING\*** | LCV20244665669 | 03/13/2024 |
| 03/20/2024 | 🖇 ☒ | ORDER TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM-Partial by Judge LOUGY, ROBERT, T re: MOTION TO DISMISS COMPLAINT, FAILURE TO STATE CLAIM [LCV20242143348] | LCV20244745572 | 03/22/2024 |
| 03/20/2024 | 🖇 ☒ | ORDER SHOW CAUSE-Denied by Judge LOUGY, ROBERT, T re: Verified Complaint | LCV20247456144 | 03/22/2024 |
| 05/02/2024 | 🖇 ☒ | AMENDED COMPLAINT submitted by CATANZARO, MARK, WILLIAM of MARK W. CATANZARO on behalf of ANTHONY VILLANUEVA against CITY OF TRENTON | LCV20241121806 | 05/02/2024 |
| 05/03/2024 | ☒ | **DEFICIENCY NOTICE**: re: AMENDED COMPLAINT [LCV20241121806] -Other- case dismissed. | LCV20241134870 | 05/03/2024 |

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 05/09/2024 | 🖇 ☒ | GENERAL CORRESPONDENCE submitted by CATANZARO, MARK, WILLIAM of MARK W. CATANZARO on behalf of ANTHONY VILLANUEVA, JEROME A BALLAROTTO against CITY OF TRENTON | LCV20241189310 | 05/09/2024 |
| 11/18/2025 | ☒ | **CLERK NOTICE:** re: GENERAL CORRESPONDENCE [LCV20241189310] -A case management conference has been scheduled for December 1, 2025 at 10:00 a.m. remotely via Teams video conferencing. Invites to follow shortly. | LCV20253116113 | 11/18/2025 |
| 11/18/2025 | ☒ | The "Case Management Conference" Proceeding for MER-L-002304-23 has been scheduled for 12/01/2025. | LCV20253116133 | 11/18/2025 |
| 12/01/2025 | 🖇 ☒ | Case Management Order-Court Initiated - Granted by Judge LOUGY, ROBERT, T | LCV20253320781 | 12/01/2025 |
| 12/04/2025 | 🖇 ☒ | NOTICE OF REMOVAL submitted by RENAUD, ROBERT, F of RENAUD COLICCHIO LLC on behalf of CITY OF TRENTON against ANTHONY VILLANUEVA, JEROME A BALLAROTTO | LCV20253360083 | 12/04/2025 |

Showing 1 to 24 of 24 entries

# EXHIBIT H

LAW OFFICES

# MARK W. CATANZARO

21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
TELEPHONE (609) 261-3400
FACSIMILE (856) 235-4332
Mark@Catanzarolaw.com

**MARK W. CATANZARO**
MEMBER NEW JERSEY &
PENNSYLVANIA BARS

143 WHITE HORSE AVENUE
TRENTON, NEW JERSEY 08610

May 9, 2024

**VIA E-COURTS**

Honorable Robert T. Lougy, A.J.S.C.
Superior Court of New Jersey
Mercer County Law Division
400 South Warren Street
Trenton, NJ 08608

> RE: Anthony Villanueva v. City of Trenton
> Docket No.: MER-L-002304-23

Dear Sir:

On March 20, 2024, the Court entertained argument on defendant's motion to dismiss plaintiff's complaint. The Court granted the motion indicating that the complaint in lieu of prerogative writ was not the appropriate manner to bring the case. The Court indicated that plaintiff would be given 45 days to amend their complaint. The Court ultimately entered an order dismissing the complaint. On May 2, 2024, less than 45 days after the Court entered its order, plaintiff filed the amended complaint. On May 3, 2024, plaintiff received a deficiency notice concerning the amended complaint indicating, "other - case dismissed."

It was not my understanding that plaintiff would have to file a completely new action based upon the court's ruling. The Court specifically indicated that an amended complaint would be the

appropriate vehicle. I would ask the Court activate the matter to allow the amended complaint to be filed.

In the event your Honor has any questions or concerns, please do not hesitate to contact me.

Respectfully,

*Mark W. Catanzaro*

Mark W. Catanzaro

MWC/taw

cc: Robert F. Renaud, Esquire (via eCourts)

# EXHIBIT I

**PREPARED BY THE COURT**

|  |  |
|---|---|
| ANTHONY VILLANUEVA, | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | LAW DIVISION – MERCER COUNTY |
|  | DOCKET NO. L-2304-23 |
| v. | CIVIL ACTION |
| CITY OF TRENTON, |  |
| Defendant. | **SCHEDULING ORDER** |

**THIS MATTER** having come before the Court, the Hon. Robert Lougy, A.J.S.C., presiding, on a case review conference with Mark Catanzaro, Esq., appearing as counsel for Plaintiff Anthony Villanueva, and Robert F. Renaud, Esq., appearing as counsel on behalf of Defendant City of Trenton; and the Court having advised counsel that the Court had accepted for filing Plaintiff's amended complaint of May 2, 2024, but had not notified either party of that determination; and the Court and counsel having agreed that a responsive pleading is the necessary and appropriate next step; and for good cause shown;

**IT IS** on this 1st day of December 2025 **ORDERED** that:

1.    Defendant shall file a responsive pleading to Plaintiff's First Amended Complaint no later than twenty days from the date of this Order.

2.    The Court misspoke during the case review conference.  This matter is not a prerogative writ action, per the Court's order and statement of reasons of March 20, 2024.  The Court will not schedule a <u>Rule</u> 4:69-4 conference.  The parties shall proceed with discovery accordingly.

3.    This Order shall be deemed filed and served upon uploading to eCourts.

<div style="text-align:right">

/s/ Robert Lougy

ROBERT LOUGY, A.J.S.C.

</div>

<div style="text-align:right">

December 1, 2025

Page 2 of 2

</div>

# EXHIBIT J

Robert F. Renaud, Esq.
RR1351
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 272-9700
Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROME A BALLAROTTO, ESQUIRE and ANTHONY VILLANUEVA | Civil Action No.: |
| Plaintiffs, | |
| vs. | |
| CITY OF TRENTON | NOTICE OF REMOVAL |
| Defendant. | |

**PLEASE TAKE NOTICE** that on this date the Defendant City of Trenton, by its undersigned counsel, has filed this Notice of Removal pursuant to 28 U.S.C. §1446(a) in the office of the Clerk of the United States District Court for the District of New Jersey.

Defendants by their undersigned attorney, show:

1.     Plaintiff Anthony Villanueva brought an action against the City of Trenton by filing a verified complaint in lieu of prerogative writ in the Superior Court of New Jersey, Law Division, Mercer County, on December 13, 2023. A true copy of the filed verified complaint is annexed hereto as Exhibit A.

2.     The verified complaint in lieu of prerogative writ did not raise any federal questions.

3.     The verified complaint in lieu of prerogative writ was dismissed, without prejudice, by order dated March 20, 2024, for failure to state a claim upon which relief can be granted. A copy of that

1

order is annexed hereto as Exhibit B.

4.      The Plaintiffs, Jerome A Ballarotto, Esquire, and Anthony Villanueva, attempted to file an Amended Complaint and Jury Demand on May 2, 2024.  A true copy of the Amended Complaint is annexed hereto as Exhibit C.

5.      The Amended Complaint raised, for the first time, federal questions, alleging that conduct of the City of Trenton was "violative of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution depriving Villanueva of a valid property interest."

6.      Although the Amended Complaint was purportedly filed on May 2, 2024, it was immediately rejected by the Superior Court Clerk's Office. A copy of the deficiency notice is annexed hereto as Exhibit D.

7.      The Amended Complaint was accepted by the Court for filing by Order dated December 1, 2025. A copy of that Order is annexed hereto as Exhibit E.

8.      There have been no other proceedings in this action.

9.      Plaintiffs assert in the Amended Complaint that Plaintiff Jerome A. Ballarotto is an attorney with an office at 143 Whitehorse Avenue, in the City of Trenton, County of Mercer, State of New Jersey and that Plaintiff Anthony Villanueva, resides at 1727 N. 6th Street, in the Township of Ewing, County of Mercer, State of New Jersey.

10.      Defendant is a municipality of the State of New Jersey, with offices located at 319 East State Street in the City of Trenton, County of Mercer, State of New Jersey.

11.      The above-entitled action arises under federal law because the Plaintiff seeks relief under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution.

12.      Since the subject matter of Plaintiff's Complaint involves a federal question and Plaintiff contends that the Plaintiff's cause of action arises under of the United States Constitution, jurisdiction over the matter is conferred on this Court pursuant to 28 U.S.C. §1331.

13.      This notice is filed with this Court within thirty (30) days after the acceptance for filing of the Amended Complaint in New Jersey eCourts and service of same on the removing party in the above entitled action.

14.      There is only one defendant in this action so that consent of any codefendants to the removal of this action is inapplicable.

**WHEREFORE**, the removing party, Defendant City of Trenton, prays that the above-entitled action be removed from the Superior Court of New Jersey to this Court.

RENAUD COLICCHIO LLC
Attorneys for Defendant

/s/ *Robert F. Renaud*
 By: Robert F. Renaud

Dated: December 4, 2025

## CERTIFICATION

We hereby certify that upon the filing of this Notice of Removal in the Office of the Clerk of the District for the District of New Jersey, we are also filing a copy of this Notice with the Clerk of the Superior Court of New Jersey, Law Division, Mercer County, 56 Paterson Street New Brunswick, New Jersey 08903-0964, by e-filing on eCourts, and are serving a copy of this Notice on Plaintiff's attorney, Mark W. Catanzaro, Esq., 21 Grant Street, Mount Holly, New Jersey 08060, by e-filing on eCourts, and by certified mail, return receipt requested.

/s/ *Robert F. Renaud*
Robert F. Renaud

Dated: December 4, 2025

3

# EXHIBIT A

*LAW OFFICE OF MARK W. CATANZARO*
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

| | |
|---|---|
| **ANTHONY VILLANUEVA** : | **SUPERIOR COURT OF NEW JERSEY** |
| : | **LAW DIVISION - MERCER COUNTY** |
| : | |
| : | |
| **Plaintiff** : | |
| **V.** : | **CIVIL ACTION** |
| : | |
| **CITY OF TRENTON** : | **DOCKET NO.: MER-L-** |
| : | |
| : | |
| **Defendant.** : | **VERIFIED COMPLAINT** |
| : | **IN LIEU OF PREROGATIVE WRIT** |
| : | |

Plaintiff Anthony Villanueva brings this matter pursuant to

N.J.S.A. 40A:14-155 as means of obtaining reimbursement of his

legal expenses in defense of criminal charges which were dismissed

and finally determined in the favor of the Plaintiff. These charges

arose out of his employment as a police officer for the City of

Trenton, located in the County of Mercer, State of New Jersey,

wherein Plaintiff alleges and says as follows:

## JURISDICTION

1.  Jurisdiction is properly laid in this Court in that the
    City of Trenton is subject to personal jurisdiction in
    the State of New Jersey, the events giving rise to the
    Complaint occurred within the County of Mercer, and the
    City of Trenton is a political sub-division and/or
    public entity and an employer located in the County of
    Mercer.

2.  Plaintiff brings this action pursuant to N.J.S.A.
    40A:14-155 for the reimbursement of the expenses of his
    defense of criminal charges which were dismissed and
    finally determined in the favor of the Plaintiff.

## STATEMENT OF FACTS

3.  On or about April 18, 2019, Officer Villanueva was served
    with an Indictment. Attached hereto as **Exhibit A** is a
    true and accurate copy of the Indictment dated April 18,
    2019.

4.  The Indictment alleges, in Counts 1 through 3 that
    Officer Villanueva, while on duty as a police officer
    for Defendant, committed violations of Title 18 USC §
    242 and § 2 (Deprivation of rights under color of law)
    and violation of Title 18 USC § 1519 (Falsification of
    records in two separate counts).

5.  The Indictment also charged a fellow officer, Drew Inman
    with the same violations on the same date, April 9, 2017
    (Counts 1 and 4).

6.  The Indictment also charges crimes, in counts 5 and 6,
    of a completely separate and distinct incident involving
    Officer Villanueva occurring on November 28, 2017
    involving a separate individual and location. Counts 5
    and 6 of the Indictment charge Officer Villanueva with
    violations of Title 18 USC § 242 and 18 USC § 1519.

7.  On or about April 23, 2019, Jerome A. Ballarotto, Esquire
    ("Ballarotto") entered his appearance in the United
    States District Court on behalf of Officer Villanueva in
    the criminal matters. Attached hereto as **Exhibit B** is a
    true and accurate copy of the April 23, 2019 Notice of
    Appearance filed by Jerome A. Ballarotto, Esquire.

8.  The Police Benevolent Association ("PBA"), through its
    Legal Protection Plan, advanced $50,000.00 to assist
    Officer Villanueva to defend the matter, which, by
    agreement, Anthony Villanueva is obligated to return to
    the PBA upon reimbursement of expenses from the City of
    Trenton

9.  On September 17, 2019, U.S. District Court Judge Brian
    Marinotti severed the separate and distinct allegation
    and victim in Counts 5 and 6 of the Indictment. **Exhibit
    C** is a true and accurate copy of the Severance Order.

3

10.  Following the severance, Counts 1 through 4 were tried in United States District Court in Trenton, New Jersey.

11.  On May 15, 2023 the Jury found Officer Villanueva not guilty on all charges against him as set forth in Counts 1, 2 and 3. **Exhibit D** is a true and accurate copy of the Jury's redacted[1] verdict sheet. As a result, all charges arising from the incident on April 9, 2017 and charged in counts 1, 2 and 3 of the indictment as to Villanueva were dismissed.

12.  Ballarotto submitted a letter and itemized bill to Defendant informing the City of Trenton that the charges against Officer Villanueva for the conduct alleged on April 9, 2017 had been dismissed. Attached hereto as **Exhibit E** is a true and accurate copy of the letter and itemized bill submitted to the City of Trenton.

13.  The letter by Ballarotto asked Defendant if they were willing to pay Officer Villanueva's legal fees or if Officer Villanueva's counsel would be required to file an application with the Superior Court.

14.  Wesley Bridges, counsel for the Defendant advised the Ballarotto that the City of Trenton will not pay Officer Villanueva's legal fees.

---

[1]The redaction excludes the identity and signature of the jury foreman but does not modify any other portion of the verdict sheet

15. As such, Villanueva is seeking reimbursement for the legal bills he incurred to defend the charges that arose from allegation of his conduct on April 9, 2017.

16. Additionally, Villanueva is seeking reimbursement for the cost of a private detective to assist in his defense. **Exhibit F** is a true and accurate copy of the bill from Bowen Investigations.

17. The rates charged by Ballarotto in this matter are based upon his forty (40) plus years experience as a Federal Criminal Trial attorney and Licensed private investigator Ross Bowen as a retired N.J. State Trooper and licensed private investigator. Attached hereto as **Exhibit G** is a Certification by attorney Joseph Hayden as to the reasonableness of Ballarotto's rates.

18. Villanueva is requesting reimbursement of **$251,650.00** in legal fees for this matter and **$4,166.37** in investigative costs. **See Exhibits E and F**

19. As such, he is requesting a total of **$ 255,816.37** in legal fees and costs from the City of Trenton for successfully defending these criminal allegations against Officer Villanueva.

### COUNT ONE
### (N.J.S.A. 40A:14-155)

**PLAINTIFF SHOULD BE REIMBURSED FOR THE EXPENSE OF HIS DEFENSE OF THE CRIMINAL CHARGES FILED ON APRIL 18, 2019 PURSUANT TO N.J.S.A. 40A:14-155.**

5

20.   Officer Villanueva reasserts and realleges each and every previous paragraph as if fully set forth and reiterated herein.

21.   <u>N.J.S.A.</u> 40A:14-155 provides as follows:

> Whenever a member or officer of a municipal police department or force is a defendant in any action or legal proceeding arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties, the governing body of the municipality shall provide said member or officer with necessary means for the defense of such action or proceeding, but not for his defense in a disciplinary proceeding instituted against him by the municipality or in criminal proceeding instituted as a result of a complaint on behalf of the municipality. If any such disciplinary or criminal proceeding instituted by or on complaint of the municipality shall be dismissed or finally determined in favor of the member or officer, he shall be reimbursed for the expense of his defense.

22.   Officer Villanueva had to engage in a full defense of the criminal charges filed against him based upon the indictment and jury verdict as well as supported by the Certification of Jerome A. Ballarotto, Esquire filed herewith.

23.   On May 15, 2023 the criminal charges for the incident on April 9, 2017 were dismissed in the United States District Court after a finding of not guilty by the Jury.

24.   Following the dismissal of the criminal charges against Officer Villanueva, a demand for reimbursement of the

total defense costs of **$255,816.37,** including but not limited to the reasonable legal fees, commensurate with Mr. Ballarotto's expertise and years of practice, was made to the City of Trenton.

25. Officer Villanueva seeks herein an Order from the Court for the reimbursement of his expenses for his defense of the criminal charges dated April 9, 2017.

   **WHEREFORE,** Plaintiff demands judgement against the City of Trenton as follows:

   For an Order of the Court, pursuant to <u>N.J.S.A</u>. 40A:14-155 for the defense costs of Officer Anthony Villanueva, including but not limited to the counsel fees to Jerome A. Ballarotto, Esquire as detailed in the Certification of Jerome A. Ballarotto, Esquire filed herewith and the cost of investigative services of Bowen Investigations as detailed in the invoice of Ross Bowen.

   b.   Payment of counsel fees and costs for the filing of the instant Verified Complaint in lieu of prerogative writ and papers in support thereof as well as any reply papers or other filings supporting this application.

   c.   For such other, further, additional and different relief as this Court deems just and proper.

7

## CERTIFICATION PURSUANT TO R. 4:5-1

The undersigned hereby certifies, on information and belief, as follows:

1.    The matter in controversy is not the subject of any other action pending in any Court or of a pending proceeding, other than the subject disciplinary hearing described herein.

2     No other action or arbitration proceeding is contemplated.

3.    I further certify that to the best of my knowledge no other parties need to be joined in this matter at this time.

Respectfully submitted,

Mark W. Catanzaro, Esquire
*Attorney for Plaintiff*

Dated: 12|7|2023

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised that Mark W. Catanzaro, Esquire, is hereby designated as trial counsel.

Respectfully submitted,

Mark W. Catanzaro, Esquire
*Attorney for Plaintiff*

Dated: 12|7|2023

8

## VERIFICATION AND CERTIFICATION

I hereby certify that the above facts are true and accurate to the best of my knowledge. I understand that if any of the above statements are willfully false, I am subject to punishment.

_Anthony Villanueva_
Anthony Villanueva

Dated: 12/6/2023

9

# EXHIBIT "A"

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 11 of 57   Trans ID: LCV20233612471
Case 3:25-cv-2580-18-RK-JTQ Document 2 Filed 04/25/11/23 Page 166 of 275 PageID: 289

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 1 of 13 PageID: RECEIVED

APR 1 8 2019

AT 2:45 P.M.
WILLIAM T. WALSH
CLERK

MSL/2017R00565

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 19-292 (BRM) |
| | : | |
| v. | : | 18 U.S.C. § 242 |
| | : | 18 U.S.C. § 2 |
| ANTHONY VILLANUEVA and | : | 18 U.S.C. § 1519 |
| DREW INMAN | : | |

### I N D I C T M E N T

The Grand Jury, in and for the District of New Jersey, sitting at Trenton,

charges:

### BACKGROUND

1.    At all times relevant to this Indictment:

a.    Defendant ANTHONY VILLANUEVA ("defendant

VILLANUEVA") and defendant DREW INMAN ("defendant INMAN") were police

officers employed by the Trenton Police Department in Trenton, New Jersey.

b.    As police officers, and while acting under color of law,

defendant VILLANUEVA and defendant INMAN were required at all times to

comply with the Constitution and laws of the United States, including the right

to be free from unreasonable search and seizure during the course of an

investigation, arrest, and detention; and the right not to be deprived of life or

liberty without due process of law.

c.    "Victim 1" resided in Trenton, New Jersey.

d.    "Police Officer 1" was employed by the Trenton Police

Department.

CaseCase3:3:5-v2508:t81-81RKUTQDocDocumment 2-Hed Fi4ed/12511/P8ge Page 967Page2173:PageID: MER-L-002304-23  12/13/2023 8:33:01 AM  Pg 12 of 57  Trans ID: LCV20233612471 290

Case 3:19-cr-00292-PGS  Document 1  Filed 04/18/19  Page 2 of 13 PageID: 2

### The April 9, 2017 Assault of Victim 1

2.      On or about April 9, 2017, at approximately 2:00 a.m., defendant VILLANUEVA responded to a radio call for assistance, alerting him that other officers were in pursuit of a suspect, later identified as Victim 1, who had fled in his vehicle, attempting to avoid a routine traffic stop near an intersection in Trenton.

3.      VILLANUEVA and other officers soon spotted Victim 1 abandoning his vehicle and fleeing on foot.  VILLANUEVA and other officers therefore exited their vehicles and pursued Victim 1 on foot.

4.      After leading the officers on a foot chase for approximately one to two minutes, Victim 1 reached the banks of the Delaware and Raritan Canal, got into the water, and swam across to the opposite bank.  Victim 1 then exited the canal by climbing up a steep embankment and into a brush-strewn area near a parking lot.

5.      A chain link fence separated the brush-strewn area adjacent to the canal from the parking lot.  As Victim 1 exited the canal and walked towards the chain link fence, Police Officer 1 stood on the opposite side of the fence, in the parking lot.  Additional Trenton police officers who had arrived on the scene ordered Victim 1 to put his hands in the air.  Victim 1 complied, raising both hands in the air above his head.  Police Officer 1 ordered Victim 1 to climb over the fence toward Police Officer 1.  Again, Victim 1 complied.  Victim 1 placed both hands on top of the chain link fence.

2

6.    Defendant VILLANUEVA was standing on the same side of the chain link fence as Victim 1, and nearby Victim 1, as Victim 1 complied with Police Officer 1's commands.

7.    Nonetheless, and without issuing any warning or command, defendant VILLANUEVA moved swiftly towards Victim 1 and punched Victim 1 in the face.

8.    Simultaneously, defendant INMAN, who had been approaching Victim 1 from behind, tackled Victim 1 to the ground. Defendant INMAN did not issue any warning or command prior to tackling Victim 1.

9.    During the next approximately thirty seconds, defendant INMAN and defendant VILLANUEVA punched Victim 1 numerous times. Victim 1 cried out in pain, and told officers, "stop hitting me in my face," and "you've got my hands."

10.    Victim 1 was subsequently handcuffed by other officers on the scene, and driven to Trenton Police Headquarters for processing. Defendant VILLANUEVA assisted in processing Victim 1, and was present when Victim 1's booking photograph was taken within a few hours of Victim 1's arrest. The booking photograph depicts various injuries to Victim 1's face; namely, a bloody lip and nose, and swelling and bruising around his left eye.

11.    Following the assault against Victim 1, defendants VILLANUEVA and INMAN each completed law enforcement reports that memorialized the incident. In the reports, the defendants knowingly made numerous

misrepresentations, false statements and omissions in an effort to portray Victim 1 as the aggressor and an ongoing threat.

## COUNT 1
### (Deprivation of Rights Under Color of Law)

12.  The allegations set forth in paragraphs 1 through 11 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

13.  On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendants,

### ANTHONY VILLANUEVA and
### DREW INMAN,

did, while acting under color of law, and aiding and abetting each other and other persons both known and unknown to the grand jury, assault Victim 1 during the arrest of Victim 1 while Victim 1 was attempting to comply with orders from police officers, thereby willfully depriving Victim 1 of the right, secured and protected by the Fourth Amendment of the Constitution and laws of the United States, to be free from unreasonable search and seizure. This offense resulted in bodily injury to Victim 1.

In violation of Title 18, United States Code, Section 242 and Section 2.

4

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 15 of 57   Trans ID: LCV20233612471
Case 3:25-cv-00292-PGS Document 1 Filed 04/18/19 Page 5 of 13 PageID: 293

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 5 of 13 PageID: 5

## COUNT 2
### (Falsification of Record)

14.    The allegations set forth in paragraphs 1 through 11 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

15.    Offenses involving the deprivation of civil rights, to include the right to be free from unreasonable searches and seizures, including through the use of unreasonable force by a person acting under color of law, statute, ordinance, or regulation, contrary to Title 18, United States Code, Section 242, are matters within the jurisdiction of the Federal Bureau of Investigation, which is an agency within the United States Department of Justice.

16.    On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**ANTHONY VILLANUEVA,**

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Use of Force Report about the April 9, 2017 incident involving Victim 1, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter; that is, VILLANUEVA falsely reported that: (a) Victim 1 had resisted police officer control; and (b) Victim 1 had not been injured.

In violation of Title 18, United States Code, Section 1519.

## COUNT 3
### (Falsification of Record)

17.    The allegations set forth in paragraphs 1 through 11, and 15, of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

18.    On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

### ANTHONY VILLANUEVA,

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Case Supplemental Report about the April 9, 2017 incident involving Victim 1, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter; that is, VILLANUEVA falsely reported that: (a) VILLANUEVA had struck Victim 1 because Victim 1 had refused to comply with police commands to put his hands behind his back; and (b) VILLANUEVA had struck Victim 1 while struggling to handcuff Victim 1.

In violation of Title 18, United States Code, Section 1519.

6

## COUNT 4
### (Falsification of Record)

19.    The allegations set forth in paragraphs 1 through 11, and 15, of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

20.    On or about April 9, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**DREW INMAN,**

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Use of Force Report about the April 9, 2017 incident involving Victim 1, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter; that is, INMAN falsely reported that: (a) Victim 1 had resisted police officer control; and (b) Victim 1 had presented a physical threat to police and/or had attacked a police officer or another.

In violation of Title 18, United States Code, Section 1519.

7

## COUNT 5
### (Deprivation of Rights Under Color of Law)

### The November 28, 2017 Assault of Victim 2

21.    The allegations set forth in paragraph 1 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

22.    At all times relevant to this Indictment:

a.    Victim 2 was a pretrial detainee, under the custody and care of the Trenton Police Department after being charged with a crime but prior to any trial or adjudication relating to the charges against him.

b.    "Police Aide 1" was employed by the Trenton Police Department.

23.    On or about November 28, 2017, defendant VILLANUEVA was assigned to work in the holding cell area of Trenton Police Headquarters.  At approximately 12:30 a.m., defendant VILLANUEVA permitted Victim 2 to place a telephone call.

24.    After Victim 2 had been using the telephone for a number of minutes, defendant VILLANUEVA directed Victim 2 to end the call.  Victim 2 refused to comply with defendant VILLANUEVA's directive.  Defendant VILLANUEVA thereafter approached the telephone and hung up the receiver.  A brief altercation between defendant VILLANUEVA, Victim 2, and Police Aide 1 ensued.

25.    The altercation ended with Victim 2 walking away from defendant VILLANUEVA and Police Aide 1 down a corridor that contained a number of holding cells.

8

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 19 of 57   Trans ID: LCV20233612471
Case 3:25-cv-00581-RK-JTQ   Document 1-2   Filed 01/04/25   Page 2 of 3 PageID: 297

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 9 of 13 PageID: 9

26.     Victim 2 walked calmly, unescorted, into a cell denoted in Trenton Police Department records as Cell 7, and the door to Cell 7 began to close behind him, locking him in.

27.     Almost immediately thereafter, defendant VILLANUEVA strode quickly down the corridor after Victim 2, towards Cell 7, carrying a can of Oleoresin Capsicum, also known as "OC spray" or "pepper spray." OC spray usually causes an almost immediate burning sensation of the skin; a burning, tearing and swelling of the eyes; and, when inhaled, creates inflammation in the respiratory tract, temporarily making breathing more difficult.

28.     As the door to Cell 7 closed, and after Victim 2 was secured inside of the cell, defendant VILLANUEVA reached through the bars and sprayed OC spray into Cell 7, while Victim 2 attempted to shield himself with a mattress.

29.     Defendant VILLANUEVA temporarily walked away from the area of Cell 7. Less than approximately one minute later, however, defendant VILLANUEVA returned to Cell 7 with a can of OC spray in his hand. Defendant VILLANUEVA attempted to administer OC spray into Cell 7 at Victim 2 as the cell door began to open, pursuant to a command defendant VILLANUEVA had issued to Police Aide 1.

30.     As a result of the OC spray administered by defendant VILLANUEVA, Victim 2 suffered burning sensations on the skin of his face and elsewhere on his body.

31.     Following defendant VILLANUEVA's assault on Victim 2 with the OC spray, defendant VILLANUEVA completed an incident report that contained

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 20 of 57   Trans ID: LCV20233612471
Case 3:25-cv-02581-RK-JTQ   Document 2-2   Filed 04/25/11/Page 24 of 55 PageID: 24 PageID: 298

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 10 of 13 PageID: 10

numerous false statements designed to conceal his unlawful conduct and improper treatment of Victim 2.

32.     On or about November 28, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

**ANTHONY VILLANUEVA,**

did, while acting under color of law, assault Victim 2, a pretrial detainee, by spraying Victim 2 with OC spray while Victim 2 was confined in a cell, thereby willfully depriving Victim 2 of the right, secured and protected by the Fourteenth Amendment of the Constitution and laws of the United States, not to be deprived of liberty without due process of law, which includes the right of a pretrial detainee to be free from the use of objectively unreasonable force. This offense resulted in bodily injury to Victim 2.

In violation of Title 18, United States Code, Section 242.

## COUNT 6
### (Falsification of Record)

33.    The allegations set forth in paragraphs 1, 15, and 21 through 32 of this Indictment are hereby repeated, realleged and incorporated as if fully set forth herein.

34.    On or about November 28, 2017, in Mercer County, in the District of New Jersey, and elsewhere, the defendant,

### ANTHONY VILLANUEVA,

in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a Trenton Police Department Incident/Investigation Report about the November 28, 2017 incident involving Victim 2, with the intent to impede, obstruct, and influence the investigation and proper administration of such matter, that is, defendant VILLANUEVA falsely reported that: (a) he had been forced to engage in a long struggle with Victim 2 in order to get Victim 2 into a cell; (b) had required the assistance of Police Aide 1 in order to do so; (c) after Victim 2 entered the cell, Victim 2 began to scream and cause a disturbance that caused the other inmates to become irate; (d) only then did defendant VILLANUEVA approach the cell and order Victim 2 to get on the ground; and (e) defendant VILLANUEVA first issued a warning to Victim 2, before grabbing a can of OC spray and then spraying Victim 2.

11

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 22 of 57   Trans ID: LCV20233612471
Case 3:85-cv-02580-PGS-JTQ   Document 2-11   Filed 12/04/25   Page 22 of 57 PageID: 300

Case 3:19-cr-00292-PGS   Document 1   Filed 04/18/19   Page 12 of 13 PageID: 12

In violation of Title 18, United States Code, Section 1519.

**CRAIG CARPENITO**
**UNITED STATES ATTORNEY**

**CASE NUMBER:** 19-292-ALL (BLM)

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

v.

## ANTHONY VILLANUEVA and DREW INMAN

## INDICTMENT FOR

18 U.S.C. §§ 2, 242 & 1519

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

MOLLY S. LORBER, R. JOSEPH GRIBKO & RAY A. MATEO
ASSISTANT U.S. ATTORNEYS
TRENTON, NEW JERSEY
(609) 989-2190

# EXHIBIT "B"

AO 458 (Rev. NJ 03/14) Notice of Appearance - Criminal

# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

ANTHONY VILLANUEVA
Defendant.

NOTICE OF APPEARANCE IN A
CRIMINAL CASE

Case No.    19-CR-292-1 (BRM)

To the Clerk of this Court and all parties of record:

Enter my appearance as counsel in this case for:

ANTHONY VILLANUEVA
Name of Defendant

I hereby certify under penalty of perjury that I am a member in good standing of the bar of the following Court(s), as of the indicated year of admission, and that I am not the subject of suspension or disbarment from any Court.

Court(s)

**4/23/2019**

Date

Year(s) of Admission

Signature of Attorney

JEROME BALLAROTTO
Print Name

Address

City, State, Zip Code

Email Address

Phone Number

Fax Number

## RECEIVED

APR 23 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

# EXHIBIT "C"

RECEIVED

SEP 17 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

      Plaintiff,

      v.

ANTHONY VILLANUEVA, ET AL.,

      Defendant.

Crim No. 19-292 (BRM) (01)

**ORDER OF SEVERANCE**

    This matter having been opened to the Court by way of motion by Jerome A.
Ballarotto, Esq. appearing on behalf of Defendant, Anthony Villanueva and in the
presence of Joseph Gripko and Ray Mateo, Assistant United States Attorneys on
behalf of the Government, and the Court having considered oral argument and letter
memorandum of Jerome A. Ballarotto, Esq.

    IT IS on this 17th day of Sept, 2019;

    ORDERED that the motion for severance for Counts 5 and 6 of the
Indictment Number 19-292 has been granted

Honorable Brian R. Martinotti, U.S.D.J.

**EXHIBIT "D"**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Honorable Peter G. Sheridan |
| **v.** | : | |
| | : | |
| **ANTHONY VILLANUEVA,** | : | Criminal No. 19-292 (PGS) |
| **and** | : | |
| **DREW INMAN** | : | **VERDICT SHEET** |
| | : | |

### COUNT ONE
### (as to Defendant Anthony Villanueva)

1.      With respect to Count One, the Government must prove beyond a reasonable doubt that Defendant Anthony Villanueva, on or about April 9, 2017, while acting under color of law, and/or aiding and abetting another, as a police officer with the Trenton Police Department, willfully deprived Chanzie Washington of a right secured and protected by the United States Constitution and laws of the United States, that is, the right to be free from unreasonable seizure by one acting under color of law, which includes the right to be free from the use of unreasonable force, in violation of Title 18, United States Code, Section 242.

We, the unanimous jury, find:

Defendant Anthony Villanueva:


NOT GUILTY   X̲    GUILTY ____

1

*If you find defendant Anthony Villanueva guilty of Count One, Question 1,*

*please answer question 1(A).   Otherwise please go to question 2 and continue to*

*answer the questions.*

**1(A).   Did the United States prove beyond a reasonable doubt that Defendant Anthony Villanueva's actions resulted in bodily injury to Chanzie Washington?**

Yes _____            *N A*

No   _____

*Please proceed to Question 2.*

2

## COUNT TWO

3.    With respect to Count Two, did the Government prove beyond a reasonable doubt that Defendant Anthony Villanueva knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, that is, on or about April 9, 2017, Anthony Villanueva authored and submitted a false and misleading Trenton Police Department Use of Force Report, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count One, in violation of Title 18, United States Code, Section 1519.

We, the unanimous jury, find:

Defendant Anthony Villanueva:

NOT GUILTY  ☒    GUILTY ____

*Please proceed to the next Count.*

4

## COUNT THREE

4.     With respect to Count Three, did the Government prove beyond a reasonable doubt that Defendant Anthony Villanueva knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, that is, on or about April 9, 2017, Anthony Villanueva authored and submitted a false and misleading Trenton Police Department Case Supplemental Report, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count One, in violation of Title 18, United States Code, Section 1519.

We, the unanimous jury, find:

Defendant Anthony Villanueva:

NOT GUILTY __X__   GUILTY _____

*Please proceed to the next Count.*

5

Case 3:19-cr-00292-PGS   Document 130   Filed 05/15/23   Page 5 of 5 PageID: 2198

## COUNT FOUR

5.    With respect to Count Four, did the Government prove beyond a reasonable doubt that Defendant Drew Inman knowingly falsified, concealed, covered up and made false entries in a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, that is, on or about April 9, 2017, Drew Inman authored and submitted a false and misleading Trenton Police Department Use of Force Report, with intent to obstruct any investigation into the deprivation of Constitutional Rights described in Count One, in violation of Title 18, United States Code, Section 1519.

We, the unanimous jury, find:

Defendant Drew Inman:

NOT GUILTY __X__    GUILTY _____

FOREPERSON    Date: 5/15/23

6

**EXHIBIT "E"**

# JEROME A BALLAROTTO
## ATTORNEY AT LAW

143 White Horse Avenue
Trenton, NJ 08610
609-581-8555

604 Whitehead Street
Key West, FL 33040
305-296-2270

Email: JABESQUIRE@aol.com

www.ballarotto law.com

June 23, 2023

VIA EMAIL TO BGARCIA@TRENTONNJ.ORG AND US MAIL
Brandon Garcia, City Clerk
319 East State Street
Trenton, NJ 08608

RE:  UNITED STATES vs POLICE OFFICER ANTHONY VILLANÚEVA

Dear Sir,

On April 18, 2019 officer Villanueva was indicted by the US Attorney in the district of New Jersey for the crime of assault on Mr. Washington, thereby violating his Constitutional rights and filing false police records, all within the performance of his duties as a Trenton Police officer.  Three counts of this Indictment for his conduct with Mr. Washington on 4/19/2017 was tried in US District Court in Trenton NJ and Officer Villanueva was acquitted on all charges.  Counts 5 and 6 which involve allegations on 11/28/2017 with a different individual under completely different circumstances were severed for trial at a later date.  On May 23, 2023 a Judgment of Acquittal on counts 1,2 and3 were filed by the US District Court.

Attached is a copy of the Indictment as well as the judgment of Acquittal.

Also attached hereto is an itemized record of the legal expenses incurred in Mr. Villanueva's defense.  At this time I am seeking reimbursement of these expenses pursuant to NJSA 40A:14-155.   .

The attached bills reveal a total of 489 hours of legal work at the rate of $500 an hour totaling $244,500.00 in legal fees.  Please make the check payable to Jerome A. Ballarotto, Attorney at law.

Please advise me of your intention with regard to this matter

Very truly yours,

Jerome A. Ballarotto, Esq

{41099528:1}

**JEROME A. BALLAROTTO**
**ATTORNEY AT LAW**
**143 WHITEHORSE AVENUE**
**TRENTON, NEW JERSEY 08610**
**(609) 581-8555**
**Email: jabesquire@aol.com**

CLAIM NUMBER: PBA 16-0489

RE: ANTHONY VILLANEUVA

INVOICE NO.3

FOR SERVICES RENDERED FROM JANUARY 31, 2021 THROUGH MARCH 3, 2022

### WORKED PERFORMED BY ATTORNEY JEROME A. BALLARORTTO

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 1/28/21 | REVIEW RESPONSE REPORT FROM EXPERT AND CONTACT AUSA | 2.50 |
| 2/19/21 | TELEPHONE CONFERENCE WITH ROSS BOWEN INVESTIGATOR | 0.30 |
| 2/19/21 | LETTER TO AUSA | 0.40 |
| 4/22/21 | TELEPHONE CONFERENCE WITH COURT | 0.20 |
| 7/2/21 | TELEPHONE CONFERENCE WITH GLENN MILLER EXPERT | 0.40 |
| 7/2/21 | TELEPHONE CONFERENCE WITH ROSS BOWEN | 0.40 |
| 7/2/21 | REVIEW INTERNAL AFFAIRS RECORDS | 2.50 |
| 7/12/21 | TELEPHONE CONFERENCE WITH ROSS BOWEN | 0.40 |
| 7/12/21 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 7/12/21 | TELEPHONE CONFERENCE WITH GLENN MILLER | 0.50 |
| 7/15/21 | REVIEW REPORTS FROM EXPERT GLENN MILLER | 2.50 |

| Date | Description | Hours |
|---|---|---|
| 7/15/21 | TELEPHONE CONFERENCE WITH EXPERT GLENN MILLER | |
| 7/16/21 | TELEPHONE CONFERENCE WITH INVESTIGATOR ROSS BOWEN | 0.40 |
| 7/28/21 | TELEPHONE CONFERENCE WITH EXPERT GLENN MILLER | 0.40 |
| 7/30/21 | TELEPHONE CONFERENCE AND EMAIL TO AUSA | 0.40 |
| 7/30/21 | REVIEW EXPERT REPORT | 0.40 |
| 7/31/21 | EMAIL TO/FROM AUSA | 2.50 |
| 7/31/21 | TEXT TO INVESTIGATOR ROSS BOWEN | 0.30 |
| 9/1/21 | CONFERENCE WITH PRIVATE INVESTIGATOR | 0.30 |
| 9/3/21 | TELEPHONE CONFERENCE WITH AUSA | 0.50 |
| 10/6/21 | CONFERENCE WITH COURT AND CO-COUNSEL | 0.40 |
| 10/6/21 | CONFERENCE WITH CO-COUNSEL SCOTT KRASNEY | 0.40 |
| 10/7/212 | REVIEW NEW ORDER | 0.30 |
| 10/98/21 | REVIEW EXPERT REPORT, CONFERENCE WITH CO-COUNSEL ON LEGAL NEED ON CHARGE | 6.50 |
| 10/19/21 | TELEPHONE CONFERENCE WITH EXPERT | 0.50 |
| 10/19/21 | TELEPHONE CONFERENCE WITH CATANZARO | 0.30 |
| 10/19/21 | TELEPHONE CONFERENCE WITH CO-COUNSEL AND AUSA | 0.50 |
| 10/19/21 | PREPARE EXPERT REPORT | 2.50 |
| **2022** | | |
| 1/31/22 | REVIEW DISCOVERY - NEW REPORT | 4.50 |
| 2/2/22 | PREPARE COURT ORDER | 1.50 |
| 2/16/22 | REVIEW DISCOVERY | 3.00 |

| 2/28/22 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 3/2/22 | PREPARE FOR ORAL ARGUMENT ON MOTIONS | 2.50 |
| 3/3/22 | REVIEW ORDER FROM THE COURT | 0.30 |
| 3/3/22 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 3/2/22 | IN COURT PRETRIAL MOTIONS ARGUED | 2.00 |

**HOURS TO DATE**

41.9

**JEROME A. BALLAROTTO**
**ATTORNEY AT LAW**
**143 WHITEHORSE AVENUE**
**TRENTON, NEW JERSEY 08610**
**(609) 581-8555**
**Email: jabesquire@aol.com**

CLAIM NUMBER: PBA 16-0489

RE: ANTHONY VILLANEUVA

INVOICE NO. 1 FOR SERVICES RENDERED FROM NOVEMBER 3, 2018
THROUGH JULY 31, 2019

## WORKED PERFORMED BY ATTORNEY JEROME A. BALLARORTTO

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 11/3/18 | OFFICE CONFERENCE WITH CLIENT | 1.00 |
| 11/5/18 | OFFICE CONFERENCE WITH CLIENT AND FATHER | 0.60 |
| 11/5/18 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 11/5/18 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 11/8/18 | TELEPHONE CONFERENCE WITH GEORGE DOUGHERTY | 0.40 |
| 11/8/18 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 11/16/18 | TRAVEL TO US ATTORNEY'S OFFICE FOR CONFERENCE | 2.00 |
| 11/17/18 | LEGAL RESEARCH | 1.50 |
| 11/17/18 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 11/17/18 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 11/21/18 | LEGAL RESEARCH | 2.50 |
| 11/28/18 | CONFERENCE WITH AUSA, CLIENT AND INVESTIGATOR REVIEW VIDEO | 2.50 |
| 11/30/18 | TELEPHONE CONFERENCE WITH INVESTIGATOR | 0.40 |

| Date | Description | Hours |
|------|-------------|-------|
| 12/3/18 | OFFICE CONFERENCE WITH CLIENT AND FATHER | 1.00 |
| 12/4/18 | TELEPHONE CONFERENCE WITH ANGELO ONIFRI MERCER COUNTY PROSECUTOR | 0.30 |
| 12/4/18 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 12/5/18 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 1/10/19 | TELEPHONE CONFERENCE WITH INVESTIGATOR | 0.30 |
| 1/11/19 | OFFICE CONFERENCE WITH CLIENT, TELEPHONE CONFERENCE  WITH AUSA AND REVIEW VIDEOS | 2.50 |
| 1/12/19 | REVIEW TAPES AND REPORTS FROM INVESTIGATOR | 3.00 |
| 1/15/19 | TELEPHONE CONFERENCE WITH GEORGE DOUGHERTY | 0.30 |
| 1/16/19 | REVIEW TRANSCRIPT OF OAL HEARING | 4.50 |
| 4/5/19 | REVIEW EMAIL FROM AUSA LORBER WITH OAL DECISION | 2.50 |
| 4/8/19 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 4/8/19 | TELEPHONE CONFERENCE WITH OAL COUNSEL GEORGE DOUGHERTY | 0.30 |
| 4/9/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/9/19 | REVIEW PROPOSED PLEA AGREEMENT FROM AUSA | 1.50 |
| 4/9/19 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 4/10/19 | EMAIL TO CLIENT | 0.40 |
| 4/10/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/11/19 | TELEPHONE CONFERENCE WITH CLIENT | 0.30 |
| 4/11/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/12/19 | OFFICE CONFERENCE WITH CLIENT AND FAMILY | 1.00 |
| 4/12/19 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |

| 4/23/19 | REVIEW INDICTMENT AND ARREST WARRANT | 1.00 |
| 4/23/19 | PREPARE AND FILE NOTICE OF APPEARANCE | 0.20 |
| 4/23/19 | TRAVEL TO TRENTON FOR INITIAL APPEARANCE | 2.50 |
| 4/23/19 | REVIEW CONDITIONS OF PRETRIAL RELEASE WITH CLIENT | 0.30 |
| 4/24/19 | TRAVEL TO TRENTON FOR ARRAIGNMENT, IN CHAMBERS CONFERENCE WITH JUDGE, AUSA AND CO-COUNSEL | 2.50 |
| 4/24/19 | OFFICE CONFERENCE WITH CLIENT, PRIVATE INVESTIGATOR, AND FAMILY | 2.00 |
| 4/24/19 | REVIEW ORDER TO CONTINUE PROVIDED BY AUSA | 0.20 |
| 4/24/19 | REVIEW AND CALENDAR SCHEDULING ORDER BY THE COURT | 0.20 |
| 4/25/19 | REVIEW EMAIL FROM PRETRIAL SERVICES CONTAINING LIST OF POTENTIAL WITNESSES | 0.10 |
| 4/29/19 | LEGAL RESEARCH ON SEVERANCE MOTION | 4.00 |
| 4/30/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 4/30/19 | TELEPHONE CONFERENCE WITH PRIVATE INVESTIGATOR | 0.50 |
| 5/22/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 5/22/19 | REVIEW VIDEOS | 3.00 |
| 5/28/19 | OFFICE CONFERENCE WITH CLIENT AND ROSS BOWEN | 2.00 |
| 5/29/19 | REVIEW EMAIL FROM ROSS BOWEN, INVESTIGATOR WITH ATTACHMENT | 0.10 |
| 4/6/19 | TELEPHONE CONFERENCE ROSS BOWEN | 0.30 |
| 6/3/19 | REVIEW EMAIL FROM AUSA OFFICE CONTAINING | |

| | DISCOVERY DATED 5/31/19 | 0.30 |
|---|---|---|
| 6/4/19 | TELEPHONE CONFERENCE WITH AUSA | 0.40 |
| 6/10/19 | TELEPHONE CONFERENCE WITH ROSS BOWEN | 0.30 |
| 6/10/19 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 6/11/19 | TELEPHONE CONFERENCE WITH AUSA AND DISCOVERY CLERK | 0.40 |
| 6/12/19 | REVIEW VIDEOS | 2.50 |
| 6/15/19 | REVIEW VIDEOS | 2.50 |
| 6/21/19 | LEGAL RESEARCH | 2.00 |
| 6/22/19 | LEGAL RESEARCH AND BEGIN DRAFT OF BRIEF | 5.50 |
| 6/29/19 | WORK ON DRAFT BRIEF REVIEW LEGAL RESEARCH | 4.50 |
| 7/1/19 | REVIEW EMAIL FROM AUSA OFFICE CONTAINING DISCOVERY DATED 6/26/19 | 0.80 |
| 7/5/19 | REVISE AND FINALIZE BRIEF | 2.00 |
| 7/16/19 | PREPARE MOTION FOR SEVERANCE | 6.00 |
| 7/17/19 | OFFICE CONFERENCE WITH CLIENT, INVESTIGATOR AND PARALEGAL | 2.50 |
| 7/29/19 | REVIEW EMAIL FROM COURT RESCHEDULING HEARING AND CALENDAR | 0.10 |

**TOTAL HOURS FOR JEROME A. BALLAROTTO, ESQ.**          83.10

**JEROME A. BALLAROTTO**
**ATTORNEY AT LAW**
**143 WHITEHORSE AVENUE**
**TRENTON, NEW JERSEY 08610**
**(609) 581-8555**
**Email: jabesquire@aol.com**

CLAIM NUMBER: PBA 16-0489

RE: ANTHONY VILLANEUVA

INVOICE NO. 2 FOR SERVICES RENDERED FROM AUGUST 1, 2019 THROUGH
OCTOBER 31, 2020

### WORKED PERFORMED BY ATTORNEY JEROME A. BALLARORTTO

| DATE | DESCRIPTION | TIME |
|------|-------------|------|
| 8/20/19 | REVIEW DISCOVERY TAPES | 2.00 |
| 10/1/19 | TELEPHONE CONFERENCE WITH ROSS BOWEN ON EXPERT | 0.30 |
| 10/2/19 | CONFERENCE WITH AUSA | 0.30 |
| 10/3/19 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 10/7/19 | TELEPHONE CONFERENCE WITH INVESTIGATOR AND AUSA | 0.40 |
| 10/25/19 | TELEPHONE CONFERENCE WITH GLENN MILLER EXPERT | 0.40 |
| 10/30/19 | TELEPHONE CONFERENCE WITH EXPERT | 0.50 |
| 12/18/19 | REVIEW VIDEOS PROVIDED IN DISCOVERY | 3.00 |
| 2020 | | |
| 1/6/20 | REVIEW EXPERT REPORTS | 3.50 |
| 1/7/20 | TRAVEL TO TRENTON FOR CONFERENCE AND CONFERENCE WITH CLIENT | 2.50 |
| 2/3/20 | OFFICE CONFERENCE WITH CLIENT | 2.00 |

| Date | Description | Hours |
|------|-------------|-------|
| 2/5/20 | REVIEW DISCOVERY, INCLUDING POLICE REPORTS, AND EXPERT REPORTS | 3.00 |
| 2/7/20 | PREPARE CORRESPONDENCE TO AUSA, PREPARE SUBPOENA NS REVIEW EXPERT REPORTS | 4.50 |
| 2/10/20 | TELEPHONE CONFERENCE WITH PRIVATE INVESTIGATOR | 0.30 |
| 4/10/20 | TELEPHONE CONFERENCE WITH AUSA | 0.30 |
| 4/10/20 | REVIEW NEW INFORMATION PROVIDED BY AUSA | 2.50 |
| 4/21/20 | REVIEW DISCOVERY | 3.50 |
| 5/18/20 | REVIEW EXPERT REPORT | 3.50 |
| 5/20/20 | REVIEW INTERNAL AFFAIRS FILE | 3.00 |
| 5/22/20 | TELEPHONE CONFERENCE WITH PRIVATE INVESTIGATOR BOWEN | 0.30 |
| 7/11/20 | REVIEW REPORT FROM EXPERT AND PREPARE NEW REPORT | 3.50 |
| **TOTAL HOURS THROUGH OCTOBER 31, 2020** | | **39.60** |

# VILLANEUVA

| Date Due | Attorney Work | Attorney Time |
|---|---|---|
| 3/9/22 | Reviewed reports and video | 2.0 |
| 3/31/22 | Office conference with client and email to PI | 1.0 |
| 5/26/22 | Telephone conference with client | .4 |
| 5/26/22 | Reviewed Court Order and Opinion | 1.2 |
| 6/3/22 | Reviewed court order and opinion | 1.5 |
| 7/12/22 | In-Court. Pretrial conference | .5 |
| 2/1/23 | Review and write jury questionnaire | 2.5 |
| 3/2/23 | Reviewed OB videos | 2.5 |
| 3/6/23 | Telephone conference with counsel | .3 |
| 3/6/23 | Reviewed Exhibit List | 1.5 |
| 3/7/23 | Reviewed Draft transcripts | 3.5 |
| 3/8/23 | Compared transcripts to videos, conference with client | 4.5 |
| 3/13/23 | Prepared transcripts | 3.5 |
| 3/16/23 | Reviewed discovery, Reports of police, Expert reports, statements and Trial preparation | 4.5 |
| 3/17/23 | Telephone conference with AUSA | .3 |
| 3/18/23 | Reviewed Government Motions and prepared response | 3.5 |
| 3/23/23 | Trial preparation, review of discovery | 4.5 |
| 3/27/23 | Review of videos and office conference with counsel | 2.5 |
| 3/29/23 | Conference with client and PI | 2.0 |
| 3/29/23 | Reviewed IAO videos | 2.5 |
| 3/30/23 | Reviewed info from client and IAD videos | 3.5 |
| 3/31/23 | Telephone conference with client | .3 |
| 4/1/23 | Reviewed Government Motions | 1.5 |
| 4/1/23 | Legal research | 1.5 |
| 4/1/23 | Reviewed IAD videos | 2.5 |
| 4/3/23 | Prepared second round of Motions | 4.0 |
| 4/3/23 | Telephone conference with AUSA | .3 |
| 4/3/23 | Telephone conference with client | .3 |

| 4/4/23 | Responded to Government Motions | 2.5 | |
|--------|--------------------------------|-----|---|
| 4/4/23 | Legal research | 1.5 | |
| 4/4/23 | Telephone conference with client and PI | .4 | |
| 4/6/23 | Reviewed jury charges | 2.5 | |
| 4/8/23 | Legal research on Motions | 1.5 | |
| 4/8/23 | Prepared opposition Brief to Governments Motions | 4.5 | |
| 4/10/23 | Prepared legal Memo | 3.5 | |
| 4/10/23 | PTC with court | .5 | |
| 4/11/23 | Continued to review IAD videos, prepared synopsis | 3.5 | |
| 4/13/23 | Review of discovery, Trial preparation, reviewed OB cameras and telephone conference with client | 3.0 | |
| 4/15/23 | Receipt and review of JENCKS | 4.5 | |
| 4/16/23 | Reviewed JENCKS and Trial preparation | 6.0 | |
| 4/18/23 | Telephone conference with counsel | .3 | |
| 4/18/23 | Telephone conference with client | .3 | |
| 4/18/23 | Email to PI | .4 | |
| 4/18/23 | Reviewed **** statements | 3.5 | |
| | | | |
| **TOTAL HOURS** | | | **97.0** |

## VILLANEUVA

| Date | Attorney Work | Time |
|------|---------------|------|
| 4/19/23 | Reviewed Jencks | 4.5 |
| 4/20/23 | Print and organize Jencks and read | 6.5 |
| 4/21/23 | Telephone conference with AUSA | .3 |
| 4/21/23 | Email exchange with Court and AUSA | .4 |
| 4/21/23 | Review Jencks and written discovery | 5.5 |
| 4/22/23 | Trial preparation, reviewed BW Cameras | 9.5 |
| 4/23/23 | Trial preparation, reviewed BW Cameras | 10.0 |
| 4/24/23 | Jury selection | 6.5 |
| 4/24/23 | Trial preparation | 5.0 |
| 4/25/23 | Jury selection | 6.0 |
| 4/25/23 | Trial preparation, review videos | 4.5 |
| 4/26/23 | Jury selection | 6.0 |
| 4/26/23 | Trial preparation, review of IAD videos and transcripts | 6.5 |
| 4/27/23 | Conference with client | 1.5 |
| 4/27/23 | Reviewed Grand Jury transcripts | 4.0 |
| 4/27/23 | Reviewed government's Exhibits | 2.5 |
| 4/27/23 | Reviewed BWC videos | 3.5 |

| 4/28/23 | Trial preparation, review of government's Exhibits, legal research on HS, prepared opposition Brief, prepared opening statement | 10.5 |
|---------|---------|------|
| 4/29/23 | Trial preparation, review of IAD videos | 6.0 |
| 4/29/23 | Prepared opposition to government's Motions, telephone conference with PI and telephone conference with ex parte | 3.5 |
| 4/29/23 | Prepared cross-opening | 4.0 |
| 4/30/23 | Trial preparation, reviewed Jencks material | 10.5 |
| 5/1/23 | Trial openings and testimony | 8.0 |
| 5/1/23 | Conference with client and father, review of Exhibits, review Jencks, prepared cross | 4.0 |
| 5/2/23 | Trial testimony | 8.0 |
| 5/2/23 | Trial preparation, prepared cross, reviewed IAD tapes, reviewed BWC tapes | 5.0 |
| 5/3/23 | Trial testimony | 8.0 |
| 5/2/23 | Trial preparation, prepared cross, reviewed Jencks | 5.5 |
| 5/4/23 | Trial | 8.0 |
| 5/4/23 | Trial preparation, prepared cross, reviewed Jencks | 6.5 |
| 5/5/23 | Charge conference | 2.0 |
| 5/5/23 | Trial preparation, reviewed videos, government Exhibits, Trial notes | 8.5 |
| 5/6/23 | Prepared summation, organized evidence, reviewed videos | 8.0 |

| 5/7/23 | Prepared summation, organized videos for presentation | 9.0 |
|---|---|---|
| 5/8/23 | Summations/charge, jury deliberation | 8.0 |
| 5/9/23 | Jury deliberations, conference with client and family | 7.5 |
| 5/10/23 | Jury deliberations, conference with client and family | 7.5 |
| 5/11/23 | Jury deliberations, conference with client and family, conference with Court and AUSA | 7.5 |
| 5/12/23 | Jury deliberations | 7.0 |
| 5/15/23 | Jury deliberations, verdict, conference with client and family, conference with Court and AUSA | 6.5 |
| | | |
| **TOTAL HOURS** | | **241.7** |

## TOTAL HOURS FOR DEFENSE OF ANTHONY VILLANUEVA
## FOR INCIDENT ARISING ON APRIL 9, 2017

41.90

83.10

39.60

97.00

241.70

**TOTAL**                  503.30


**503.30 @ $500= $251,650**

**Plus Bowen Investigations for $4,166.37**


**GRAND TOTAL OF $255,816.37**

**EXHIBIT "F"**

MER-L-002304-23   12/13/2023 8:33:01 AM   Pg 52 of 57   Trans ID: LCV20233612471
Case 3:25-cv-02501-RK-JTQ Document 2-2 Filed 12/04/25 Page Page 25 Page 75 PageID: 330

# BOWEN INVESTIGATIVE SERVICES, LLC

## PRIVATE INVESTIGATIONS

### New Jersey State Police Retired

### PROFESSIONAL AND CONFIDENTIAL

Ross Bowen
143 White Horse Avenue
Trenton, New Jersey 08610

Phone : (908) 237-9000
Cell  : (908) 586-2900
Fax   : (908) 284-1384

June 6th, 2023

Jerome A. Ballarotto, Esquire
143 White Horse Avenue
Trenton, New Jersey 08610

RE:  United States v. Officer Anthony Villanueva

Dear Mr. Ballarotto :

Please accept this billing for services rendered from March 28th, 2023 to April 23rd 2023 in the furtherance of the referenced matter. In accordance with our agreement, we billed at the rate of seventy-five dollars ($75) for each investigative hour. A billing breakdown is as follows.

## INVESTIGATION BILLING TOTALS

| | |
|---|---|
| Investigative Hours | $3,907.50 |
| N.J. Sales Tax @6.675 | $ 258.87 |
| **BALANCE DUE** | **$4,166.37** |

(See Attached Invoice)

Thank you for allowance us the opportunity to serve your Firm.

Sincerely yours,

Ross Bowen
Bowen Investigative Services LLC

-1-

Jun 13 23, 02:10p          Ross Bowen                                  908-284-1384              p.2

Ross Bowen, Private Investigator

143 White Horse Avenue
Trenton, NJ 08610

**Invoice**

| Date | Invoice # |
|------|-----------|
| 6/5/2023 | 150 |

**Bill To**

JEROME A. BALLAROTTO, ESQUIRE
143 WHITE HORSE AVENUE
TRENTON, N.J. 08610
U.S.A. v. ANTHONY VILLANUEVA

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 10.5 | MARCH - APRIL 2023<br>Viewed recordings of interviews conducted by the Mercer County Prosecutors Office, Internal Affairs Unit of seven (7) Officers. | 75.00 | 787.50T |
| 6.5 | MARCH - APRIL 2023<br>Viewed the on-body recordings of nineteen (19) Officers | 75.00 | 487.50T |
| 2.4 | MARCH 29th, 2023<br>Meeting with Jerome A. Ballarotto, Esquire and Anthony Villanueva for trial preparation | 75.00 | 180.00T |
| 2 | APRIL 1ST, 2023<br>Viewed all other electronic files provided in discovery | 75.00 | 150.00T |
| 10.5 | APRIL 3RD, 2023<br>Prepared report detailing findings from the review of Internal Affairs Unit interviews and review of on-body cameras | 75.00 | 787.50T |
| 1.4 | APRIL 10TH, 2023<br>Telephone conference with Peter Paris, Esquire, Officer Samuel Johnson and Officer Anthony Villanueva | 75.00 | 105.00T |

| Phone # | Fax # | E-mail | Total |
|---------|-------|--------|-------|
| 908-237-9000 | 908-284-1384 | bowen2818@earthlink.net | |

Page 1

Jun 13 23, 02:10p        Ross Bowen                          908-284-1384              p.3

**Ross Bowen, Private Investigator**

143 White Horse Avenue
Trenton, NJ 08610

**Invoice**

| Date | Invoice # |
|------|-----------|
| 6/5/2023 | 150 |

**Bill To**

JEROME A. BALLAROTTO, ESQUIRE
143 WHITE HORSE AVENUE
TRENTON, N.J. 08610
U.S.A. v. ANTHONY VILLANUEVA

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 2.6 | APRIL 14TH, 2023<br>Office meeting with Jerome Ballarotto, Esquire and Officer Michael Davis | 75.00 | 195.00T |
| 2.7 | APRIL 17TH, 2023<br>Telephone conference with Jerome Ballarotto, Esquire. As requested, viewed again Internal Affairs Unit interview video of Officer Nicholas Mahan. Updated interview video report. Telephone conference with Officer Maria Paccillo | 75.00 | 202.50T |
| 3.1 | APRIL 18TH, 2023<br>Office meeting with Scott Krasny, Esquire, Peter Paris Esquire, and Officer Nicholas Mahan | 75.00 | 232.50T |
| 4 | APRIL 20TH, 2023<br>Viewed the Internal Affairs Unit interview video of Officer Mark Kieffer. Wrote synopsis detailing contents of same | 75.00 | 300.00T |
| 6.4 | APRIL 23RD, 2023<br>Traveled to Hanover Street, Trenton, New Jersey with Jerome A. Ballarotto, Esquire and Officer Anthony Villanueva. Viewed site of subject incident   Returned to office for trial preparation | 75.00 | 480.00T |
|  |  | 6.625% | 258.87 |

| Phone # | Fax # | E-mail | Total | $4,166.37 |
|---------|-------|--------|-------|-----------|
| 908-237-9000 | 908-284-1384 | bowen2818@earthlink.net | | |

Page 2

**EXHIBIT "G"**

## Certification of Joseph A. Hayden, Jr. re:
## Legal Fees - Jerome A. Ballarotto

1.      I am an attorney at law licensed to practice in the State of New Jersey since 1969.

### BACKGROUND AND PERSONAL QUALIFICATIONS

2.      I am a graduate of Rutgers Law School, magna cum laude and I then served as the judicial law clerk to Chief Justice Joseph Weintraub of the New Jersey Supreme Court in 1969. After serving for three (3) years in the Division of Criminal Justice, I entered private practice and have been actively engaged in trial work in state and federal court since 1973. I am the founder and first president of the Association of Criminal Defense Lawyers, a past president of the Association of the Federal Bar and a Past Trustee of the New Jersey State Bar Association. I have been elected by my peers as a Fellow of the American College of Trial Lawyers, as well as a Fellow to the International College of Trial Lawyers. I am also a recipient of the Brennan Award from the federal bar and the Whipple Award from the criminal defense bar.

3.      I offer this certification in direct support of Mr. Jerome A. Ballarotto's application for legal fees based upon my experience and observations of him throughout the years.  I believe that his request to be compensated at the rate of $500 an hour is reasonable and appropriate given his experience and professional reputation.

4.      Mr. Ballarotto was admitted to the practice of law in 1979 and he has been active in private practice since 1987.  He is a former special agent of the United States Secret Service, a former Essex County Assistant Prosecutor, a former Deputy Attorney General for the State of New Jersey, and a former Assistant United States Attorney.  His reputation among the trial bar in New Jersey is of the highest level, and his reputation for ethics and professionalism is beyond reproach.

6.      Given Mr. Ballarotto's vast experience, and his reputation in the legal community for trial skills and professionalism, the hourly rate he proposes is more than reasonable.

7.      I have known and worked with Mr. Ballarotto for over twenty-five (25) years, and I can personally attest to his reputation as well.

8.      I hereby certify that the foregoing statements are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

July 24, 2023

Joseph A. Hayden, Jr., Esq.

*LAW OFFICE OF MARK W. CATANZARO*
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

|  |  |
|---|---|
| **ANTHONY VILLANUEVA** | : |
| | : **SUPERIOR COURT OF NEW JERSEY** |
| | : **LAW DIVISION - MERCER COUNTY** |
| | : |
| **Plaintiff** | : |
| **V.** | : **CIVIL ACTION** |
| | : |
| **CITY OF TRENTON** | : **DOCKET NO.: MER-L-** |
| | : |
| | : |
| **Defendant.** | : **ORDER TO SHOW CAUSE** |
| | : |
| _____ : | |

     **THIS MATTER**, being opened to the Court by Mark W. Catanzaro, Esquire, attorney for Plaintiff Police Officer Anthony Villanueva seeking relief by way of summary action pursuant to R. 4:67-1(a), based upon that facts set forth in the Verified Complaint filed herewith; and the Court having determined that this matter may be commenced by Order to Show Cause as a summary proceeding pursuant to N.J.S.A. 40A:14-155 and for good cause shown,

1

**IT IS** on this _____ day of _____, 2023,

**ORDERED** that the Defendant the City of Trenton must show cause on the

_____ day of _____, 2023  before the Superior Court at the

Mercer County Civil Courthouse in Trenton, New Jersey at _____ o'clock in the

a.m./p.m., or as soon thereafter as counsel can be heard, why judgment

should not be entered:

A.      Ordering the Defendant reimburse Plaintiff Anthony  Villanueva for

his attorney's fees and costs related to the criminal charges

assessed against him on April 9, 2017; and

B.      Granting such other relief as the court deems equitable        and

just.

And it is further **ORDERED** that:

1. A copy of this Order to Show Cause, Verified Complaint    and all

supporting Affidavits or Certifications submitted in support of this application

be served upon Defendants, personally, within _____ days of the date

hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

2. The Plaintiff must file with the Court his proof of service of the

pleadings on Defendant no later than (3) days before the return date.

2

3. Defendant shall file and serve a written Answer, answering affidavit or a motion returnable on the return date to this Order to Show Cause and the relief requested in the Verified Complaint and proof of service of the same by _____, 2023. The Answer, answering affidavit or a motion, as the case may be, must be filed with the Clerk of the Superior Court in the county listed above and a copy of the papers must be sent directly to the chambers of Judge _____.

4. The Plaintiff must file and serve any written reply to Defendant's Order to Show Cause opposition by _____, 2023. The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chamber of Judge _____.

5. If Defendant does not file and serve opposition to this Order to Show Cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of order at least three days prior to the return date.

6. If the Plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the Court no later than three (3) days before the return date.

7. Defendant take notice that the Plaintiff has filed a lawsuit against you in Superior Court of New Jersey. The Verified Complaint attached to this

3

Order to Show Cause states that basis of the lawsuit. If you dispute this Complaint, you, or your attorney, must file a written answer, an answering affidavit or a motion returnable on the return date to the Order to Show Cause and proof of service before the return date of the order to show cause.

These documents must be filed with the Clerk of Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at:

http://www.judiciary.state.nj.us/prose/10153deptyclerklawref.pdf

Include a $ _____ filing fee payable to the Treasurer State of New Jersey. You must also send a copy of your answer, answering affidavit or motion to the plaintiff's attorney whose name and address appear above, or to the Plaintiff, if no attorney I named above. A telephone call will not protect your rights; you must file and serve your answer, answering affidavit or motion with the fee or judgment may be entered against you by default.

8.  If you cannot afford an attorney, you may call the Legal Services office in the County which you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJLAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and

4

Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at

http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf

9.  The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the court and parties are advised to the contrary no later than _____ days before the return date.


_____

,J.S.C.

***LAW OFFICE OF MARK W. CATANZARO***
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzaro.com
ATTORNEY FOR PLAINTIFF
ANTHONY VILLANUEVA

|  |  |  |
|---|---|---|
| | **:** | |
| | **:** | **SUPERIOR COURT OF NEW JERSEY** |
| **ANTHONY VILLANUEVA** | **:** | **LAW DIVISION - MERCER COUNTY** |
| | **:** | |
| **Plaintiff** **:** | **:** | |
| **V.** | **:** | **CIVIL ACTION** |
| | **:** | |
| **CITY OF TRENTON** | **:** | **DOCKET NO.: MER-L-** |
| **:** | **:** | |
| | **:** | |
| **Defendant.** | **:** | **ORDER** |
| | **:** | |
| _____ **:** | | |

**THIS MATTER,** having come before the Court by Mark W. Catanzaro, Esquire, attorney for Plaintiff Anthony Villanueva, who brings this matter as a means of obtaining reimbursement of his legal fees in defense of criminal charges assessed by his employer, the City of Trenton, pursuant to N.J.S.A. 40A:14-155, with an Order to Show Cause, Verified Complaint with attachments being filed with the Court, with Plaintiff seeking to have the Complaint heard in a summary manner

pursuant to R. 4:67-1 *et seq.***,** and the Court having heard all issues in a summary manner as they are ripe for determination; and good cause having been shown therefore,

**IT IS** on this _____ day of _____, 2023

**ORDERED** that relief sought by way of Plaintiff's Verified Complaint seeking Defendant's reimbursement for the defense of the criminal charges dated April 9, 2017 is ***granted***; and it is further

**ORDERED** that Plaintiff's Notice of Motion to proceed summarily is ***granted***, and it is further

**ORDERED** that the Defendants the City of Trenton shall pay attorney's fees to Plaintiff Anthony Villanueva, payable to the firm of Mark W. Catanzaro, Esquire, for reimbursement of their defense against the criminal charges as follows:

| | | | |
|---|---|---|---|
| | | | |

| | Rate | Hours | Total |
|---|---|---|---|
| Jerome A. Ballarotto, Esq. | | | |
| Russ Bowen, Private Investigator | | | |

**For a Sub-Total of**: $_____

ORDERED that Mark W. Catanzaro, Esquire is hereby awarded additional attorney's fees for the filing of Plaintiff's Order to Show Cause and Motion to Proceed Summarily in the amount of $_____; and it is further

ORDERED that the Defendant shall reimburse the firm of Mark W. Catanzaro, Esquire, for costs in the amount of $_____; and it is further

ORDERED that Judgement is herein entered in favor of Plaintiff Anthony Villanueva, against Defendant City of Trenton, in accordance with the above, for a **Grand Total** in the amount of $_____, and it is further

**ORDERED** that Defendant the City of Trenton shall make full payment of all counsel fees and costs to Plaintiff Anthony Villanueva, payable to Mark W. Catanzaro, Esquire, within twenty (20) days of the date of this Order; and it is further

**ORDERED** that a copy of this filed Order shall be served upon Counsel within _____ days of the date hereof.

***So Ordered*** Unopposed [ ] Opposed  [ ]

_____

J.S.C.

# Civil Case Information Statement

## Case Details: MERCER | Civil Part Docket# L-002304-23

**Case Caption:** VILLANUEVA ANTHONY  VS CITY OF TRENTON

**Case Initiation Date:** 12/13/2023

**Attorney Name:** MARK WILLIAM CATANZARO

**Firm Name:** MARK W. CATANZARO

**Address:** 21 GRANT ST
MT. HOLLY NJ 08060

**Phone:** 6092613400

**Name of Party:** PLAINTIFF : Villanueva, Anthony

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** ACTIONS IN LIEU OF PREROGATIVE WRITS

**Document Type:** Verified Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Anthony Villanueva?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
   **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO  **Medical Debt Claim?** NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

<u>12/13/2023</u>
Dated

<u>/s/ MARK WILLIAM CATANZARO</u>
Signed

# EXHIBIT B

Robert F. Renaud, Esq.
Attorney ID No.: 014791974
RENAUD COLICCHIO LLC
190 North Avenue East
Cranford, New Jersey 07016
(908) 418-4088
Attorneys for Defendant City of Trenton

| | |
|---|---|
| ANTHONY VILLANUEVA, | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: MERCER COUNTY |
| Plaintiff, | : DOCKET NO.: MER-L-002304-23 |
| | : |
| v. | : |
| | : Civil Action |
| CITY OF TRENTON | : |
| | : ORDER DISMISSING PLAINTIFF'S |
| | : VERIFIED COMPLAINT PURSUANT |
| | : TO R. 4:6-2(e) |
| Defendant. | : |
| | : |

**THIS MATTER** having been opened to the Court by Renaud Colicchio

LLC, attorneys for Defendant City of Trenton, and the Court having read and

considered the papers submitted and argument of counsel, and with good cause

having been shown;

It is **ORDERED** on this   20th   day of _____March_____, 2024,

that Plaintiff's Verified Complaint be and is hereby dismissed, with prejudice.

WITHOUT prejudice.

pursuant to <u>R.</u> 4:6-2(e), for failure to state a claim on which relief can be granted; and

    It is **FURTHER ORDERED** that this Order shall be deemed served upon all parties of record by the filing of same on eCourts.

ROBERT LOUGY, A.J.S.C.

This motion was:

Opposed    ✓

Unopposed    _____

For the reasons as stated on the record.

# EXHIBIT C

***LAW OFFICE OF MARK W. CATANZARO***
21 GRANT STREET
MOUNT HOLLY, NEW JERSEY 08060
By: Mark W. Catanzaro, Esquire
Attorney ID No. 015621985
(609) 261-3400
mark@catanzarolaw.com
ATTORNEY FOR PLAINTIFFS
JEROME A BALLAROTTO, ESQUIRE
and ANTHONY VILLANUEVA

_____

JEROME A BALLAROTTO, ESQUIRE
and ANTHONY VILLANUEVA

        Plaintiffs,

    vs.


CITY OF TRENTON

        Defendant.

:
:
:
:
:
:
:
:
:
:

SUPERIOR COURT OF NEW JERSEY
MERCER COUNTY
LAW DIVISION
Docket No. MER-L-2304-23



Civil Action



AMENDED COMPLAINT


Plaintiffs, Jerome A. Ballarotto with an office at 143 Whitehorse Avenue, Trenton, New Jersey and Anthony Villanueva, residing at 1727 N. 6th Street, Ewing, New Jersey, hereby complains against the defendant and says:

## **OPERATIVE FACTS**

1. Anthony Villanueva (hereinafter "Villanueva") is a Hispanic male. Drew Inman (hereinafter "Inman" is a Caucasian male.

2.   In 2017, Villanueva and Inman were employed by the City of Trenton as police officers.

3.   On April 9, 2017, while working for the City of Trenton as Police Officers, they were caused to arrest Chancee Washington after he abandoned the vehicle he was operating, and using to elude the police, and ran from the scene.

4.   During the arrest of Mr. Washington, Villanueva and Inman utilized lawful force to arrest him.

5.   The City of Trenton did not seek to discipline Villanueva or Inman as a result of the arrest.

6.   On November 28, 2017, while employed as a Trenton Police Officer and working in that capacity, Villanueva was assigned to the area in the Trenton City Police Department for individuals that had been arrested but had not yet been transferred to the Mercer County Correctional Facility.

7.   Villanueva was caused to interact with a pretrial detainee, Quarter Singletary.  Villanueva was obligated to utilize necessary force to handle Mr. Singletary.

8.   On January 26, 2018, the City of Trenton issued a Preliminary Notice of Disciplinary Action ("hereinafter "PNDA") charging Villanueva for the arrest and reports issued with regard to the November 28, 2017 incident.  On March 28 2018, he was served a second PNDA adding additional charges arising out of the November 28, 2017 incident.

9.   On June 19, 2018, the City of Trenton terminated Anthony Villanueva from their employ.

10.  Villanueva appealed the determination to the Civil Service Commission which referred the matter to the Office of Administrative Law for a hearing.  Villanueva remained terminated pending the hearing.

11.  The matter was heard in the Office of Administrative Law on October 23, 24, 25 and 30, 2018.  The record was closed on March 4, 2019.  The court rendered its decision affirming the termination on April 5, 2019 and sent the recommendation to the Civil Service Commission.

12.  On April 18, 2019, a sealed indictment was returned in the United States District Court charging Villanueva and Inman with several offenses as a result of the April 9, 2017 incident (Counts 1 through 4).   The indictment also contained charges against Villanueva as a result of the November 28, 2017 incident (Counts 5 and 6).

13.  On April 23, 2019, Villanueva and Inman were arrested and arraigned in the United States District Court for the District of New Jersey.  Villanueva was represented by Jerome A. Ballarotto, Esquire (hereinafter "Ballarotto") and Inman was represented by Scott Krasny, Esquire (hereinafter "Krasny").

14.  Ballarotto and Krasny were representing Villanueva and Inman as part of the Legal Protection Plan provided to them based

upon their membership in the Police Benevolent Association.

15.   Neither Villanueva or Inman asked the City of Trenton to appoint them counsel or pay for their attorneys.

16.   Neither Ballarotto or Krasny advised the City of Trenton that the officers had requested their representation nor requested that the City pay their fees.

17.   The City was aware that the officers had been indicted. As a result of the indictment, Drew Inman was suspended from his position as a Trenton Police Officer.

18.   Villanueva filed a motion to sever the counts of the indictment associated with the November incident from that of the April incident.   On September 17, 2019, the court granted the application.

19.   The criminal trial concerning the April incident involving Villanueva and Inman commenced in the United States District Court for the District of New Jersey on April 25, 2023 and concluded on May 15, 2023.

20.   Villanueva was acquitted as to all counts in which he was charged.   Inman was acquitted of one count and the jury was unable to reach a unanimous decision on the second count.

21.   Inman filed a motion for judgment of acquittal which the court granted on September 12, 2023 thereby disposing of all counts favorably to Inman.

22.   Ballarotto and Krasny were paid pursuant to the Legal Protection Plan.  Pursuant to the Plan documents, Ballarotto and Krasny sought reimbursement from the City of Trenton.

23.   On June 23, 2023 Ballarotto, on behalf of Villanueva, submitted his bills to the City of Trenton requesting reimbursement at his hourly rate of $500.00 per hour.

24.   Villanueva is responsible for the difference between the rate paid by the PBA ($130 per hour) and Ballarotto's usual rate.

25.   Ballarotto was contacted by Wes Bridges, the Director of the City of Trenton Law Department.  Over the course of several months, Mr. Bridges and Mr. Ballarotto negotiated the amount of the bill.  Ballarotto agreed to accept a thirty (30) percent reduction of his bill.

26. Bridges accepted the reduction and advised Ballarotto that he would have the issue put on the agenda to approve payment of the compromised amount.

27.   Bridges subsequently advised Ballarotto that the DCA or City of Trenton would not pay the bill because the two counts of the indictment concerning the November incident remained outstanding. He was never advised his bill was being rejected because he did not seek advance approval.

28.   After obtaining the dismissal of the count that the criminal jury was unable to reach a verdict on with regard to Inman, Krasny submitted his bill to the City of Trenton for payment

at the rate of $400.00 per hour. Mr. Krasny followed the same submission process involving Mr. Bridges. Krasny agreed to reduce his hourly rate to $350.00 per hour, the same number Bridges had negotiated with Ballarotto.

29. Krasny's bill was submitted to the City and approved for payment.

30. Krasny has been paid in full for all work performed at the rate of $350.00 per hour for his representation of Drew Inman.

31. Villanueva and Inman received the identical verdict in the criminal proceedings with regard to the April incident.

32. Villanueva had exhausted the maximum the PBA Legal Protection would pay and was indigent, having been terminated from the City of Trenton Police Department.

33. The court granted Villanueva's request for the appointment of counsel pursuant to the Criminal Justice Act and appointed Ballarotto who is a member of the panel for continuity of counsel purposes.

34. Villanueva went to trial on the counts associated with the November, 2017 matter in the holding area. Jury selection commenced again on February 20, 2024. Trial continued to March 1, 2024 when the jury returned a verdict of not guilty as to count 1 and could not reach a verdict as to count 2.

35. On April 16, 2024, the government advised the court that they would not seek to retry count 2 and agreed to dismiss said

count without prejudice.

36.  On April 16, 2024, the court entered an order terminating the case with prejudice as to Anthony Villanueva.

37.  Villanueva has now been acquitted of all counts just as Inman was.

38.  Villanueva has submitted his invoices for both cases at the rate of $500.00 per hour, his customary and just rate.  He has agreed to the reduction to $350.00 as he did before and the rate the City paid to Krasny.

39.  The obstacle that Bridges advised Ballarotto applied (the open case) no longer applies and yet the City, or DCA, has declined Ballarotto's invoices.

40.  Villanueva and Inman have received the identical result with regard to the criminal charges.

41.  Villanueva and Inman's counsel acted in an identical manner as it concerned  a lack of notification to the City and submission of their bills.

42.  Inman's bill was paid in full at the rate of $350.00 per hour and Ballarotto's invoices have been refused.

43.  The only difference between Inman and Villanueva is their ethnic background.

### COUNT 1

1.  Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as if the same were set forth at length

herein.

2.    Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment based upon, among other things, race, gender, sex and national origin.  The New Jersey Law Against Discrimination provides similar protections.

3.    Villanueva, a Hispanic male, is a member of a protected class.

4.    Villanueva and Inman received the identical result in the criminal trial (i.e. acquittal)

5.    Villanueva and Inman stand in an identical situation as neither asked the City of Trenton to appoint them counsel in the criminal case.

6.    Villanueva and Inman are in an identical situation as neither of their counsel asked the City of Trenton to authorize their representation or hourly rate.

7.    Villanueva and Inman are in an identical situation as their counsel submitted their bills to the City of Trenton after the acquittal was rendered in their favor.

8.    Villanueva and Inman are in an identical situation as each of their counsel negotiated with the City Attorney and agreed to accept $350.00 per hour for their representation.

9.    Inman, a Caucasian male, had all of his attorney fees paid in full by the City of Trenton for all hours worked with regard to the matter.

10.   The City of Trenton refuses to pay Villanueva's attorney for the work performed after receiving an identical result.

11.   Villanueva and Inman stand in exactly the same position as it concerns representation and result beyond his national origin and the City refuses to pay his attorneys fees at the agreed rate.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and costs associated with the filing of this action and other relief as the court deems just and appropriate.

## COUNT 2

1.   Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as well as those set forth in Count 1 as if the same were set forth at length herein.

2.   Villanueva is entitled to be reimbursed for all outstanding attorney's fees and costs associated with the defense of the criminal actions based upon his acquittal of all charges.

3.   The City of Trenton represented to Villanueva, through his attorney, that the City would pay the attorney's fees but for those counts in the indictment arising out of the November, 2017 incident.

4.   The City never advised Villanueva or Ballarotto that payment would not be forthcoming based upon their failure to request assignment of counsel or negotiation of rates before the matter proceeded.

5.    Villanueva has now been acquitted of ALL COUNTS for all matters just as Inman was.

6.    The City paid Inman's attorney in exactly the same set of circumstances.

7.    The City is precluded from denying payment to Villanueva/Ballarotto for such failure when they did not do so with respect to Inman/Krasny who were identically situated.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and costs associated with the filing of this action and other relief as the court deems just and appropriate.

### COUNT 3

1.    Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as well as those set forth in Count 1 and 2 as if the same were set forth at length herein.

2.    The conduct of the City of Trenton's actions are unjust and arbitrary governmental action and as such violate the doctrine of fundamental fairness.

3.    The conduct of the City of Trenton in paying Drew Inman's attorney in the identical situation as that of Villanueva's attorney is fundamentally unfair.

4.    The City's conduct is violative of the Equal Protection Clause and Due Process clause of the Fourteenth Amendment to the United States Constitution depriving Villanueva of a valid

property interest.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and costs associated with the filing of this action and other relief as the court deems just and appropriate.

### COUNT 4

1.   Plaintiff repeats and realleges the facts contained in paragraphs 1 through 43 as well as those set forth in Count 1, 2 and 3 as if the same were set forth at length herein.

2.   Villanueva is entitled to reimbursement of his attorney's fees with regard to the underlying criminal action based upon N.J.S.A 40A:14-155.

3.   Villanueva had been terminated from the City of Trenton Police Department for ten (10) months at the time he was indicted.

4.   The City of Trenton would never have authorized counsel for Villanueva in light of his termination.

5.   The City of Trenton would never have authorized to pay an attorney to an employee they had terminated ten (10) months earlier.

6.   Villanueva was not required to perform a futile act in order to recover attorney's fees incurred with regard to the criminal matter.

WHEREFORE, ANTHONY VILLANUEVA, requests judgment in his favor for Mr. Ballarotto's attorney fees and costs as well as fees and

costs associated with the filing of this action and other relief as the court deems just and appropriate.

WHEREFORE, the plaintiffs, Jerome A. Ballarotto and Anthony Villanueva, demand judgment against the defendant, City of Trenton, for damages, counsel fees, interest and costs of suit.

## JURY DEMAND

Defendant hereby demands a trial by jury as to all issues.

## DESIGNATION OF TRIAL COUNSEL

Please take notice that Mark W. Catanzaro, Esquire, is hereby designated trial counsel.

## DEMAND FOR DISCLOSURE OF NON-PARTIES PURSUANT TO R.4:5-1(b)(2)

PLEASE TAKE NOTICE that plaintiffs hereby demand strict compliance with R. 4:5-1(b)(2) which requires that "each party shall disclose in the Certification the names of any non-party who should be joined in the action pursuant to R.4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability any party on the basis of the same transactional facts".

Plaintiff hereby demands that defendant review all available records, undertake reasonable investigation and determine the identity of any other individuals or entities who should be joined in this action pursuant to R. 4:5-1(b)(2).

The failure to identify non-parties pursuant to this Rule will result in an application for sanctions as well as for expenses

incurred in connection with the discovery of individuals who should have been identified pursuant to the Rule.

### <u>NO NOTICE OF OTHER ACTIONS</u>

Mark W. Catanzaro of full age, hereby certifies as follows:

1.    The matter in controversy is not the subject of any other action pending in any other Court nor is it the subject of any pending arbitration proceeding.

2.    There are no other known parties who should be joined in the action at this time.

3.    Pursuant to R. 4:21A-1 you are hereby advised that this matter is not appropriate for mandatory arbitration.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 2, 2023

*Mark Catanzaro*
Mark W. Catanzaro, Esquire
Attorney for Plaintiffs

# EXHIBIT D

# SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW

The following deficiency notice is being sent from eCourts:

Plaintiff Name:          ANTHONY VILLANUEVA
Defendant Name:          CITY OF TRENTON
Case Caption:            VILLANUEVA ANTHONY  VS CITY OF TRENTON
Case Number:             MER L 002304-23
Docket Text:             **DEFICIENCY NOTICE**: re: AMENDED COMPLAINT LCV20241121806 -Other- case dismissed.
Transaction ID:          LCV20241134870

## Notice has been electronically mailed to:

Plaintiff Attorney          MARK WILLIAM CATANZARO          MARK@CATANZAROLAW.COM
                                                            SUSAN@CATANZAROLAW.COM
                                                            TIFFANY@CATANZAROLAW.COM

Defendant Attorney          ROBERT F RENAUD                 ESHOTLAND@RCNJLAW.COM
                                                            DMICELI@RCNJLAW.COM
                                                            ACOLICCHIO@RCNJLAW.COM

## Notice was not electronically mailed to:

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

# EXHIBIT E

**PREPARED BY THE COURT**

|  |  |
|---|---|
| ANTHONY VILLANUEVA,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF TRENTON,<br><br>       Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – MERCER COUNTY<br>DOCKET NO. L-2304-23<br><br>CIVIL ACTION<br><br><br>**SCHEDULING ORDER** |

**THIS MATTER** having come before the Court, the Hon. Robert Lougy, A.J.S.C., presiding, on a case review conference with Mark Catanzaro, Esq., appearing as counsel for Plaintiff Anthony Villanueva, and Robert F. Renaud, Esq., appearing as counsel on behalf of Defendant City of Trenton; and the Court having advised counsel that the Court had accepted for filing Plaintiff's amended complaint of May 2, 2024, but had not notified either party of that determination; and the Court and counsel having agreed that a responsive pleading is the necessary and appropriate next step; and for good cause shown;

**IT IS** on this 1st day of December 2025 **ORDERED** that:

1.  Defendant shall file a responsive pleading to Plaintiff's First Amended Complaint no later than twenty days from the date of this Order.

2.  The Court misspoke during the case review conference.  This matter is not a prerogative writ action, per the Court's order and statement of reasons of March 20, 2024.  The Court will not schedule a <u>Rule</u> 4:69-4 conference.  The parties shall proceed with discovery accordingly.

3.  This Order shall be deemed filed and served upon uploading to eCourts.

<div align="right">

/s/ Robert Lougy
ROBERT LOUGY, A.J.S.C.

</div>

<div align="right">

December 1, 2025
Page 2 of 2

</div>

# EXHIBIT K

# Chapter 2, § 230: Compensation and Expenses of Appointed Counsel

Guide to Judiciary Policy, Vol 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 2: Appointment and Payment of Counsel

230.10 Forms for Compensation and Reimbursement of Expenses

230.13 Time Limits

230.16 Hourly Rates and Effective Dates in Non-Capital Cases

230.20 Annual Increase in Hourly Rate Maximums

230.23 Case Compensation Maximums

230.26 Case Budgeting

230.30 Supporting Memorandum Justifying Compensation Claimed

230.33 Review and Approval of CJA Vouchers

230.40 Payments by a Defendant

230.43 Approval Authority of U.S. Magistrate Judges

230.46 Prior Authorization for Appointed Counsel to Incur Expenses

230.50 Proration of Claims

230.53 Compensation of Co-Counsel

230.56 Substitution of Counsel

230.60 Attorney Compensation for Travel Time

230.63 Reimbursable Out-of-Pocket Expenses

230.66 Non-Reimbursable Expenses

230.70 Writ of Certiorari

230.73 Interim Payments to Counsel

230.76 Record Keeping

230.80 Annual Report of Attorney Compensation Exceeding 1,000 Hours

## § 230 Compensation and Expenses of Appointed Counsel

### § 230.10 Forms for Compensation and Reimbursement of Expenses

The eVoucher system is the judiciary's primary method for CJA panel voucher submission and processing. **See:** Guide, Vol. 7A, § 140. Legacy forms for for the compensation and reimbursement of expenses to appointed counsel, together with instructions for their use, may be found on the public judiciary website. A copy of all supporting documents that itemize or expand the amounts shown on the face of Form CJA 20 must be attached when submitting vouchers in the eVoucher system.

### § 230.13 Time Limits

(a) Vouchers should be submitted no later than 45 days after the representation concludes, unless good cause is shown. The clerks or CJA supervisory attorneys of the concerned courts should ensure that panel attorneys comply with the prescribed limits. Every effort should be made to have counsel submit the claim as soon as possible upon completion of services rendered. While extremely late submissions may impact the ability to adequately substantiate items, voucher reductions based solely on submissions outside of the 45-day time limit are not authorized. **See:** § 230.33.10 (Standard for Voucher Review).

(b) Absent extraordinary circumstances, judges should act upon panel attorney compensation claims within 30 days of submission.

### § 230.16 Hourly Rates and Effective Dates in Non-Capital Cases

(a) Except in federal capital prosecutions and in death penalty federal habeas corpus proceedings, compensation paid to appointed counsel for time expended in court or out of court or before a U.S. magistrate judge may not exceed the rates in the following table. For information on compensation of counsel in federal capital cases and death penalty federal habeas corpus proceedings, **see:** Guide, Vol 7A, § 630.

### § 230.16(a) Non-Capital Hourly Rates

| If services were performed between.... | The maximum hourly rate is.... |
| --- | --- |

| If services were performed between... | The maximum hourly rate is... |
| --- | --- |
| 01/01/2010 through 08/31/2013 | $125 |
| 09/01/2013 through 02/28/2014 | $110 |
| 03/01/2014 through 12/31/2014 | $126 |
| 01/01/2015 through 12/31/2015 | $127 |
| 01/01/2016 through 05/04/2017 | $129 |
| 05/05/2017 through 03/22/2018 | $132 |
| 03/23/2018 through 02/14/2019 | $140 |
| 02/15/2019 through 12/31/2019 | $148 |
| 01/01/2020 through 12/31/2020 | $152 |
| 01/01/2021 through 12/31/2021 | $155 |
| 01/01/2022 through 12/31/2022 | $158 |
| 01/01/2023 through 12/31/2023 | $164 |
| 01/01/2024 through 12/31/2024 | $172 |
| 01/01/2025 to present | $175 |

| If services were performed between... | The maximum hourly rate is.... |
| --- | --- |
| 03/11/2009 through 12/31/2009 | $110 |
| 01/01/2008 through 03/10/2009 | $100 |
| 05/20/2007 through 12/31/2007 | $94 |
| 01/01/2006 through 05/19/2007 | $92 |

(b) For rates applicable to services performed prior to May 1, 2002 for non-capital cases, please contact the AO's Defender Services Office, Legal and Policy Division Duty Day Attorney, at 202-502-3030 or via email at DSO_LPD@ao.uscourts.gov.

**§ 230.20 Annual Increase in Hourly Rate Maximums**

Under 18 U.S.C. § 3006A(d)(1), the Judicial Conference is authorized to increase annually all hourly rate maximums by an amount not to exceed the federal pay comparability raises given to federal employees. Hourly rate maximums will be adjusted automatically each year according to any federal pay comparability adjustment, contingent upon the availability of sufficient funds.

The new rates will apply with respect to services performed on or after the effective date.

**§ 230.23 Case Compensation Maximums**

**§ 230.23.10 Applicability and Exclusions**

(a) In General

All compensation limits apply to each attorney in each case.

(b) Federal Death Penalty Cases and Federal Capital Habeas Corpus Proceedings

The case compensation limits are not applicable in federal death penalty cases and federal capital habeas corpus proceedings. **See:** Guide, Vol 7A, § 630.10.20.

**(c) Excess Compensation Vouchers**

(1) As further explained in § 230.23.40, the CJA places limitations on the general authority of presiding judicial officers to unilaterally approve attorney compensation.

(2) Payments above case compensation limits referred to in § 230.23.20 may be authorized when certified by the presiding judicial officer and approved by the chief judge of the circuit. The chief judge of the circuit is permitted to delegate this approval authority to another active or senior circuit judge.

(3) Presiding judicial officers should certify excess compensation payments to counsel whenever in their judgment the case involves extended or complex representation and the amount certified is necessary to provide fair compensation. **See** § 230.23.40.

**(d) Limitations Inapplicable to Expense Reimbursement**

Case compensation limits apply only to attorney fees. There is no limit on the presiding judicial officer's authority to approve the reimbursement of expenses of counsel, and the chief judge of the circuit has no role in authorizing the payment of such expenses. For an explanation of reimbursable out-of-pocket expenses, **see:** § 230.63; **but see:** § 230.46 (Prior Authorization for Appointed Counsel to Incur Expenses).

**(e) Change in Offense Classification Level**

If a case is disposed of at an offense level lower than the offense originally charged, the compensation maximum is determined by the higher offense level.

**(f) More than One Counsel**

In difficult cases in which the court finds it necessary to appoint more than one attorney, the limitations apply separately to each attorney.

**(g) Ancillary Matters**

Representation in ancillary matters is compensable as part of the representation in the principal matter for which counsel has been appointed and is not considered a separate appointment for which a separate compensation maximum would apply.

**(h) Increases to the Maximum Compensation Rate**

Under 18 U.S.C. § 3006A(d)(2) , the attorney case compensation maximums increase "simultaneously" with aggregate changes in the maximum attorney hourly compensation rate. Current case maximum amounts are identified below in § 230.23.20.

## § 230.23.20 Current Attorney Case Compensation Maximums

For work performed on or after Jan. 1, 2025, the case compensation maximums are as follows:

| If the case is a... | the case maximum is... |
|---|---|
| (a) Felony (except federal capital prosecutions) | $13,600 for trial court level<br>$9,700 for appeal |
| (b) Misdemeanors (including petty offenses (class B or C misdemeanors or infractions) as provided in 18 U.S.C. § 3006A(a)(2)(A)) | $3,900 for trial court level<br>$9,700 for appeal |
| (c) Proceedings under 18 U.S.C. § 4106A (in connection with paroled prisoners transferred to the United States) | $2,900 for representation before the U.S. Parole Commission<br>$9,700 for appeal |
| (d) Proceedings under 18 U.S.C. § 4107 or § 4108 (for counsel and guardians ad litem providing services in connection with prisoner transfer proceedings). **Note:** For information on appointment of counsel or guardians ad litem under 18 U.S.C. § 4109 , **see:** Guide, Vol 7B (International Prisoner Transfer Proceedings). | $3,900 for each consent verification proceeding |

| If the case is a... | the case maximum is... |
| --- | --- |
| (e) Pre-Trial Diversion | $13,600 if offense alleged by the U.S. attorney is a felony<br>$3,900 if offense alleged by the U.S. attorney is a misdemeanor |
| (f) Proceedings under 18 U.S.C. § 983 (for services provided by counsel appointed under 18 U.S.C. § 983(b)(1) in connection with certain judicial civil forfeiture proceedings) | $13,600 for trial court level<br>$9,700 for appeal |
| (g) Non-Capital Post-Conviction Proceedings under 28 U.S.C. § 2241, § 2254 or § 2255 | $13,600 for trial court level<br>$9,700 for appeal |
| (h) Proceedings to Protect Federal Jurors Employment under 28 U.S.C. § 1875 | $13,600 for trial court level<br>$9,700 for appeal |
| (i) Other Representations Required or Authorized by the CJA<br>**Note:** This category includes but is not limited to the following representations:<br>(1) probation violation;<br>(2) supervised release hearing (for persons charged with a violation of supervised release or facing modification, reduction, or enlargement of a condition or extension or revocation of a term of supervised release); | $2,900 for trial court level<br>$2,900 for each level of appeal |

| If the case is a... | the case maximum is... |
|---|---|
| (3) parole proceedings under 18 U.S.C. chapter 311 (repealed). **(but see:** note at Guide, Vol 7A, § 210.20.10(a)(5)). | |
| (4) material witness in custody; | |
| (5) mental condition hearings under 18 U.S.C. § 4241 and § 4244, which are considered hearings under 18 U.S.C. chapter 313 (except for part of the case in chief with no separate compensation maximums applying. (For a chart detailing the treatment for the purpose of compensation of representation at each hearing under 18 U.S.C. chapter 313, **see:** Guide, Vol 7A, § 220.30(f)); | |
| (6) civil or criminal contempt (where the person faces loss of liberty); | |
| (7) witness (before a grand jury, a court, the Congress, or a federal agency or commission which has the power to compel testimony, where there is reason to believe either before or during testimony, that the witness could be subject to a criminal prosecution, a civil or criminal contempt proceeding, or face loss of liberty); and | |
| (8) international extradition (under 18 U.S.C. chapter 209 ). | |

## § 230.23.30 History of Case Compensation Maximums

### § 230.23.30 History of Case Compensation Maximums

For work performed prior to January 1, 2025, the case compensation maximums are as follows:

| The case maximum if a case is a... | And services were completed... | | | | |
|---|---|---|---|---|---|
| | | | | | |

| The case maximum if a case is a... / And services were completed... | (a) Felony (including pre-trial diversion of alleged felony) | (b) Misdemeanor (including pre-trial diversion of alleged misdemeanor) | (c) Proceeding under 18 U.S.C. § 4106A | (d) Proceeding under 18 U.S.C. § 4107 or § 4108 (for each verification proceeding) |
|---|---|---|---|---|
| 1/1/2015 - 12/31/2015 | $9,900 | $2,800 | $2,100 | $2,800 |
| 1/1/2016 - 5/4/2017 | $10,000 | $2,900 | $2,100 | $2,900 |
| 5/5/2017 - 3/22/2018 | $10,300 | $2,900 | $2,200 | $2,900 |
| 3/23/2018 - 2/14/2019 | $10,900 | $3,100 | $2,300 | $3,100 |
| 2/15/2019 - 12/31/2019 | $11,500 | $3,300 | $2,500 | $3,300 |
| 1/1/2020 - 12/31/2020 | $11,800 | $3,400 | $2,500 | $3,400 |
| 1/1/2021 - 12/31/2021 | $12,100 | $3,400 | $2,600 | $3,400 |
| 1/1/2022 - 12/31/2022 | $12,300 | $3,500 | $2,600 | $3,500 |
| 1/1/2023 - 12/31/2023 | $12,800 | $3,600 | $2,700 | $3,600 |
| 1/1/2024 - 12/31/2024 | $13,400 | $3,800 | $2,900 | $3,800 |

| (e) Proceeding under 18 U.S.C. § 983 | (f) Post-conviction proceeding under under 28 U.S.C. § 2254, § 2255 or § 2241 | (g) Proceeding under 28 U.S.C. § 1875 | (h) Appeal from felony, misdemeanor, proceeding under 18 U.S.C. § 4106A, § 983, 18 U.S.C. § 983, post-conviction proceeding under 28 U.S.C. § 2241 | The case maximum if a case is a... / And services were completed... |
|---|---|---|---|---|
| $9,900 | $9,900 | $9,900 | $7,100 | |
| $10,000 | $10,000 | $10,000 | $7,200 | |
| $10,300 | $10,300 | $10,300 | $7,300 | |
| $10,900 | $10,900 | $10,900 | $7,800 | |
| $11,500 | $11,500 | $11,500 | $8,200 | |
| $11,800 | $11,800 | $11,800 | $8,400 | |
| $12,100 | $12,100 | $12,100 | $8,600 | |
| $12,300 | $12,300 | $12,300 | $8,800 | |
| $12,800 | $12,800 | $12,800 | $9,100 | |
| $13,400 | $13,400 | $13,400 | $9,600 | |

# § 230.23.40 Waiving Case Compensation Maximums

(a) Overview

| The case maximum if a case is a... | And services were completed... | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| §2254, §2255, and 28 U.S.C. §1875 | | | | | | | | | | |
| (i) Other representation required or authorized by the CJA (including, but not limited to, supervised release hearing, material witness, grand jury witness) | $2,100 | $2,100 | $2,200 | $2,300 | $2,500 | $2,500 | $2,500 | $2,600 | $2,700 | $2,900 |
| (j) Appeal of other representation | $2,100 | $2,100 | $2,200 | $2,300 | $2,500 | $2,500 | | | | |

For inquiries concerning case compensation maximums, contact the AO's Defender Services Office, Legal and Policy Division Duty Day Attorney, at 202-502-3030 or via email at DSO_LPD@ao.uscourts.gov.

## § 230.26 Case Budgeting

Payments in excess of CJA compensation maximums may be made to provide fair compensation in cases involving extended or complex representation when so certified by the court or U.S. magistrate judge and approved by the chief judge of the circuit (or by an active or senior circuit judge to whom excess compensation approval authority has been delegated).

(b) Extended or Complex Cases

The approving judicial officer should first make a threshold determination as to whether the case **is either** extended or complex.

(1) If the legal or factual issues in a case are unusual, thus requiring the expenditure of more time, skill, and effort by the lawyer than would normally be required in an average case, the case is "complex."

(2) If more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings, the case is "extended."

(c) Determining Fair Compensation

After establishing that a case is extended or complex, the approving judicial officer should determine if excess payment is necessary to provide fair compensation. The following criteria, among others, may be useful in this regard:

- responsibilities involved measured by the magnitude and importance of the case;

- manner in which duties were performed;

- knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel;

- nature of counsel's practice and injury thereto;

- any extraordinary pressure of time or other factors under which services were rendered; and

- any other circumstances relevant and material to a determination of a fair and reasonable fee.

## § 230.26.10

Courts are encouraged to use case-budgeting techniques in representations that appear likely to become or have become extraordinary in terms of potential cost (ordinarily, a representation in which attorney hours are expected to exceed 300 hours or total expenditures are expected to exceed 300 times the prevailing CJA panel attorney non-capital hourly rate, rounded up to the nearest thousand, for appointed counsel and services other than counsel for an individual CJA defendant).

## § 230.26.15 Case-Budgeting Attorneys

(a) Every circuit should have available at least one case-budgeting attorney.

(b) Reviewing judges should give due weight to the case-budgeting attorney's recommendations in reviewing vouchers and requests for expert services, and must articulate their reasons for departing from those recommendations.

**See:** JCUS-MAR 2019, p. 19.

## § 230.26.20 Case-Budgeting Procedures

(a) If a court determines that case-budgeting is appropriate (either on its own or upon request of counsel), counsel should submit a proposed initial litigation budget for court approval, subject to modification in light of facts and developments that emerge as the case proceeds.

(b) Case-budgeting forms and instructions are available from circuit case-budgeting attorneys, CJA panel administrators, or the court. For additional assistance, contact the AO's Defender Services Office, Legal and Policy Division Duty Day Attorney at 202-502-3030 or by email to DSO_LPD@ao.uscourts.gov.

(c) Case budgets should be submitted *ex parte* and filed and maintained under seal.

(d) For general information on case-budgeting principles relating to capital cases, **see:** Guide, Vol 7A, § 640.

## § 230.26.30 Investigative, Expert, and Other Services

(a) Recognizing that investigative, expert, and other services may be required before there is an opportunity for counsel to prepare a case budget or for the court to approve it, courts should act upon requests for services where prompt authorization is necessary for adequate representation.

(b) Courts, in examining the case budget, may reconsider amounts authorized for services before the budget's approval; however, courts must not rescind prior authorization where work has already been performed.

## § 230.30 Supporting Memorandum Justifying Compensation Claimed

(a) Claim for Less than the Case Compensation Maximum

In any case in which the total compensation claimed is less than the statutory case compensation maximum, counsel may be required to submit a memorandum supporting and justifying the compensation claimed, when called for by local rule, standing order, or by the presiding judicial officer.

(b) Claim for More than the Case Compensation Maximum

(1) In any case in which the total compensation claimed is in excess of the statutory case compensation maximum, counsel will submit with the voucher a detailed memorandum supporting and justifying counsel's claim that:

- the representation given was in an extended or complex case **(see:** § 230.23.40(b))**, and

- the excess payment is necessary to provide fair compensation **(see:** § 230.23.40(c))**.

(2) Upon preliminary approval of such claim, the presiding judicial officer should furnish to the chief judge of the circuit a memorandum containing the recommendation and a detailed statement of reasons.

## § 230.33 Review and Approval of CJA Vouchers

## § 230.33.10 Standard for Voucher Review

Voucher reductions should be limited to:

(a) Mathematical errors;

(b) Instances in which work billed was not compensable;

(c) Instances in which work billed was not undertaken or completed; and

(d) Instances in which the hours billed are clearly in excess of what was reasonably required to complete the task.

**See:** JCUS-SEP 2018, p. 42. For guidance on problems related to CJA voucher cutting, **see:** 2017 Report of the Ad Hoc Committee to Review the Criminal Justice Act, pp. 96-103.

## § 230.33.20 Impact of an Appropriation Shortfall on Voucher Review

Vouchers should not be delayed or reduced for the purpose of diminishing Defender Services Program costs in response to adverse financial circumstances.

## § 230.33.30 Notification of Proposed Reduction of CJA Compensation Vouchers

(a) The CJA provides that the reviewing judge must fix the compensation and reimbursement to be paid to appointed counsel. If the court determines that a claim should be reduced, appointed counsel should be provided:

- prior notice of the proposed reduction with a brief statement of the reason(s) for it, and

- an opportunity to address the matter.

(b) Notice need not be given to appointed counsel where the reduction is based on mathematical or technical errors.

(c) Nothing contained in this guideline should be construed as requiring a hearing or as discouraging the court from communicating informally with counsel about questions or concerns in person, telephonically, or electronically, as deemed appropriate or necessary.

## § 230.33.40 Independent Review Process

## § 230.40 Payments by a Defendant

(a) An attorney appointed under the CJA may not accept a payment from or on behalf of the person represented without authorization by a U.S. district, circuit, or magistrate judge on Form CJA 7.

(b) If such payment is authorized, it should be deducted from the fee to be approved by the court under 18 U.S.C. § 3006A(d). The combined payment to any one attorney for compensation from both the person represented and the CJA is subject to applicable dollar limitations, unless excess compensation is approved under 18 U.S.C. § 3006A(d)(3).

(c) When the court determines that a person who received representation under the CJA was financially ineligible for those services at the time they were rendered, and directs that the person reimburse the government, the payment should be made by check or money order to the clerk of court for deposit into the Treasury. Such funds will be credited to the Defender Services Appropriation.

(d) Under 18 U.S.C. § 3006A(f), a judicial officer is not authorized to require reimbursement as a condition of probation, and the Judicial Conference position is that reimbursement of the cost of representation under the CJA should not be made a condition of probation under any other authority. **See:** JCUS-MAR 1985, p. 31.

## § 230.43 Approval Authority of U.S. Magistrate Judges

(a) Every district or division should implement an independent review process for panel attorneys who wish to challenge any reductions to vouchers that have been made by the presiding judge.

(b) Any challenged reduction should be subject to review consistent with this independent review process.

(c) All processes implemented by a district or division must be consistent with the statutory requirements for fixing compensation and reimbursement to be paid under 18 U.S.C. § 3006A(d).

**See:** JCUS-MAR 2019, p. 19.

## § 230.46 Prior Authorization for Appointed Counsel to Incur Expenses

Absent delegated authority, U.S. magistrate judges may only approve vouchers for services rendered in connection with a case disposed of entirely before the U.S. magistrate judge.

Court plans may require advance authorization for such items as counsel's expenses over stipulated amounts or counsel's travel in excess of stipulated distances.

## § 230.50 Proration of Claims

(a) When a defendant is charged in one indictment with severable counts, one voucher should be submitted and one maximum applied under 18 U.S.C. § 3006A(d)(2) , whether or not the counts are severed for trial.

(b) When a defendant is charged in two or more indictments (other than a superseding indictment or information), a separate voucher should be submitted, and a separate maximum applied under 18 U.S.C. § 3006A(d)(2) , for each indictment, whether or not the indictments are consolidated for trial.

(c) Where single counsel is appointed to represent multiple defendants, separate vouchers should be submitted, and a separate maximum applied under 18 U.S.C. § 3006A(d)(2) , for each defendant represented.

(d) Whenever appointed counsel submit separate vouchers, as provided by this section, time spent in common on more than one indictment or case must be prorated among the indictments or cases on which the time was spent, and each indictment or case must be cross-referenced on the supporting materials to the vouchers. Time spent exclusively on any one indictment or case must properly be charged on the voucher for that indictment or case.

(e) Time or expenses "spent in common" includes work performed simultaneously or within the same unit of time, or expenses incurred, for more than one representation (e.g., travel on behalf of more than one client). Double billing of time or expenses is prohibited (e.g., billing the same travel time or expenses to more than one representation).

(f) While time spent in common on more than one CJA representation must be prorated, the entire amount of travel or other expenses applicable to more than one CJA representation must

(g) If the attorney is billing under the CJA for time or expenses, including travel, that were spent in common for a purpose other than a CJA representation, the attorney must report such information so that the court can determine whether, in fairness to counsel, the time or expenses should be apportioned and the attorney compensated for the time or expenses reasonably attributable to the CJA.

(1) The attorney should explain the rationale for billing under the CJA, and the court may conduct a further inquiry.

(2) In determining whether time or expenses spent in common for a purpose other than a CJA representation should be apportioned, the court should consider:

- the time or expenses reasonably expended in the performance of the attorney's duties under the CJA in relation to the time or expenses expended furthering other purposes;

- the significance to the CJA representation of the duties performed or expenses incurred; and

- the likelihood that the attorney would have performed the services or incurred the expenses under the CJA in the absence of the other purposes.

(h) Proration of time among CJA representations must not result in an appointed counsel billing a larger amount than would have been billed if all the time was assigned to one representation.

## 230.53 Compensation of Co-Counsel

### 230.53.10 Without Separate Appointment

(a) Unless separately appointed in accordance with § 230.53.20(b) or Guide, Vol I A, § 620.10, co-counsel or associate attorneys may not be compensated under the CJA.

(b) However, an appointed counsel may claim compensation for services furnished by a partner or associate or, with prior authorization by the court, counsel who is not a partner or associate,

be billed to one representation. The supporting materials to the voucher on which the expenses are billed must cross-reference the other CJA representations.

## § 230.53.20 With Appointment

a) In an extremely difficult case where the court finds it in the interest of justice to appoint an additional attorney, each attorney is eligible to receive the maximum compensation allowable under the CJA.

b) The finding of the court that the appointment of an additional attorney (or attorneys) in a difficult case was necessary and in the interest of justice must appear on the Order of Appointment. For appointment of more than one attorney in capital cases, **see:** Guide, Vol. 7A, § 620.10.

## § 230.56 Substitution of Counsel

If an attorney is substituted for an attorney previously appointed for a defendant in the same case, the total compensation paid to both the original and substitute attorneys may not exceed the statutory maximum, unless the case involves extended or complex representation. For applicable case compensation limits, **see:** § 230.23.20. Vouchers for the previously appointed attorney's services may be approved consistent with provisions for interim payments. **See:** § 230.73 (Interim Payments to Counsel).

## § 230.60 Attorney Compensation for Travel Time

a) Compensation must be approved for time spent in necessary and reasonable travel.

b) Ordinarily, compensable time for travel includes only those hours actually spent **in or awaiting transit.** Therefore, if a trip necessarily and reasonably requires overnight lodging, compensable travel time to the destination from the claimant's office would terminate upon arrival and check-in at the hotel or other place of accommodation and would include travel time returning directly to the claimant's office from said destination.

c) Compensation for travel time is paid at a rate not to exceed the rate provided in 18 U.S.C. § 3006A(d) for "time reasonably expended out of court."

within the maximum compensation allowed by the CJA, separately identifying the provider of each service.

(d) Necessary and reasonable travel includes travel time to meet and confer in-person with clients, including when clients are remotely detained, even if teleconferencing or videoconferencing technology is available.

**Note:** The Judicial Conference Committee on Defender Services' Strategic Plan stresses the importance of CJA attorneys meeting in-person with their clients to build and maintain a relationship of trust necessary to provide high quality defense representation. Therefore, teleconferencing and videoconferencing technology should not be used as a substitute for in-person attorney-client meetings but may be used to supplement in-person visits, at the sole discretion of counsel, where it would not diminish the quality of representation or adversely impact the attorney-client relationship.]

## § 230.63 Reimbursable Out-of-Pocket Expenses

### § 230.63.10 Overview

Out-of-pocket expenses reasonably incurred may be claimed on the voucher, and must be itemized and reasonably documented. Expenses for investigations or other services under 18 U.S.C. § 3006A(e)  are not considered out-of-pocket expenses.

### § 230.63.20 Reimbursement for Transcripts

(a) Generally, court reporters or reporting services which furnish court authorized transcripts in CJA cases claim and receive compensation for their services through the eVoucher system on Form CJA 24 (Authorization and Voucher for Payment of Transcript) **See:** Guide, Vol 7A, § 320.30. While this is the preferred method for payment of transcripts, if appointed counsel has elected to pay for transcripts "out-of-pocket," the cost may be claimed in eVoucher on Form CJA 20 (Appointment and Authority to Pay Court Appointed Counsel) as a reimbursable expense under 18 U.S.C. § 3006A(d)(1) .

(b) The cost of transcribing depositions in criminal cases is the responsibility of the Department of Justice under Rule 17(b) of Fed. R. Crim. P.

**Exception:** When the witness is a defense expert, the expert is paid out of CJA funds (B-139703, 53 Comp. Gen. 638 (1974)).

# § 230.63.30 Computer-Assisted Legal Research

(a) The cost of use, by appointed counsel, of computer-assisted legal research services, may be allowed as a reimbursable out-of-pocket expense, provided that the amount claimed is reasonable.

(b) Whenever appointed counsel incurs charges for computer-assisted legal research, counsel should attach to the compensation voucher a copy of the bill and receipt for the use of the legal research services or an explanation of the precise basis of the charge (e.g., indicating the extent to which it was derived by proration of monthly charges, or by charges identifiable to the specific research).

(c) If the amount claimed is more than $500 or if it includes costs for downloading or printing, counsel should include a brief statement of justification.

## § 230.63.40 Travel Expenses

(a) Travel by privately owned automobile should be claimed at the mileage rate currently prescribed for federal judiciary employees who use a private automobile for conduct of official business. Parking fees, ferry fares, and bridge, road, and tunnel tolls may also be claimed. Transportation other than by privately owned automobile should be claimed on an actual expense basis.

(b) Per diem in lieu of subsistence is not allowable, since the CJA provides for reimbursement of expenses actually incurred. Therefore, counsel's expenses for meals and lodging incurred in the representation of the defendant would constitute reimbursable "out-of-pocket" expenses.

(c) In determining whether actual expenses incurred are "reasonable," counsel should be guided by travel and subsistence expense levels set by the Judiciary Staff Travel Regulations.

(d) Federal law authorizes attorneys, experts, and other persons traveling primarily in connection with carrying out responsibilities under the CJA to use government travel rates from common carriers and lodging providers. (See: 18 U.S.C. 3006A note; Federal Courts Administration Act of 1992, Pub. L. No. 102-572, title VII, § 702, 106 Stat. 4515 (Oct. 29, 1992).)

(1) Government rates may provide substantial cost reductions or increased flexibility over ordinary commercial rates. To obtain such rates, prior approval must be obtained from the appointing authority.

(2) Government contract airfares must be booked through the carrier or the judiciary's contract travel agent using the court's centrally billed account.

## § 230.63.50 Interim Reimbursement for Expenses

Courts and presiding judges or their delegate should provide interim reimbursement of expenses to counsel at regular intervals in representations exceeding 90 days in duration or $4,000 in accrued compensation and expense claims.

## § 230.63.60 Reimbursement for Expenses Incurred Defending Malpractice Allegations

(a) Courts are authorized to reimburse panel attorneys for expenses reasonably incurred in defending actions alleging malpractice in furnishing representational services under the CJA.

**See:** [18 U.S.C. § 3006A(d)(1)](#), as amended by the Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, which covers expenses incurred on or after its effective date of Nov. 13, 2000.

(b) The total reimbursement must not exceed the deductible amount of counsel's professional liability insurance policy or $5,000, whichever is less. Expenses qualifying for reimbursement may include, but are not limited to:

- the costs of transcripts;
- witness fees and costs; and
- attorney fees.

(c) In determining reasonable attorney fees for this purpose, CJA rates are inapplicable.

(d) Compensation for representing oneself in defending the action alleging malpractice, or, if represented by counsel, for time spent assisting that counsel in defending the action, is not reimbursable.

(e) No reimbursement will be made if a judgment of malpractice is rendered against the attorney; in view of this prohibition, no reimbursement should be provided until the malpractice

claim is resolved.

(f) Reimbursement should be claimed under the expense categories on a Form CJA 20 (or, where the appointment was in a capital matter, Form CJA 30), and supporting documentation should be attached.

## § 230.63.70 Other Reimbursable Expenses

Other reimbursable expenses include:

- telephone toll calls;
- case-related videoconferencing not covered by general office overhead;
- photographs or video duplication; and
- copying or laser printing (except commercial brief printing — **see:** § 230.66.40).

## § 230.66 Non-Reimbursable Expenses

## § 230.66.10 General Office Overhead

(a) General office overhead includes general office expenses that would normally be reflected in the fee charged to the client. The statutory fee is intended to include compensation for these general office expenses.

(b) Except in extraordinary circumstances (**see:** Guide, Vol. 7A, § 320.70.30), whether work is performed by counsel or other personnel, the following expenses associated with CJA representation are not reimbursable:

- personnel;
- rent;
- telephone, cell phone, or internet service; and
- secretarial.

## § 230.66.20 Items and Services of Personal Nature

(a) The cost of items of a personal nature purchased for or on behalf of the person represented are not reimbursable under the CJA. Such items include:

- purchasing new clothing or having clothing cleaned;
- getting a haircut;
- furnishing cigarettes, candy, or meals, etc.

(b) The cost of services of a personal nature and expenses incidental thereto which cannot be considered legal representation are not compensable under the CJA. Such services include:

- assisting the defendant in the disposition of the defendant's personal property, unless obtaining access to the property could reasonably contribute to a representational purpose;
- arranging for the placement of minor children of the defendant;
- assisting the defendant in executing the conditions of probation;
- providing legal assistance in matters unrelated to the litigation of the case, although incidental to the defendant's arrest, etc.

## § 230.66.30 Filing and Other Fees

Attorneys are not required to pay district or appellate filing, PACER, or miscellaneous fees in connection with CJA representations. **See:** Guide, Vol. 4, § 610.60(b).  Panel attorneys and service providers should obtain fee-exempt PACER accounts for use in connection with CJA appointments.  More information may be obtained from the PACER Service Center (pacer@psc.uscourts.gov or 800-676-6856).

## § 230.66.40 Printing and Copying of Briefs

(a) The expense of specialized typesetting, layout, or binding of appellate or other legal briefs (including Supreme Court booklets) exceeding requirements for individuals represented under the CJA, regardless of the printing method utilized, is not reimbursable.

Courts are encouraged to waive or reduce *pro hac vice* and attorney admission fees specified in Guide, Vol. 4, § 670(a)-(b) for appearances in CJA representations.  If charged such fees in connection with a CJA representation, appointed attorneys may be reimbursed those payments under the CJA as necessary out-of-pocket expenses.

**§ 230.66.50 Service of Process**

(a) Witness fees, travel costs, and expenses for service of subpoenas on fact witnesses, are not payable out of the CJA appropriation but are governed by Fed. R. Crim. P. Rule 17 and 28 U.S.C. 1825 .

(b) While not separately compensable, service of process incidental to a witness interview or other representational purpose is permissible.

(c) If the U.S. Marshals Service is unavailable to serve a fact witness in time for a court proceeding, the circumstances should be documented, and prior approval obtained from the presiding judge or CJA supervisory attorney before incurring expenses for service of process. However, the judge or CJA supervisory attorney may waive prior approval if he or she determines that timely service of necessary process could not await preauthorization.

**§ 230.66.60 Taxes**

Taxes paid on attorney compensation received under CJA, whether based on income, sales or gross receipts, are not reimbursable expenses.

**§ 230.70 Writ of Certiorari**

Counsel's time and expenses involved in the preparation of a petition for a writ of certiorari are considered as applicable to the case before the U.S. court of appeals and should be included on the voucher for services performed in that court.

**§ 230.73 Interim Payments to Counsel**

**§ 230.73.10 Non-Death Penalty Cases**

(a) Courts and presiding judges or their delegate should allow interim payments of compensation and of expenses to attorneys under § 230.63.50 at regular intervals in representations exceeding 90 days in duration or $4,000 in accrued compensation and expense claims.

**(b) Case budgeting,** circuit approval of interim vouchers, and enhanced reporting through the eVoucher system should be used to strike a balance between the interest in relieving court-appointed attorneys of financial hardships in CJA representations and the requirement for the chief judge of the circuit or their delegate to approve compensation over the statutory thresholds listed in § 230.23.20.

**(c)** Other interim payment arrangements may be adopted in consultation with the AO's Defender Services Office.

# § 230.73.20 Death Penalty Cases

Because of the expected length of death penalty representations and the anticipated hardship on counsel in providing representation for such a period without compensation, courts and presiding judges or their delegate should allow interim payments of compensation and expenses to CJA counsel at regular intervals in death penalty cases. The Anti-Drug Abuse Act of 1988 eliminated compensation maximums for CJA attorneys in death penalty cases. As such, the chief judge of the circuit has no role in reviewing attorney compensation in capital representations and no portion of compensation should be withheld.

# § 230.76 Record Keeping

Appointed counsel must maintain contemporaneous time and attendance records for all work performed, including work performed by associates, partners, and support staff, as well as expense records. Such records are subject to audit and must be retained for three years after approval of the final voucher for an appointment.

# § 230.80 Annual Report of Attorney Compensation Exceeding 1,000 Hours

Not later than three months after the end of each fiscal year, the AO's Defender Services Office will prepare reports listing all attorneys who have claimed compensation of more than 1,000 hours of services in the preceding fiscal year. The chief judge of each court of appeals and each district court will receive a copy of the report regarding attorneys within that district or circuit.

# Chapter Appendices

Appx 2A: Model Plan for Implementation and Administration of the Criminal Justice Act ([pdf](#))

*Last revised (Transmittal 07-018) September 24, 2025*

([word](#))

## Download Chapter 2

Chapter 2: Appointment and Payment of Counsel

407.03 KB

## Related Links

Read the other Chapter 2 sections.

[§ 210 Representation under the CJA](#)

[§ 220 Appointment of Counsel](#)

## Appendices

Access Word files at the bottom of this page

Appx. 2A Model Plan for Implementation and Administration of the Criminal Justice Act

286.14 KB